# EXHIBIT B

Plaintiffs' Opposition to Defendant Gonzales's Motion to Dismiss or, in the Alternative, Transfer, in *Dearth v. Gonzales*, Case No. 2:06-cv-1012 (S.D. Ohio)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN DEARTH, et al., | ) | Case No. 2-06-CV-1012 |
| | ) | |
| Plaintiffs, | ) | Judge Frost |
| | ) | Magistrate Judge Abel |
| v. | ) | |
| | ) | |
| ALBERTO GONZALES, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT GONZALES'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER

**COME NOW** the Plaintiffs Stephen Dearth ("Plaintiff Dearth") and the Second Amendment Foundation, Inc., ("SAF") (collectively, "Plaintiffs"), by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Opposition to the Defendant Alberto Gonzales's Motion to Dismiss or, in the Alternative, Transfer of Defendant Alberto Gonzales ("Defendant Gonzales").

# TABLE OF CONTENTS

TABLE OF CONTENTS. ............................................................................................. i

TABLE OF AUTHORITIES. ...................................................................................... ii

INTRODUCTION. ..................................................................................................... 1

SUMMARY OF ARGUMENT. ................................................................................... 2

ARGUMENT. ............................................................................................................. 5

    I.      NO PART OF THE UNITED STATES CAN EVER BE AN INCONVENIENT FORUM FOR THE UNITED STATES GOVERNMENT. ................................... 5

    II.     THIS COURT IS THE PROPER VENUE FOR THE LITIGATION, AS EVENTS AND OMISSIONS GIVING RISE TO PLAINTIFFS' CLAIMS HAVE ARISEN WITHIN THIS JUDICIAL DISTRICT. ..................... 7

          A.     Pre-Enforcement Challenges Under the Declaratory Judgment Act Relate to Previous or Current Events and Omissions, Not Future or Contingent Matters. ................................................................................... 8

          B.     Pre-Enforcement Challenges Under the Declaratory Judgment Act Are Properly Heard Wherever Their Underlying Events or Omissions, Relating to the Plaintiffs' Coerced Compliance, Have Occurred or Are Occurring. ........................................................................................... 9

          C.     Mount Vernon, Ohio Is Within the Southern District of Ohio. ............... 13

          D.     As the Law Has Been Enforced Against Plaintiff Dearth Once Already, It Would Be Unnecessary and Futile To Test the Law Again. .................. 13

    III.    DEFENDANT LOCKHART IS A PROPER DEFENDANT IN THIS CASE.. .. 15

    IV.    DEFENDANT CANNOT SATISFY THE BURDEN REQUIRED TO TRANSFER THE CASE PER 28 U.S.C. § 1404(a). .......................................... 19

          A.     Plaintiffs' Choice of Forum Is Entitled To Substantial Deference. .......... 19

          B.     Defendant Gonzales's Motion Fails All Section 1404(a) Factors. ........... 21

CONCLUSION. ........................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Constitution**

U.S. Const., art. II. ............................................................................................. 5, 16

U.S. Const., art. III.. ................................................................................................ 8

U.S. Const., amend. VI. ........................................................................................ 18

**Statutes and Rules**

18 U.S.C. § 922(a)(9)..................................................................................... 13, 14

18 U.S.C. § 922(b)(3). ................................................................................... 13, 14

18 U.S.C. § 1531........................................................................................... 9, 10

18 U.S.C. § 2251................................................................................................ 11

18 U.S.C. § 2709................................................................................................ 10

28 U.S.C. § 115(b)(2). ....................................................................................... 13

28 U.S.C. § 1361................................................................................................... 3

28 U.S.C. § 1391. .............................................................. 2-11, 15, 17-19, 22, 23

28 U.S.C. § 1404(a). ........................................................................ 19, 20, 21, 23

28 U.S.C. § 2201................................................................................................... 3

47 U.S.C. § 223.................................................................................................. 11

Fed. R. Civ. P. 4(i)(1)(A)...................................................................................... 3

**Cases**

Am. Sch. of Magnetic Healing v. McAnnulty, 187 U.S. 94 (1902) . ............................................ 17

American Dredging Co. v. Miller, 510 U.S. 443 (1994). ......................................... 19

Andrade v. Chojnacki, 934 F. Supp. 817 (S.D. Tex. 1996). ................................... 12

Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002). ...................................... 11

ii

Bach v. Pataki, 408 F.3d 75 (2nd Cir. 2005). .......................................................................... 14, 15

Bickley v. Caremark Rx, Inc., 361 F. Supp. 2d 1317 (N.D. Ala. 2004). ....................................... 23

Carhart v. Gonzales, 413 F.3d 791 (8th Cir. 2005),
    cert. granted, 126 S. Ct. 1314 (2006). .................................................................... 10

Continental Grain Co. v. Barge FBL-585, 364 U.S. 19 (1960). ..................................................... 22

Doe I v. Gonzales, 449 F.3d 415 (2nd Cir. 2006). ................................................................ 10, 11

Duha v. Agrium, Inc., 448 F.3d 867 (6th Cir. 2006) ................................................................. 20

Franklin v. Massachusetts, 505 U.S. 788 (1992) . ................................................................... 16

Genesis Ins. Co. v. Alfi, 425 F. Supp. 2d 876 (S.D. Ohio 2006). ........................................... 19, 20

G.S. Willard Co. v. Palmer, 255 U.S. 106 (1921). ................................................................... 16

Hamdi v. Rumsfeld, 542 U. S. 507 (2004). ........................................................................... 16

Hanning v. New England Mut. Life Ins. Co., 710 F. Supp. 213 (S.D. Ohio 1989). .................... 20

Hartke v. FAA, 369 F. Supp. 741 (E.D.N.Y. 1973) ................................................................ 17

Hobson v. Princeton-New York Investors, Inc., 799 F. Supp. 802 (S.D. Ohio 1992). ................ 20

Imperial Products, Inc. v. Endura Products, Inc.,
    109 F. Supp. 2d 809 (S.D. Ohio 2000). ............................................................... 20, 21

In re Air Disaster, 819 F. Supp. 1352 (E.D. Mich. 1993). .......................................................... 23

In re Korean Air Lines Disaster of September 1, 1983, 829 F.2d 1171 (D.C. Cir. 1987),
    aff'd sub nom, Chan v. Korean Airlines, Ltd., 490 U.S. 122 (1989) . ......................... 23

Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977)...................................... 15

Kings Cty. Econ. Cmty. Dev. Ass'n v. Hardin, 333 F. Supp. 1302 (N.D. Cal. 1971). ................ 17

Koster v. Am. Lumbermens Mut. Casualty Co., 330 U.S. 518 (1947)........................................ 20

Leroy v. Great Western United Corp., 443 U.S. 173 (1979). .................................................. 6, 7

Liberation News Serv. v. Eastland, 426 F.2d 1379 (2d Cir. 1970). ........................................... 18

iii

Mansfield v. Orr, 545 F. Supp. 118 (D. Md. 1982). ...................................................... 11

Medimmune, Inc. v. Genentech, Inc.,
    __ U.S. __, 127 S. Ct. 764, 166 L. Ed.2d 604 (2007). ................................... 8, 9

Moses v. Business Card Express, Inc., 929 F.2d 1131(6th Cir. 1991)........................... 21

Nat'l Abortion Fed'n v. Gonzales, 437 F.3d 278 (2nd Cir. 2006). ................................. 10

Navegar, Inc. v. United States, 103 F.3d 994 (D.C. Cir. 1997). ............................. 24, 25

Nolan v. Morgan, 69 F.2d 471 (7th Cir. 1934). ............................................................ 16

Parker v. District of Columbia, 311 F. Supp. 2d 103 (D.D.C. 2004),
    on appeal, D.C. Cir. No. 04-7041. ...................................................................... 24

Patmore v. Carlson, 392 F. Supp. 737 (E.D. Ill. 1975). ................................................ 11

People's Rights Organization v. City of Columbus, 152 F.3d 522 (6th Cir. 1998). ............... 24, 25

Peteet v. Dow Chemical Co., 868 F.2d 1428 (5th Cir. 1989). ....................................... 20

Piper Aircraft v. Reyno, 454 U.S. 235 (1981). ....................................................... 19, 20

Planned Parenthood Fed'n of Am., Inc. v. Gonzales,
    435 F.3d 1163 (9th Cir. 2006), cert. granted, 126 S. Ct. 2901(2006). ............................. 10

Pruess v. Udall, 359 F.2d 615 (D.C. Cir. 1965).......................................................... 24

R.H. Donnelley Corp. v. F.T.C., 580 F.2d 264 (7th Cir. 1978). ................................... 18

Rasul v. Bush, 542 U.S. 466 (2004). ............................................................................ 16

Reno v. ACLU, 521 U.S. 844 (1997).............................................................................. 11

Schexnider v. McDermott Intern., Inc., 817 F.2d 1159 (5th Cir. 1987)........................ 21

Schwarz v. IRS, 998 F. Supp. 201 (N.D.N.Y. 1998). .................................................. 17

Seegars v. Ashcroft, 396 F.3d 1248 (D.C. Cir. 2005)................................................... 25

Stafford v. Briggs, 444 U.S. 527 (1980). .......................................... 3, 5, 6, 7, 21, 22

Tedrow v. A.T. Lewis & Son Dry Goods Co., 255 U.S. 98 (1921) ............................... 16

iv

United States v. Warin, 530 F.2d 103 (6th Cir. 1976). ................................................................ 24

# INTRODUCTION

Defendant Gonzales's motion (the "Motion") to dismiss or transfer venue proves only the maxim that no good deed goes unpunished. In an attempt to forestall Defendant Gonzales's forum-shopping exercise, Plaintiffs amended the complaint to clarify the dispute's connection to this judicial district. Seizing upon Plaintiffs' attempt to prevent forum-shopping, Defendant Gonzales nonetheless asserts a variety of interesting, albeit anachronistic theories shopping for the only forum in the nation that might arguably consider his standing defense – a defense barred by Sixth Circuit precedent.

In so doing, Defendant Gonzales fails to cite controlling Supreme Court and Sixth Circuit precedent, cites precedent incompletely to give an impression it stands for an opposite proposition, misstates the nature of declaratory judgment actions, glosses over the historical availability of enforcement actions against United States Attorneys, applies doctrinal standards intended for foreigners to American citizens governed by statutory mechanisms, and seeks to import the consolidation standards for diversity cases to a federal question case, effectively subverting the division of the Court of Appeals into geographic circuits. Alas, even in the absence of Plaintiffs' clarifying amendment, Defendant Gonzales's forum-shopping motion would have been denied – just as it should be denied in the parallel Texas action.[1]

---

[1]Defendant Gonzales presumptuously asserts that transferring this case to the District of Columbia will cause the two cases to be consolidated, but the Texas court has not yet ruled on his motion – and may yet deny it. Certainly there are significant problems with the arguments Defendant raised in that motion. Since Defendant attached his motion in that case as Exhibit B to the instant motion, the Court may wish to see the opposition and associated exhibits to that pleading, attached hereto as Plaintiffs' Exhibit A. Plaintiffs assume only that courts view very few motions as presenting foregone conclusions. As a matter of course, undersigned counsel refrain from assuming the outcome of any pending motion.

1

As Defendant Gonzales notes,[2] this is one of two similar, although not identical, cases raising a straightforward question of law: may United States citizens be barred from acquiring firearms for no other reason than lack of domestic residence?

The answer to this question is "no." Defendant Gonzales would understandably prefer avoiding having any court reach the merits of the claim. His hope is to place the challenged laws beyond judicial review. All courts but one would reject such a defense – and so Defendant Gonzales seeks transfer to the one court in the land favorable to his defense.

Defendant Gonzales's strategy would be sound if only the year were 1961. Under the modern venue statute, however, the motion must be denied.

## SUMMARY OF ARGUMENT

Although the federal criminal code is national in scope, the federal courts that interpret it are divided into geographic circuits. What is constitutional in one circuit may be, in the absence of Supreme Court guidance, forbidden in another. An act deemed criminal in Washington, D.C. may, in Ohio, be considered the exercise of a fundamental constitutional right.

Forty-six years ago, Congress amended the statute governing venue in federal civil actions to reflect this basic character of our courts by adding what is now 28 U.S.C. § 1391(e)(2). A lawsuit challenging the constitutionality of a federal act may be brought in, among other fora, "any judicial district in which . . . (2) a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e).

Prior to enactment of this provision, the only District Court that had power of mandamus over federal officials was the District Court for the District of Columbia. After all, without nationwide venue in actions against the government, the government or, more specifically, the

---

[2]Plaintiffs' civil cover sheet fully disclosed the previously-filed, related Texas case.

2

officials nominally named as defendants in lawsuits against the government, could only be sued where they "resided." This, too, was changed. 28 U.S.C. § 1361; Stafford v. Briggs, 444 U.S. 527, 534 (1980). The new reality was also reflected in the rule governing service of process. Rather than merely serve the Attorney General in Washington, D.C., lawsuits against officials in their official capacity must usually also be served on the U.S. Attorney of the local judicial district. Fed. R. Civ. P. 4(i)(1)(A).

In creating nationwide venue for such actions, Congress specifically rejected all the arguments raised by Defendant Gonzales – namely, that it would be unfair or inconvenient for the Attorney General to appear in any court located within the United States, or that judges outside the District of Columbia might "have acquired a reputation for sympathy for the particular cause." Motion at 11 (citation omitted). Quite the contrary: Congress was concerned about the lack of convenience for *plaintiffs* throughout the United States in having to litigate in the District of Columbia, and desired to have the benefit of the expertise of the entire federal bench in resolving important claims, not to mention relieving the workload on the Washington, D.C. courts. In a nation sprawling across the North American continent, newly-reaching Alaska and extending into the Hawaiian Islands, it simply did not make practical sense to have all legal claims against the government exclusively brought in the nation's capital, and resolved by a single appellate circuit. Defendant's claims to the contrary are a curious throwback to a bygone era. They are not consistent with the way the law operates today.

It is black letter law that in a case such as this, where a citizen asserts a pre-enforcement challenge to a criminal enactment under the Declaratory Judgment Act, 28 U.S.C. § 2201, "the events or omissions giving rise to the claim," 28 U.S.C. § 1391(e)(2), are the defendant's enforcement of the law, and the plaintiff's prior restraint from engaging in forbidden conduct.

3

Accordingly, pre-enforcement challenges are always brought in the judicial district where the plaintiff would violate the law, but has not done so owing to the defendant's enforcement.

Plaintiff Dearth is being restrained in the Southern District of Ohio. Mr. Maxwell Hodgkins, the lead plaintiff in the companion case, is being restrained in the Northern District of Texas. No "events or omissions giving rise to [either] claim," 28 U.S.C. § 1391(e)(2), have occurred in the District of Columbia.

Moreover, unlike Mr. Hodgkins, Plaintiff Dearth has actually tested the law – and it was enforced against him. It would be an unnecessary futile act for Plaintiff Dearth to again test the law in this judicial district. Defendant Gonzales does not suggest that the federal gun laws are not being enforced in Ohio, or would not again be enforced against Plaintiff Dearth, here. Defendant Gonzales's suggestion that the First Amended Complaint does not reference acts or omissions within this judicial district is simply incompatible with the words of the document.

The most significant feature shared by these cases is that they are less favorable for Defendant Gonzales in their proper venues, under the governing Sixth and Fifth Circuit law, respectively. Thus, on January 16, 2007, in responding to the Texas case, Defendant Gonzales did not attack standing, or address the substantive merits of the action. Rather, he filed a forum-shopping venue challenge, designed to wrest the case into the *one* circuit where he would find a favorable standing defense.

The D.C. Circuit's relevant standing doctrine is at odds with that of the rest of the nation, but it is *explicitly* so with respect to that of the Sixth Circuit. Plaintiffs rightly feared that a meritless forum-shopping venue challenge would be filed in this case as well. To underscore the local nature of this dispute, Plaintiffs amended the complaint to include the local United States Attorney, Defendant Gregory L. Lockhart ("Defendant Lockhart") in his official capacity.

4

Defendant Lockhart could have been named originally *instead* of Defendant Gonzales. Plaintiffs agree that "it's not necessary" to sue Defendant Lockhart, Motion at 7, but then, it is also not "necessary" to sue Defendant Gonzales, either. Plaintiffs could have named as the sole defendant President Bush, at whose pleasure both defendants serve, and who is the only constitutional officer directly tasked with enforcing the challenged laws. U.S. Const., art. II.

Naming the Attorney General is merely a convention. It is well-understood that in an action such as this, the true defendant is not the specific individual carrying out the government's law. The true defendant is the United States itself, regardless of which official is specifically named. Following Plaintiffs' amendment, venue lies in this district based upon Defendant Lockhart's residence per 28 U.S.C. § 1391(e)(1). However, this is merely a technicality. The more essential fact counseling denial of this motion remains, as it was prior to Plaintiffs' amendment, that the acts and omissions complained of occurred, and are occurring, in the Southern District of Ohio.

## ARGUMENT

### I.    NO PART OF THE UNITED STATES CAN EVER BE AN INCONVENIENT FORUM FOR THE UNITED STATES GOVERNMENT.

Although cited heavily in opposition to Defendant's forum-shopping motion in the Texas matter, Defendant Gonzales's motion in this case – like his motion in the Texas case – fails to cite the Supreme Court's leading case reviewing the purpose and effect of Section 1391(e) – Stafford v. Briggs, 444 U.S. 527 (1980).

Stafford is binding. It flatly contradicts the entirety of Defendant Gonzales's motion. Section 1391(e) "is designed to permit an action which is essentially against the United States to be brought locally rather than requiring that it be brought in the District of Columbia simply

because Washington is the official residence of the officer or agency sued." Stafford, 444 U.S. at 540 (quoting H. R. Rep. No. 1936, 86th Cong., 2d Sess., 2 (1960)).

As the Supreme Court concluded:

What emerges is that the bill's author, the Committees, and the Congress intended nothing more than to provide nationwide venue **for the convenience of individual plaintiffs in actions which are nominally against an individual officer but are in reality against the Government.**

Stafford, 444 U.S. at 542 (emphasis added).

Defendant Gonzales conflates concerns regarding inconvenient fora, with the venue provisions of Section 1391(e). The Supreme Court and Congress have rejected that approach:

The Government official is defended by the Department of Justice whether the action is brought in the District of Columbia or in any other district. U.S. attorneys are present in every judicial district. **Requiring the Government to defend Government officials and agencies in places other than Washington would not appear to be a burdensome imposition.**

Stafford, 444 U.S. at 542 (quoting S. Rep. No. 1992, 87th Cong., 2d Sess., 3 (1962)) (emphasis added).

Thus, Defendant Gonzales's notion that venue outside of Washington, D.C. is improper, because it is inconvenient for the government, is precisely the notion Congress quashed when it amended Section 1391 to allow for national venue in governmental challenges.

Indeed, one of the cases relied upon but incompletely quoted by Defendant Gonzales, makes this same point. Defendant opens the Motion by quoting Leroy v. Great Western United Corp., 443 U.S. 173, 183-84 (1979) to the effect that "the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." (emphasis original) (footnote omitted). But the next sentence – omitted by Defendant Gonzales– reads: "For that reason, Congress has generally not made the residence of

6

the plaintiff a basis for venue in nondiversity cases. *But cf. 28 U. S. C. § 1391(e)*." Leroy, 443 U.S. at 184 (emphasis added).

By failing quote Leroy completely, Defendant Gonzales implies the case stands for the exact opposite proposition that is actually contained within the quoted page. The signal "[b]ut cf. 28 U.S.C. § 1391(e)" – referencing venue in actions against government officials – is a clear statement that it is *not* unfair or inconvenient for government officials to travel to any venue within the United States. The following year, the Supreme Court drove home the point by declaring that nationwide venue against the government exists "for the convenience of individual plaintiffs." Stafford, 444 U.S. at 542; see also discussion at 534.

Stafford is sufficient to dispose of the Motion, but Plaintiffs are constrained to address the venue issue in further detail.

## II. THIS COURT IS THE PROPER VENUE FOR THE LITIGATION, AS EVENTS AND OMISSIONS GIVING RISE TO PLAINTIFFS' CLAIMS HAVE ARISEN WITHIN THIS JUDICIAL DISTRICT.

Venue is appropriate "in any judicial district in which . . . (2) a substantial part of the events or omissions giving rise to the claim occurred. . ." 28 U.S.C. § 1391(e). In pre-enforcement actions such as this, brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, the "claim" "occurs" when a plaintiff is prevented from doing something by virtue of the challenged law. As this is judicial district in which Plaintiff Dearth is being restrained by the challenged law, this is the proper judicial district to have the claim heard per Section 1391(e)(2).

Moreover, unlike Mr. Hodgkins in the Texas matter, Plaintiff Dearth *has tested* the law – and it was enforced against him. The location of that initial test is not helpful to the Attorney General, as it did not occur in the District of Columbia (where virtually all firearms are illegal). There is no question that the challenged laws impact Plaintiffs' conduct in this judicial district.

7

A.      Pre-Enforcement Challenges Under the Declaratory Judgment Act Relate to
        Previous or Current Events and Omissions, Not Future or Contingent Matters.

Defendant Gonzales claims that Plaintiff Dearth's intent to possess firearms in Mount

Vernon, Ohio, First Am. Compl. ¶ 8, and his thwarted attempt to purchase firearms for that

purpose, First Am. Compl.  ¶ 17, do not constitute "events" that have "occurred" in this district.

Defendant Gonzales's analysis is simply wrong.  The Supreme Court's most recent

examination of pre-enforcement actions under the Declaratory Judgment Act came barely two

months ago in Medimmune, Inc. v. Genentech, Inc., __ U.S. __, 127 S. Ct. 764, 166 L. Ed.2d

604 (2007).  In Mediummune, the Supreme Court explained:

> [W]here threatened action by government is concerned, we do not require a plaintiff to
> expose himself to liability before bringing suit to challenge the basis for the threat -- for
> example, the constitutionality of a law threatened to be enforced. The plaintiff's own
> action (or inaction) in failing to violate the law eliminates the imminent threat of
> prosecution, but nonetheless does not eliminate Article III jurisdiction.

Medimmune, 166 L. Ed.2d at 616 (emphasis omitted).  In the parlance of the venue statute, 28

U.S.C. § 1391(e)(2), the "events or omissions giving rise to the claim" are "[t]he plaintiff's own

action (or inaction) in failing to violate the law."  Medimmune, 166 L.Ed.2d at 616.

Medimmune's interpretation of the injury occasioned by a criminal enactment as either a

past or present event, in the sense of coercion visited upon the plaintiff; or a past omission, in the

sense of the plaintiff's refraining from conduct proscribed by the statute, could hardly be

otherwise.  For if there were no previous or on-going injury, the pre-enforcement claim would

not be ripe.  There would be no live "case or controversy" to adjudicate.  U.S. Const., art. III.

Yet reviewing several pre-enforcement challenges, the Supreme Court explained, "[i]n each of

these cases, the plaintiff had eliminated the imminent threat of harm by simply not doing what

he claimed the right to do . . . That did not preclude subject-matter jurisdiction because the

8

threat-eliminating behavior *was* effectively *coerced*." Id. (emphasis added).

The concept that such "events or omissions" *have* occurred, or *are* occurring, at the time a pre-enforcement challenge is brought, is thus necessary to the federal courts' enterprise of entertaining pre-enforcement challenges under the Declaratory Judgment Act.

B.  Pre-Enforcement Challenges Under the Declaratory Judgment Act Are Properly Heard Wherever Their Underlying Events or Omissions, Relating to the Plaintiffs' Coerced Compliance, Have Occurred or Are Occurring.

Because it is "the plaintiff's own action (or inaction)," coerced by the law that creates a justiciable Article III controversy, Medimmune, 166 L.Ed.2d at 616, federal courts routinely hear pre-enforcement challenges to federal criminal enactments in whichever judicial district a plaintiff claims that said statutes are chilling his or her behavior. Indeed, as the District of Columbia comprises a very small fraction of the nation's land mass and population, it is readily obvious that most pre-enforcement challenges to federal laws are brought elsewhere.

Typically, the restraint occasioned by the challenged law is compelled against the plaintiffs where they live, which supplies an independent source of venue. 28 U.S.C. § 1391(e)(3). Admittedly, Plaintiff Dearth, and the similarly situated members of Plaintiff SAF, do not reside within this District. But if they did, Plaintiffs would not have standing to challenge a law that discriminates against them on the basis of foreign residence. The fact is that this claim is arising somewhere, and that location is in this judicial district. That Section 1391(e)(2) provides for venue in the district where the claim is occurring, distinct from venue where either the governmental defendant, § 1391(e)(1), or plaintiff, § 1391(e)(3), reside, establishes this judicial district as a proper venue.

That convenience to Defendant Gonzales cannot trump an otherwise valid venue choice is illustrated by the pending litigation relating to the Partial Birth Abortion Ban Act of 2003, 18

U.S.C. § 1531. Immediately upon enactment of this act, a host of doctors, clinics, and public interest groups brought constitutional challenges to the law, against the Attorney General, in three different states: Nebraska, <u>Carhart v. Gonzales</u>, 413 F.3d 791 (8th Cir. 2005), <u>cert. granted</u>, 126 S. Ct. 1314 (2006); California, <u>Planned Parenthood Fed'n of Am., Inc. v. Gonzales</u>, 435 F.3d 1163 (9th Cir. 2006), <u>cert. granted</u>, 126 S. Ct. 2901(2006); and New York, <u>Nat'l Abortion Fed'n v. Gonzales</u>, 437 F.3d 278 (2d Cir. 2006).

In some sense, it could be claimed that the plaintiffs in these cases were simply averring that they or their members and clients would like to perform or, if need be, receive a partial-birth abortion at some future point in time in Nebraska, California, or New York. In some sense, it might be claimed that the partial birth abortion ban's only connection with Nebraska, California, and New York is that the act might have some future impact in those states.

But the Partial Birth Abortion Ban Act clearly restrains the <u>Carhart</u>, <u>Planned Parenthood</u>, and <u>NAF</u> plaintiffs' desired conduct in Nebraska, California, and New York, respectively. The coercion compelled by the Act is the "event" occurring in the venue states, as are the plaintiffs' "omissions" in refraining from conducting partial birth abortions in the venue states. This provided no more or less venue than did plaintiffs' residence in the respective states, and the Attorney General's convenience in having all the cases consolidated in Washington did not make the venue choices any less valid.

Cases relating to the Internet arguably provide the best illustrations of the principle that the Attorney General's residence does not trump other proper venues under Section 1391. After all, the Internet does not exist in any particular place, and laws impacting Internet usage could be said to have equal impact everywhere. Yet challenges to the Patriot Act's Internet provisions, 18 U.S.C. § 2709, were brought against Defendant in Connecticut and New York, <u>Doe I v.</u>

Gonzales, 449 F.3d 415 (2ⁿᵈ Cir. 2006); a successful challenge to the Communications Decency

Act of 1996, 47 U.S.C. § 223, was brought against Attorney General Reno in Pennsylvania,

Reno v. ACLU, 521 U.S. 844 (1997); and a successful challenge to the Child Pornography

Prevention Act of 1996, 18 U.S.C. § 2251, was brought against Attorney General Ashcroft in

California, Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002).

If the law operates as described in the Motion, venue in *all* of these significant cases

would have been improper on the Attorney General's convenience demand.  And Defendant

Gonzales could be expected to point to even a *single case* where a pre-enforcement challenge to

a criminal law, nominally brought against the Attorney General in his official capacity, was

transferred to the District of Columbia on grounds of improper venue as per 28 U.S.C. § 1391(e).

But no such precedent is cited by the Motion, as there is no such precedent.  On the other

hand, ample precedent has rejected governmental attempts to shop for venues in derogation of a

plaintiff's Section 1391(e)(2) selection.  Federal courts routinely hear cases against government

officials in districts where the claims occurred, per Section 1391(e)(2), but in which neither party

resides – "officially" or literally – and no property is involved.  For example, an inmate

transferred to a different prison may still sue the Director of the Bureau of Prisons in the district

where inmate was allegedly injured.  Patmore v. Carlson, 392 F. Supp. 737, 738-39 (E.D. Ill.

1975).  An ROTC recruit may sue the Secretary of the Air Force for breach of contract in the

district where the recruit had attended school and the contract was allegedly breached.

Mansfield v. Orr, 545 F. Supp. 118, 120 (D. Md. 1982).

Perhaps most notably, based on Section 1391(e)(2) (and the identical provisions of

Section 1391(b)(2)), cases against the ATF arising from the Branch Davidian incident were

transferred from the Southern District of Texas to the Western District of Texas, on the

11

government's motion, because the incident occurred in Waco (Western District of Texas), notwithstanding the fact that the ATF made its contested decisions in Houston (Southern District of Texas). Andrade v. Chojnacki, 934 F. Supp. 817, 826 (S.D. Tex. 1996).

In Andrade, the ATF defendants wished to avoid the (plaintiff-friendly) district where their decisions were made, in favor of the district where the contested incident actually occurred. However, in the instant case, the Attorney General makes the opposite claim: that the case must be heard close to ATF headquarters because that is where relevant legal policy is allegedly formulated. But what was good for the ATF in Andrade should be good for the ATF in this case.

Even if decisions regarding Plaintiffs are being made in another district, the dispute is occurring in this judicial district. Plaintiff Dearth "enjoys visiting" Mount Vernon, Ohio, and "intends to continue" doing so "on a regular basis." First Am Compl. ¶ 7. Plaintiff Dearth "intends to purchase firearms in the United States, which he would store securely at his relatives' home in Mount Vernon, Ohio, and which he would access for [various reasons forbidden by the challenged laws] . . . in Ohio." First Am. Compl. ¶ 8. Plaintiffs "reasonably fear" – present tense – that they would be prosecuted for receiving firearms for non-sporting purposes, under the challenged criminal prohibitions on such receipt. First Am. Compl. ¶¶ 13.

"Mr. Dearth would have received firearms in Ohio for non-sporting purposes, or for no particular purpose at all, but has refrained from doing so by compulsion of 18 U.S.C. § 922(a)(9)." First Am. Compl. ¶ 13. "Mr. Dearth would have purchased firearms in Ohio, but has refrained from doing so only because he cannot satisfy the demands of 18 U.S.C. § 922(b)(3) and 27 CFR 478.96, 478.99 and 478.124." First Am. Compl. ¶ 18. The provisions Plaintiffs are contesting have been tested. They are being enforced. First Am. Compl. ¶ 17. Any attempt by Plaintiffs to purchase a gun legally would be a futile gesture. These provisions are therefore

12

"presently causing . . . injury in that they prevent presently-intended firearms purchases."  First Am. Compl. ¶ 18.

Defendants are being sued for "presently enforcing," First Am. Compl. ¶¶ 3, 4, and "maintaining and enforcing these laws."  First Am. Compl. ¶¶ 20, 22, 24, 26, 29, 31.  Defendants (rightly) expect Plaintiffs and other members of the public to comply with all federal criminal laws on pain of arrest, prosecution, fine, and imprisonment.  That is precisely what has occurred, and is occurring.  And like all Americans, Plaintiffs are entitled to access the local court in the judicial district where they are being compelled to obey the law, the same local court in which they would be prosecuted should they break the law, and seek a determination of the laws' constitutionality pursuant to the Declaratory Judgment Act.

    C.    <u>Mount Vernon, Ohio Is Within the Southern District of Ohio</u>.

Defendant Gonzales grasps at some of the First Amended Complaint's references to Ohio, and claims that it is insufficiently clear where in Ohio, in which of the state's two federal judicial districts, Plaintiff Dearth is being prevented from purchasing a gun.  Motion at 12.

It requires no annotation that on a motion to dismiss, the complaint's factual allegations are assumed true, and viewed in the light most favorable to the plaintiff.   Defendant Gonzales's reading of the First Amended Complaint is too selective.  The First Amended Complaint makes clear that Plaintiff Dearth has foregone and been prevented from receiving firearms in Mount Vernon, Ohio.  First Am. Compl. ¶¶ 7, 8.  Plaintiffs respectfully request the Court to take judicial notice that Mount Vernon is located within the Southern District of Ohio.  28 U.S.C. § 115(b)(2).

    D.    <u>As the Law Has Been Enforced Against Plaintiff Dearth Once Already, It Would Be Unnecessary and Futile To Test the Law Again</u>.

Apart from the pre-enforcement aspects of standing, the fact is that Plaintiff Dearth has

already attempted to purchase a firearm, and was denied on account of the challenged laws.

Subsequently, the FBI advised Plaintiff Dearth that the challenged laws bar him from obtaining

firearms.  First Am. Compl. ¶ 17.  The FBI's advice was not limited to Washington, D.C.

Defendant Gonzales makes much of the fact that this failed attempt did not allegedly

occur in the Southern District of Ohio.  But this does not advance Defendant Gonzales's

argument.  As Defendant Gonzales must know, but does not state, Plaintiff Dearth's attempt to

purchase a firearm did not occur in the District of Columbia.[3]  Certainly Defendant Gonzales

does not suggest that the laws are not being enforced in Ohio, or that Plaintiff Dearth might have

better luck if he were to ignore the FBI's advice and attempt to buy a gun in this judicial district.

Such an attempt would clearly be futile.

The denial or unavailability of a firearms permit, like the denial of any other permit, is an

alternative source of standing, as such denial or unavailability is an independent injury-in-fact.[4]

Directly on-point is the Second Circuit's decision in <u>Bach v. Pataki</u>, 408 F.3d 75 (2d Cir. 2005).

In <u>Bach</u>, the plaintiff, a Virginia resident, frequently visited his parents in New York, and

challenged the latter's prohibition on the issuance of firearms carry permits to those who neither

permanently reside nor work in the state.  Because the prohibition clearly applied to the plaintiff,

he did not bother applying for a firearms permit.  Both the District Court and the Second Circuit,

rejected the defendants' standing challenge:

> The State Police informed Bach that he was statutorily ineligible for a carry license.
> Bach had nothing to gain thereafter by completing and filing an application . . . .
> Imposing a filing requirement would force Bach to complete an application for which he

---

[3]For the record, Plaintiff Dearth sought to purchase a gun at a sporting goods store in Minnesota.

[4]Even if Plaintiffs were not barred from purchasing a firearm by operation of 18 U.S.C. § 922(b)(3), such acquisition would trigger criminal prosecution pursuant to 18 U.S.C. § 922(a)(9).

14

> is statutorily ineligible and to file it with an officer without authority to review it. We will not require such a futile gesture as a prerequisite for adjudication in federal court.

Bach, 408 F.3d at 82-83 (footnotes, citations and internal quotation marks omitted). This outcome is not surprising, as futile gestures are never required to obtain standing. For example, it is well-established that minority job applicants need not test a "whites only" sign before filing a Title VII claim. Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 365-66 (1977).

Although venue was not an issue in Bach, the case is nonetheless instructive on the topic. The Second Circuit readily accepted that Bach suffered a justiciable injury by virtue of being legally disabled from applying for a firearms permit in New York, without regard to his lack of residence in that state. Though not explicitly declared by the court, that injury could only have occurred in New York – the state where the plaintiff intended to carry a firearm.

The First Amended Complaint makes clear that the lesson learned by Plaintiff Dearth's attempt to purchase a firearm is causing him to refrain from trying to do so in this judicial district, despite his frequent visits to the area. Nothing more is required to prove that Plaintiff. Dearth is refraining from conduct within the Southern District of Ohio, such that an omission giving rise to the claim is occurring locally. 28 U.S.C. § 1391(e)(2).

## III. DEFENDANT LOCKHART IS A PROPER DEFENDANT IN THIS CASE.

In addition to venue based on 28 U.S.C. § 1391(e)(2), venue is also proper in this Court under 28 U.S.C. § 1391(e)(1) because Defendant Lockhart, the United States Attorney for the Southern District of Ohio, is a proper party. Contrary to Defendant Gonzales's assertions (Defendant Lockhart has not appeared in the case), naming the local United States Attorney as a defendant in a challenge to the enforcement of federal criminal law is a time-honored, ordinary practice. It may not be strictly required, but is well-within Plaintiffs' rights.

15

Courts have routinely entered injunctions against United States Attorneys where a plaintiff has restrained himself from engaging in some action due to possible enforcement in that district, even where the ultimate authority lies with a higher official. See Nolan v. Morgan, 69 F.2d 471, 472 (7th Cir. 1934) (affirming permanent injunction against U.S. Attorney preventing him from enforcing regulations against plaintiffs that were promulgated by the Secretary of Agriculture); Tedrow v. A.T. Lewis & Son Dry Goods Co., 255 U.S. 98, 99 (1921) (affirming injunction against U.S. Attorney preventing him from enforcing unconstitutional act); G.S. Willard Co. v. Palmer, 255 U.S. 106, 107 (1921) (enjoining both Attorney General and U.S. Attorney from enforcing Lever Act).

The fact that Defendant Lockhart "exercises his authority to enforce the laws of the United States under the direction of the Attorney General, Defendant Gonzales," Motion at 7-8, has no bearing on whether he is amendable to suit. Defendant Gonzales's contrary logic breaks down considering the error of his stunning claim to be "the executive branch official ultimately charged with the enforcement of these provisions." Motion at 7. That person is not Defendant Gonzales, but is the President of the United States. See U.S. Const., art. II.[5] If Defendant Lockhart cannot be sued because he is merely an instrumentality of Defendant Gonzales, then the Attorney General himself would be unamenable to suit because he "exercises his authority to enforce the laws of the United States" under the President's direction.[6]

---

[5]The President is occasionally sued directly as head of the executive branch. See, e.g. Rasul v. Bush, 542 U.S. 466 (2004) (district court to consider habeas corpus petition against President); but cf. Franklin v. Massachusetts, 505 U.S. 788, 802-03 (1992) (O'Connor, J.).

[6]Similarly, that the President is Commander-in-Chief of the armed forces does not preclude suing the Secretary of Defense in cases challenging military action, as can be attested from the multitude of recent cases naming the Secretary of Defense as a defendant. See, e.g. Hamdi v. Rumsfeld, 542 U. S. 507 (2004).

16

Defendant Gonzales's citation, to <u>Kings Cty. Econ. Cmty. Dev. Ass'n v. Hardin</u>, 333 F. Supp. 1302 (N.D. Cal. 1971), Motion at 10-11, does not refute this commonsense principle. In <u>Kings Cty</u>, the two local subordinate officials had no role in the enforcement of the laws at issue, and venue was therefore improper at their location. The court rejected the notion that it is unnecessary for plaintiffs to "alleged[] that the named official would have discretion to do as plaintiffs pray or that he would play any role in administering the relief requested [or that] [i]f his chain of command reaches back to the indispensable department head, venue is proper in his district." <u>Id</u>. at 1304; <u>see also</u> <u>Hartke v. FAA</u>, 369 F. Supp. 741 (E.D.N.Y. 1973) (improper venue under section 1391(e) where events complained of by plaintiff occurred in another district and local subordinate FAA officials in New York had no relation to events there).

In contrast, in this case, any prosecution under the laws at issue would be directly implemented by Defendant Lockhart. He is not merely a subordinate official to the department head who has no role in enforcing the laws at issue in the litigation – the Attorney General only acts through the United States Attorney for the Southern District of Ohio when enforcing criminal laws in this district. <u>See</u> <u>Am. Sch. of Magnetic Healing v. McAnnulty</u>, 187 U.S. 94, 108 (1902) (courts permitted to "grant relief to a party aggrieved by any action by the head *or one of the subordinate officials of that department*" when action violates the law) (emphasis added). This distinction is made in <u>Schwarz v. IRS</u>, 998 F. Supp. 201 (N.D.N.Y. 1998), where the court found venue improper despite the presence of a local office of the federal agency, but only because "the offices of the IRS in the Northern District of New York are not alleged to have engaged in any substantial part of the activity complained of in plaintiff's complaint." <u>Id.</u>, at 203. Here, the threat of criminal enforcement in this district is most assuredly within the province of the United States Attorney for the district.

17

Similarly misplaced is Defendant Gonzales's reliance on <u>R.H. Donnelley Corp. v. F.T.C.</u>, 580 F.2d 264 (7th Cir. 1978), a *post*-enforcement challenge to an administrative complaint that had already issued. As the Seventh Circuit explained, "[t]he subject matter of Donnelley's action arose when the Commission filed a complaint against Donnelley." <u>Donnelley</u>, 580 F.2d at 268. The FTC's complaint, the subject of Donnelley's claim, was filed and maintained in Washington, D.C. <u>Id.</u>

However, in the instant case, there is no claim pending against Plaintiffs in Washington, D.C., nor would there ever be such action filed against Plaintiffs in Washington, D.C. If Plaintiff Dearth would violate the law in Mount Vernon, he would be prosecuted in Columbus. <u>See</u> U.S. Const., amend. VI ("In all criminal prosecutions, the accused shall [be tried in] the State and district wherein the crime shall have been committed . . ."). And the person selected to prosecute Plaintiff Dearth by "the executive branch official ultimately charged with the enforcement of these provisions" – the President – and confirmed in that position by the Senate, is Defendant Lockhart. Alternatively, to the extent the controversy stems from Plaintiffs' present disability to obtain firearms in the Southern District of Ohio, as exemplified by Plaintiff Dearth's thwarted attempt to purchase a firearm, the person most directly responsible for that disability is Defendant Lockhart.

Defendant Lockhart is an "officer or employee of the United States," as that term is used in 28 U.S.C. § 1391(e), and is therefore a proper defendant. <u>See Liberation News Serv. v. Eastland</u>, 426 F.2d 1379, 1384 (2d Cir. 1970) ("The history demonstrates to us that, in enacting sections 1361 and 1391(e), Congress was thinking solely in terms of the executive branch."). The U.S. Attorney's role in litigation of this sort itself ensures that a locally-filed suit is not inconvenient to the Attorney General:

18

> Without doubt, under section 1391(e), venue lies in every one of the 95 federal districts, and suits may be pending in a dozen or several dozen at any one time. Even though the burden of defending multiple suits while in office may be onerous, the United States Attorney in each of the districts and the Department of Justice carry that burden.

Stafford, 444 U.S. at 544. The attempt by Defendant Gonzales to shift that burden to Plaintiffs, in direct contravention of the purposes of Congress in enacting section 1391(e), should not be countenanced by the Court.

## IV. DEFENDANT CANNOT SATISFY THE BURDEN REQUIRED TO TRANSFER THE CASE PER 28 U.S.C. § 1404(a).

As an alternative to claiming venue in this district is improper, Defendant Gonzales seeks a discretionary transfer per 28 U.S.C. § 1404(a). This argument, too, fails.

### A. Plaintiffs' Choice of Forum Is Entitled To Substantial Deference.

Title 28, U.S.C. § 1404(a) permits a court to transfer venue "[f]or the convenience of parties and witnesses, [and] in the interest of justice." Section 1404(a) replaced the doctrine of *forum non conveniens* for the purpose of transferring cases among federal district courts; the doctrine "has continuing application only in cases where the alternative forum is abroad." American Dredging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994); see Genesis Ins. Co. v. Alfi, 425 F. Supp. 2d 876, 895 (S.D. Ohio 2006).

Defendant Gonzales does not suggest which foreign court could hear a constitutional challenge to an American law. The transfer he seeks is to a domestic court. Yet in claiming that a "foreign plaintiff's choice of forum [is] entitled to little deference," Motion at 20, for his Section 1404(a) argument, Defendant Gonzales cites to inapposite *forum non conveniens* precedent applied to foreigners bringing actions suitable for transfer to foreign courts.

Defendant Gonzales forgets that Plaintiffs are *American citizens*, *not foreigners*. First Am. Compl. ¶¶ 1, 2. The lower standard sought by Defendant Gonzales from Piper Aircraft v.

19

Reyno, 454 U.S. 235 (1981) was expressly distinguished from the deference owed American

citizens. "*Citizens* or residents deserve somewhat more deference than foreign plaintiffs."

Piper Aircraft, 454 U.S. at 256 n.23 (emphasis added). "*Citizenship* and residence are proxies

for convenience." Id., at n.24 (citation omitted) (emphasis added).[7]

While the amount of deference owed to a citizen's choice of forum is "not dispositive,"

Id., at n.23, it is extremely substantial. "In general, the standard of deference for a U.S.

plaintiff's choice of a home forum permits dismissal only when the defendant 'establish[es] such

oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's

convenience, which may be shown to be slight or nonexistent.'" Duha v. Agrium, Inc., 448 F.3d

867, 873-74 (6th Cir. 2006) (quoting Koster v. Am. Lumbermens Mut. Casualty Co., 330 U.S.

518, 524 (1947) (other citations omitted)).[8]

Defendant Gonzales's burden under Section 1404(a) is no less daunting. A plaintiff's

choice of forum is "deemed significant," Imperial Products, Inc. v. Endura Products, Inc., 109 F.

Supp. 2d 809, 817 n.13 (S.D. Ohio 2000); "paramount," Hobson v. Princeton-New York

Investors, Inc., 799 F. Supp. 802, 805 (S.D. Ohio 1992); and must be given "considerable

weight," Hanning v. New England Mut. Life Ins. Co., 710 F. Supp. 213, 214 (S.D. Ohio 1989);

see Genesis Ins. Co., 425 F. Supp. 2d at 897. "[T]he plaintiff is generally entitled to choose the

forum." Peteet v. Dow Chemical Co., 868 F.2d 1428, 1436 (5th Cir. 1989) (citation omitted).

---

[7]Defendant Gonzales quotes a direct reference to the higher deference to which U.S. citizens are entitled in citing to Imperial Products, Inc. v. Endura Products, Inc., 109 F. Supp. 2d 809, 818 (S.D. Ohio 2000) (citation omitted). Motion at 20.

[8]While this is not Plaintiffs' "home" forum, the high deference is the same given Plaintiffs' citizenship status. As quoted *supra*, the Supreme Court has used citizenship and residence interchangeably. The Sixth Circuit likewise makes reference to "the deference required for a forum choice made by a U.S. plaintiff under [Koster]." Duha, 448 F.3d at 873.

There is a "strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." Schexnider v. McDermott Intern., Inc., 817 F.2d 1159, 1163 (5th Cir. 1987).

      B.     Defendant Gonzales's Motion Fails All Section 1404(a) Factors.

"In ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" Moses v. Business Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991) (citation omitted).

As a matter of law, the convenience analysis must start with the legislative command that no part of the United States is too inconvenient for the Attorney General in which to litigate. It bears repeating: "[r]equiring the Government to defend Government officials and agencies in places other than Washington would not appear to be a burdensome imposition." Stafford, 444 U.S. at 542 (quoting S. Rep. No. 1992, 87th Cong., 2d Sess., 3 (1962)). As discussed extensively *supra*, Congress has flatly precluded all claims by the federal government that it is too inconvenient to appear in courts outside the District of Columbia.

Even in Stafford's absence, Defendant Gonzales's convenience claims would fail. Relative to Washington, D.C., Plaintiff Dearth "is located a short drive from this judicial forum," Imperial Prods., 109 F. Supp. 2d at 818, and he is a frequent visitor to the area, where he has friends and family. "Unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others." Moses, 929 F.2d at 1139. But "[t]he venue transfer provisions of Section 1404(a) [are] not meant to merely shift the inconvenience to the plaintiff." Imperial Prods., at 818 (citations omitted). Considering this case would be decided on cross-

dispositive motions, it is not even apparent that anyone would be required to physically appear before the Court. The instant motion, notably, has been set by the Court for non-oral hearing.

Defendant Gonzales's accusations of forum-shopping against *Plaintiffs* (Defendant's forum-shopping is discussed *infra*) are particularly not well-taken. Defendant Gonzales complains that in naming Defendant Lockhart a defendant, "Plaintiffs' theory of venue would permit declaratory judgment plaintiffs seeking to challenge the constitutionality of any federal statute to bring the case in any district in the country through the simple expedient of naming as a defendant the local United States Attorney (or any other local federal officer charged with enforcement of the challenged statute)." Motion at 15. This is not "Plaintiffs' theory of venue." It is *Congress's* theory of venue, 28 U.S.C. § 1391(e)(1), as understood by the Supreme Court. Stafford v. Briggs, *supra*.

Defendant Gonzales's claim that this case should be consolidated with the Texas matter to conserve judicial resources likewise lacks merit. Conservation of judicial resources warrants consolidation of "inseparable parts of one single 'civil action,'" Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 27 (1960), but that is not the case here, any more than it was in the three separate partial birth abortion cases discussed *supra*. Plaintiff Dearth and the Texas case's Mr. Hodgkins may both have issues with the same laws, but they are different individuals, located in different places, facing different circumstances. They would be tried separately if they broke the law. To consolidate their challenges would be to punish each plaintiff for the existence of the other. Standing separately, each is entitled to the benefits of favorable circuit precedent in Ohio and Texas, respectively. But because Defendant Gonzales would prosecute them both, he seeks to consolidate both challenges under the unfavorable law of the D.C. Circuit.

This raises the other problem with Defendant Gonzales's consolidation precedent: it is

22

imported from *diversity* cases, where the transferee forum must apply the law of the transferor

forum.  The same is not true in cases such as this, which raise federal questions:

> The federal courts spread across the country owe respect to each other's efforts and
> should strive to avoid conflicts, **but each has an obligation to engage independently in
> reasoned analysis**. Binding precedent for all is set only by the Supreme Court, and for
> the district courts within a circuit, only by the court of appeals for that circuit. . . .

In re Air Disaster, 819 F. Supp. 1352, 1371 (E.D. Mich. 1993) (quoting In re Korean Air Lines

Disaster of September 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987), aff'd sub nom, Chan v.

Korean Airlines, Ltd., 490 U.S. 122 (1989) (emphasis original)).

Federal courts are aware that "[t]he distinction is potentially significant,"capable of

altering the substantive outcome of a case.  Bickley v. Caremark Rx, Inc., 361 F. Supp. 2d 1317,

1322 (N.D. Ala. 2004).   In Air Disaster, the Southern District of Texas transferred a case to the

Eastern District of Michigan.  Based on its own interpretation of federal law, the Michigan court

transferred the case back.

The result sought by Defendant Gonzales is inconsistent with the structure of the federal

courts.  So long as two people, in different circuits, are impacted by a federal law, the District of

Columbia would automatically be the only circuit that could interpret the law's constitutionality,

notwithstanding that prosecutions would occur locally throughout the United States.  The clock

would be turned back to 1961, and the D.C. Circuit would be the only forum for challenging

governmental action.  Such a result is hardly in the public interest, and it is certainly not the law.

Congress was well-aware of issues regarding the efficient use of judicial resources in

enacting Section 1391(e).  Court congestion in Washington, D.C. would quickly reach crisis

proportions if every Declaratory Judgment Act case in the nation were transferred there at the

Attorney General's Section 1404(a) request.  "Section 1391(e) was intended," in part, "to relieve

the courts in the District of Columbia of some of their case load." Pruess v. Udall, 359 F.2d 615, 618 (D.C. Cir. 1965). The local interests in having this dispute resolved locally is also paramount when considering the nature of Defendant Gonzales's forum shopping. As Plaintiff Dearth would be tried in Columbus, he is entitled to test the law under the constitutional standards operative in Columbus. It would be grossly unjust for the challenged statutes to be evaluated in a court that may not recognize the same constitutional rights prevalent in the court where the prosecution would occur.

This is precisely what transfer might accomplish. In the Sixth Circuit, Plaintiffs would likely prevail on at least their equal protection claims. See People's Rights Organization v. City of Columbus ("PRO"), 152 F.3d 522 (6th Cir. 1998). The outcome of this claim in the D.C. Circuit is uncertain. And while the D.C. Circuit has yet to address the nature of Second Amendment rights,[9] Plaintiffs have filed this case in part to have the Sixth Circuit reconsider its "collective right" precedent. United States v. Warin, 530 F.2d 103 (6th Cir. 1976).

Yet this is not the most significant choice-of-law issue warranting denial of the instant motion. The Court may reasonably wonder why Defendant Gonzales, in this of all pre-enforcement declaratory judgment challenges, seeks a transfer to the District of Columbia. The reason is found on page 1, footnote 2 of Defendant's Texas motion, in his citation to Navegar, Inc. v. United States, 103 F.3d 994 (D.C. Cir. 1997) for the proposition that gun control challenges are subject to heightened, if not normally impossible, pleading standards. Defendant Gonzales's motion before this Court is more circumspect, but the goal is the same.

This requirement is, as acknowledged by the D.C. Circuit, unique to that circuit, contrary

---

[9]That question is pending before the D.C. Circuit. Parker v. District of Columbia, 311 F. Supp. 2d 103 (D.D.C. 2004), on appeal, D.C. Cir. No. 04-7041 (argued Dec. 7, 2006).

to the law in the Sixth Circuit, in tension with other D.C. Circuit precedent and in conflict with Supreme Court precedent. If Defendant Gonzales had felt comfortable relying on Navegar in this circuit, he should have filed a Rule 12(b)(1) motion asserting lack of standing. As it were, the desire to first wrest the litigation into the Navegar circuit is mere forum-shopping.

An extended discussion of the D.C. Circuit's unique standing doctrine is contained in the Opposition to Defendant Gonzales's Texas motion, Plaintiffs' Exhibit A, at pp. 20-24. For purposes of this opposition, however, it is sufficient to observe that the D.C. Circuit has made clear that its standing doctrine is in direct conflict with that of the Sixth Circuit as announced in PRO. See Seegars v. Ashcroft, 396 F.3d 1248, 1255 (D.C. Cir. 2005). This Court is bound by Sixth Circuit and Supreme Court precedent. However, the District Court for the District of Columbia might be more easily persuaded that the challenged laws are immune from judicial review. That is the true forum-shopping reason compelling Defendant Gonzales's motion, and it is but another reason why the motion should be denied.

## CONCLUSION

Defendant Gonzales's motion should be denied.[10]

Dated: March 5, 2007                                   Respectfully Submitted,

Ryan D. Walters, Esq. (Ohio Bar No. 0076724)          Alan Gura, Esq.
Squire, Sanders & Dempsey L.L.P.                      Gura & Possessky, PLLC
312 Walnut Street, Suite 3500                         101 N. Columbus Street, Suite 405
Cincinnati, OH 45202-4026                             Alexandria, VA 22314
rwalters@ssd.com                                      alan@gurapossessky.com
513.361.1200/Fax 513.361.1201                         703.835.9085/Fax 703.997.7665
By:      /s/Ryan D. Walters            By:      _____
Ryan D. Walters, Esq.                                 Alan Gura, Esq.
Trial Attorney

                                                      Attorneys for Plaintiffs

---

[10]In the event the Court is inclined to grant Defendant Gonzales's motion, Plaintiffs respectfully request a dismissal rather than transfer.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and accurate copy of the foregoing document was

filed this 5th day of March, 2007 using the Court's CM/ECF System and was served

electronically to the following:

John R. Coleman
US Department of Justice
20 Massachusetts Ave, N.W.
Room 6118
Washington, DC 20530
202-514-4505
Fax: 202-616-8187
Email: john.coleman3@usdoj.gov

Counsel for Defendant Alberto Gonzales

Mark Thomas D'Alessandro
United States Attorney's Office - 2
303 Marconi Boulevard
2nd Floor
Columbus, OH 43215
614-469-5715
Email: mark.dalessandro@usdoj.gov

Counsel for Defendants Alberto Gonzales and Gregory G. Lockhart

 /s/ Ryan D. Walters
Ryan D. Walters