# EXHIBIT C

Plaintiffs' Opposition to Defendant Gonzales's Motion to Dismiss or, in the Alternative, Transfer, in *Hodgkins v. Gonzales,* Case No. 3:06-CV-2114-B (N.D. Tex.)

# IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **MAXWELL HODGKINS and SECOND** | § | |
| **AMENDMENT FOUNDATION, INC.,** | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO 3:06-CV-2114-B** |
| | § | |
| **v.** | § | |
| | § | |
| **ALBERTO GONZALES,** | § | |
| | § | |
| **Defendant.** | § | |

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Maxwell Hodgkins and the Second Amendment Foundation file their

Opposition to Defendant's Motion to Dismiss or, in the Alternative, Transfer, and in support

thereof show the Court as follows:

# TABLE OF CONTENTS

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A.      This Court is the Proper Venue for the Litigation, As All Events and Omissions
        Giving Rise to Plaintiffs' Claims Have Arisen Within This Judicial District.. . . . . . . . . . 4

        1.      Pre-Enforcement Challenges Under the Declaratory Judgment Act
                Relate to Previous or Current Events and Omissions, Not Future or
                Contingent Matters.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.      Pre-Enforcement Challenges Under the Declaratory Judgment Act
                Are Properly Heard Wherever Their Underlying Events or Omissions,
                Relating to the Plaintiffs' Coerced Compliance, Have Occurred or
                Are Occurring. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3.      Section 1391's Legislative History Does Not Contravene Its Plain Meaning.. . . . 13

B.      Defendant Cannot Satisfy the Burden Required to Transfer the Case
        Per 28 U.S.C. § 1404(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        1.      Plaintiffs' Choice of Forum Is Entitled To Substantial Deference. . . . . . . . . . . 15

        2.      This Forum Is Not Inconvenient For Defendant. . . . . . . . . . . . . . . . . . . . . . . . 16

        3.      The Public Concerns Strongly Counsel Against Transfer. . . . . . . . . . . . . . . . . . 19

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Constitution**

U.S. Const., art. III.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S. Const., amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Statutes**

11 U.S.C. § 526(a)(4).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 922(a)(9).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

18 U.S.C. § 922(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 922(v)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. § 1531. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 2251. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 2709. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1391. . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 6, 7, 8, 9, 11, 12 , 13, 14, 15, 19, 25

28 U.S.C. § 1404(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 19

28 U.S.C. § 2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

47 U.S.C. § 223. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Cases**

Andrade v. Chojnacki, 934 F. Supp. 817 (S.D. Tex. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289 (1979) . . . . . . . . . . . . . . . . . . 20, 22

Bach v. Pataki, 408 F.3d 75 (2nd Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Carhart v. Gonzales, 413 F.3d 791 (8th Cir. 2005),
    cert. granted, 126 S. Ct. 1314 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Coalition of New Jersey Sportsmen v. Whitman,
    44 F. Supp. 2d 666 (D.N.J. 1999), aff'd, 263 F.3d 157 (3d Cir. 2001). . . . . . . . . . . . . . 22

Connecticut Nat'l Bank v. Germain, 503 U.S. 249 (1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Ctr. for Individual Freedom v. Carmouche, 449 F.3d 655 (5th Cir. 2006). . . . . . . . . . . . . . . . 22

Doe v. Bolton, 410 U.S. 179 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22

Doe v. Duling, 782 F.2d 1202 (4th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Doe I v. Gonzales, 449 F.3d 415 (2nd Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Dorchester Gas Producing Co. v. U.S. Dep't of Energy, 582 F. Supp. 927 (N.D. Tex. 1983). . . 18

Electronic Data Systems Corp. Iran v. Social Sec. Organization of Iran,
    508 F. Supp. 1350 (N.D. Tex. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Epperson v. Arkansas, 393 U.S. 97 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

Experian Financial Solutions, Inc. v. F.T.C.,
    No. 3:00-CV-1631-H (N.D. Tex. March 8, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Flores v. City of Boerne, 877 F. Supp. 355 (W.D. Tex. 1995),
    rev'd, 73 F.3d 1352 (5th Cir. 1996), rev'd, 521 U.S. 507 (1997). . . . . . . . . . . . . . . . . . 18

Gillespie v. City of Indianapolis, 185 F.3d 693 (7th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . 22

Grencorp Fin. Ltd. P'ship v. GMAC Commer. Mortg. Corp.,
    2005 U.S. Dist. LEXIS 5640 (N.D. Tex. April 1, 2005). . . . . . . . . . . . . . . . . . . . . . . . 16

Hersh v. United States, 347 B.R. 19 (N.D. Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 21

Honeywell, Inc. v. Consumer Product Safety Com., 566 F. Supp. 500 (D. Minn. 1983). . . . 10, 11

In Re: American Airlines, Inc. Privacy Litigation, 370 F. Supp. 2d 552 (N.D. Tex. 2005). . . . . 18

Int'l Truck & Engine Corp. v. Quintana, 259 F. Supp. 2d 553 (N.D. Tex. 2003) . . . . . . . . . . . 16

Koog v. United States, 852 F. Supp. 1376 (W.D. Tex. 1994),

*rev'd*, 79 F.3d 452 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Leroy v. Great Western United Corp., 443 U.S. 173 (1979). . . . . . . . . . . . . . . . . . . . . . . . . 15

Mansfield v. Orr, 545 F. Supp. 118 (D. Md. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Medimmune, Inc. v. Genentech, Inc.,
     __ U.S. __, 127 S. Ct. 764, 166 L. Ed.2d 604 (2007). . . . . . . . . . . . . . . . . . . . 5, 6, 10, 22

Nat'l Abortion Fed'n v. Gonzales, 437 F.3d 278 (2nd Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . 7

Nat'l Propane Gas Ass'n v. U.S. Dep't of Transp., 43 F. Supp. 2d 665 (N.D. Tex. 1999). . . . . . 18

Navegar, Inc. v. United States, 103 F.3d 994 (D.C. Cir. 1997). . . . . . . . . . . . . . 20, 21, 22, 23, 24

New Hampshire Hemp Council, Inc. v. Marshall, 203 F.3d 1 (1st Cir. 2000). . . . . . . . . . . . . . 21

Parker v. District of Columbia, 311 F. Supp. 2d 103 (D.D.C. 2004),
     *on* appeal, D.C. Cir. No. 04-7041. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

Patmore v. Carlson, 392 F. Supp. 737 (E.D. Ill. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

People's Rights Organization v. City of Columbus, 152 F.3d 522 (6th Cir. 1998). . . . . . . . . 22, 24

Peteet v. Dow Chemical Co., 868 F.2d 1428 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . 16

Peyote Way Church of God, Inc.v. Smith, 742 F.2d 193 (5th Cir. 1984). . . . . . . . . . . . . . . . . 23

Planned Parenthood v. Farmer, 220 F.3d 127 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 20, 21

Planned Parenthood Fed'n of Am., Inc. v. Gonzales,
     435 F.3d 1163 (9th Cir. 2006), cert. granted, 126 S. Ct. 2901(2006). . . . . . . . . . . . . . . . . 7

Pruess v. Udall, 359 F.2d 615 (D.C. Cir. 1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

R.H. Donnelley Corp. v. F.T.C., 580 F.2d 264 (7th Cir. 1978). . . . . . . . . . . . . . . . . . . . 9, 10, 11

Reno v. ACLU, 521 U.S. 844 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Robertson v. Kiamichi R.R. Co., 42 F. Supp. 2d 651 (E.D. Tex. 1999). . . . . . . . . . . . . . . . . . . 16

Rogers v. Civil Air Patrol, 129 F. Supp. 2d 1334 (M.D. Ala. 2001). . . . . . . . . . . . . . . . . . 10, 11

Russell v. Nat'l Mediation Bd., 110 L.R.R.M. 2167 (N.D. Tex. 1983)............................. 18

Schexnider v. McDermott Intern., Inc., 817 F.2d 1159 (5th Cir. 1987). ..................... 16

Seegars v. Ashcroft, 396 F.3d 1248 (D.C. Cir. 2005). ............................................. 23, 24

Seegars v. Gonzales, 413 F.3d 1 (D.C. Cir. 2005)...................................................... 24

Shell Oil Co. v. Babbitt, 920 F. Supp. 559 (D. Del. 1996). ............................................. 13

Sims v. Bush, 2005 U.S. Dist. LEXIS 32347 (W.D. Tex. 2005)............................... 17

Speaks v. Kruse, 445 F.3d 396 (5th Cir. 2006)........................................................ 22

Stafford v. Briggs, 444 U.S. 527 (1980). ........................................................... 14, 17

Steffel v. Thompson, 415 U.S. 452 (1974). ...................................................... 20, 22

The Scooter Store, Inc. v. Leavitt, 2005 U.S. Dist. LEXIS 32348 (W.D. Tex. 2005)......... 18

United States v. Emerson, 270 F.3d 203 (5th Cir. 2001). ............................................. 19

United States v. Jackson, 891 F.2d 1151 (5th Cir. 1989). ........................................... 13

Winters Ranch Partnership v. Viadero, 901 F. Supp. 237 (W.D. Tex. 1995),
      rev'd, 123 F.3d 327 (5th Cir. 1997). ............................................................. 18

Xcaliber Int'l Ltd., LLC v. Ieyoub, 377 F. Supp. 2d 567, 571 (E.D. La. 2005),
      rev'd on other grounds, 442 F.3d 233 (5th Cir. 2006). ....................................... 13

Younger v. Harris, 401 U.S. 37 (1971). ................................................................ 23

Zuspann v. Brown, 864 F. Supp. 17 (W.D. Tex. 1994)............................................. 17

**Other Authorites**

Local Rule 7.1(g). ......................................................................................... 18

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER**

## I. INTRODUCTION

This lawsuit is relatively simple and straightforward.  Pursuant to the Declaratory

Judgment Act, 28 U.S.C. § 2201, Plaintiffs Maxwell Hodgkins and the Second Amendment

Foundation challenge the constitutionality of statutory provisions restricting the ability to receive

and purchase firearms on account of a citizen's foreign residence.

Owing to these laws, Mr. Hodgkins, a Dallas native who regularly visits Dallas, has

refrained from receiving and buying firearms in Dallas.  Pursuant to well-established principles

of litigating pre-enforcement challenges under the Declaratory Judgment Act, the Northern

District of Texas is plainly "the judicial district in which . . . a substantial part of the events or

omissions giving rise to the claim occurred."  28 U.S.C. § 1391(e)(2).  Indeed, the Northern

District of Texas is the judicial district in which <u>all</u> of the events and omissions giving rise to this

claim have occurred and continue to occur.[1]

Defendant's response to the Complaint largely avoids addressing any substantive issue.

Rather, Defendant seeks transfer to the *one* venue in the nation where he might arguably contest

standing.  Although Defendant alludes to the D.C. Circuit's standing precedent, it should be

noted that this standing theory, controversial within the D.C. Circuit, is valid nowhere else.[2]

---

[1]As Defendant notes, a parallel case was subsequently filed in the Southern District of
Ohio on behalf of SAF and an American citizen suffering from the same legal disabilities at issue
in this case, when visiting Ohio, on account of his Canadian residence.  Plaintiffs in that case are
also interested in asking the Sixth Circuit to revisit some of its Second Amendment precedent,
although existing Sixth Circuit precedent strongly backs their Equal Protection claims.

[2]Recent Supreme Court precedent suggests it is no longer valid, even in Washington,
D.C.  <u>See</u> *infra*, at 22.

Alas, forum-shopping is not a proper basis upon which to challenge venue. Venue being plainly appropriate within this judicial district, and Defendant's inconvenience arguments lacking any merit, Defendant's motion should be denied.

## II.  SUMMARY OF ARGUMENT

Plaintiff Maxwell Hodgkins is a native of Dallas. The Complaint makes it quite clear that Mr. Hodgkins would like to exercise his constitutional rights in Dallas, where he often visits.[3]  If Mr. Hodgkins were to do so, he would be arrested and prosecuted in Dallas. Accordingly, Mr. Hodgkins has refrained, and continues to refrain, from exercising his rights in Dallas. It follows logically that his pre-enforcement challenge to the laws, and that of his similarly situated co-plaintiffs, be brought in Dallas.

This analysis is consistent with the well-established understanding of how the Declaratory Judgment Act operates. In pre-enforcement challenges, the injury-in-fact giving rise to a justiciable controversy under the Act is not a plaintiff's hypothetical wish to commit some future act, but rather, the plaintiff's past or present restraint in the face of criminal penalties, coerced by the enforcing defendant. Not surprisingly, pre-enforcement challenges are routinely filed in whatever venue the plaintiffs' restraint has occurred, or is occurring.

Defendant founds his forum-shopping exercise upon two distinct, yet equally erroneous claims: that this venue is improper as well as inconvenient. The improper venue claim is based largely upon an inaccurate reading of the Complaint, and a misinterpretation of how the Declaratory Judgment Act operates. Significantly, none of the precedent cited by Defendant

---

[3]Mr. Hodgkins' Dallas upbringing is asserted only to explain his interest in exercising his constitutional right within this judicial district, as opposed to any of the other ninety-three judicial districts with which Mr. Hodgkins has no particular connection.

Plaintiff's Opposition to Motion to Dismiss or Transfer                    2

involves pre-enforcement challenges to criminal statutes. Defendant also asserts a rather novel legislative intent theory, apparently never adopted in the 45 year history of the venue statute and found nowhere in the plain text of the statute, claiming most declaratory actions against the United States must be brought in Washington, D.C. This simply has never been, under the modern statute, and is not now, the law.

When evaluating venue challenges asserting inconvenience, a plaintiff's choice of a permissible forum is not to be easily disregarded. A defendant seeking to undermine a plaintiff's legitimate forum choice carries a heavy burden. Defendant has failed to meet this burden.

In removing the requirement that plaintiffs suing the government must file their claims in Washington, D.C., and in granting district courts throughout the country the power to enjoin the federal government, Congress explicitly declared that it is not inconvenient for the Attorney General to defend the government anywhere it is sued within the United States. Moreover, the Attorney General, and his staff at the Justice Department's Federal Programs Branch, regularly appear voluntarily in countless cases throughout the United States, including the Northern District of Texas.

Yet unlike other actions litigated by the Federal Programs Branch, the instant case might never require travel by the government's attorneys. Of the various cases in this District impelling participation by opposing counsel, this case is among the most convenient for their office – a fact essentially admitted by the Defendant's concession that the case will not require any discovery or trial. However, altering the venue in this case will radically alter the legal standards under which it would be considered. That is the true purpose of Defendant's exercise, but it is also a compelling reason to reject Defendant's alternative transfer argument.

# III.  ARGUMENT

**A.**    **This Court is the Proper Venue for the Litigation, As All Events and Omissions Giving Rise to Plaintiffs' Claims Have Arisen Within This Judicial District.**

The parties agree that venue in a case such as this is appropriate "in 'any judicial district in which . . . (2) a substantial part of the events or omissions giving rise to the claim occurred. . .'" Def. Motion, at 6-7 (quoting 28 U.S.C. § 1391(e)(2)).  Unfortunately, Defendant seeks to read this action out of its plainly appropriate venue by relying upon a strained reading of the Complaint, ignoring the manner in which the Declaratory Judgment Act operates in pre-enforcement challenges, and citing a handful of inapposite cases that did not involve pre-enforcement challenges to criminal acts.

Section 1391, stresses Defendant, determines venue on the basis of previous events or omissions.  Yet the Complaint, according to Defendant, references only contingent *future* events within this judicial district.  Defendant erroneously claims that "the only events detailed in the Complaint that 'occurred' in this district were the birth and upbringing of Plaintiff Hodgkins . . . Likewise, Plaintiff Hodgkins' asserted desire to acquire firearms on his next visit to Texas is not an 'event' that has 'occurred.'"  Def. Motion, at 7.  "Plaintiffs' presumed theory of venue . . . is based on the potential impact on [Plaintiffs] should [they] someday seek to purchase a firearm in this district."  Def. Motion, at 8.

Because the Complaint is allegedly future-oriented with respect to Dallas, but Section 1391 requires the previous occurrence of events or omissions within this judicial district to sustain venue, Defendant claims venue within this District is not proper.  Additionally, although the wording of Section 1391 is clear and unambiguous, Defendant looks to Congressional intent

to advance a new and unusual theory: that cases against the United States not relating to "water

rights, grazing land permits, and mineral rights," Def. Motion, at 10, must be heard in the District

of Columbia.

     Defendant's improper venue claims are simply wrong.

     1.    <u>Pre-Enforcement Challenges Under the Declaratory Judgment Act Relate to
Previous or Current Events and Omissions, Not Future or Contingent Matters</u>.

     The Supreme Court's most recent examination of pre-enforcement actions under the

Declaratory Judgment Act came less than a month ago in <u>Medimmune, Inc. v. Genentech, Inc.</u>,

__ U.S. __, 127 S. Ct. 764, 166 L. Ed.2d 604 (2007).  In <u>Mediummune</u>, the Supreme Court

explained:

> [W]here threatened action by government is concerned, we do not require a plaintiff to
> expose himself to liability before bringing suit to challenge the basis for the threat -- for
> example, the constitutionality of a law threatened to be enforced. The plaintiff's own
> action (or inaction) in failing to violate the law eliminates the imminent threat of
> prosecution, but nonetheless does not eliminate Article III jurisdiction.

<u>Medimmune</u>, 166 L. Ed.2d at 616 (emphasis omitted).  In the parlance of the venue statute, 28

U.S.C. § 1391(e)(2), the "events or omissions giving rise to the claim" are "[t]he plaintiff's own

action (or inaction) in failing to violate the law."  <u>Medimmune</u>, 166 L.Ed.2d at 616.

     <u>Medimmune</u>'s interpretation of the injury occasioned by a criminal enactment as either a

past or present event, in the sense of coercion visited upon the plaintiff; or a past omission, in the

sense of the plaintiff's refraining from conduct proscribed by the statute, could hardly be

otherwise.  For if there were no previous or on-going injury, the pre-enforcement claim would

not be ripe.  There would be no live "case or controversy" to adjudicate.  U.S. Const., art. III.

Yet reviewing several pre-enforcement challenges, the Supreme Court explained, "[i]n each of

these cases, the plaintiff *had eliminated* the imminent threat of harm by simply not doing what he claimed the right to do . . . That did not preclude subject-matter jurisdiction because the threat-eliminating behavior *was* effectively *coerced*." Id. (emphasis added).

The concept that such "events or omissions" *have* occurred, or *are* occurring, at the time a pre-enforcement challenge is brought, is thus necessary to the federal courts' enterprise of entertaining pre-enforcement challenges under the Declaratory Judgment Act.

> 2. Pre-Enforcement Challenges Under the Declaratory Judgment Act Are Properly Heard Wherever Their Underlying Events or Omissions, Relating to the Plaintiffs' Coerced Compliance, Have Occurred or Are Occurring.

Because it is "the plaintiff's own action (or inaction)," coerced by the law, that creates a justiciable Article III controversy, Medimmune, 166 L.Ed.2d at 616, federal courts routinely hear pre-enforcement challenges to federal criminal enactments in whichever judicial district a plaintiff claims that said statutes are chilling his or her behavior. Indeed, as the District of Columbia comprises a very small fraction of the nation's land mass and population, it is readily obvious that most pre-enforcement challenges to federal laws are brought somewhere else.

Typically, the restraint occasioned by the challenged law is compelled against the plaintiffs where they live, which supplies an independent source of venue. 28 U.S.C. § 1391(e)(3). Admittedly, Plaintiffs in this case do not reside within this District. But if they did, Plaintiffs would not have standing to challenge a law that discriminates against them on the basis of their foreign residence. The fact is that this claim is arising somewhere, and that location is this judicial district. That Section 1391(e)(2) provides for venue in the district where the claim is occurring, distinct from venue where either the governmental defendant, § 1391(e)(1), or plaintiff, § 1391(e)(3), reside, establishes this judicial district as a proper venue.

That convenience to the Attorney General cannot trump an otherwise valid venue choice is illustrated by the pending litigation relating to the Partial Birth Abortion Ban Act of 2003, 18 U.S.C. § 1531.  Immediately upon enactment of this act, a host of doctors, clinics, and public interest groups brought constitutional challenges to the law, against the Attorney General, in three different states: Nebraska, Carhart v. Gonzales, 413 F.3d 791 (8th Cir. 2005), cert. granted, 126 S. Ct. 1314 (2006); California, Planned Parenthood Fed'n of Am., Inc. v. Gonzales, 435 F.3d 1163 (9th Cir. 2006), cert. granted, 126 S. Ct. 2901(2006); and New York, Nat'l Abortion Fed'n v. Gonzales, 437 F.3d 278 (2nd Cir. 2006).

In some sense, it could be claimed that the plaintiffs in these cases were simply averring that they or their members and clients would like to perform or, if need be, receive a partial-birth abortion at some future point in time in Nebraska, California, or New York.  In some sense, it might be claimed that the partial birth abortion ban's only connection with Nebraska, California, and New York is that the act might have some future impact in those states.

But the Partial Birth Abortion Ban Act clearly restrains the Carhart, Planned Parenthood, and NAF plaintiffs' desired conduct in Nebraska, California, and New York, respectively.  The coercion compelled by the Act is the "event" occurring in the venue states, as are the plaintiffs' "omissions" in refraining from conducting partial birth abortions in the venue states.  This provided no more or less venue than did plaintiffs' residence in the respective states, and the Attorney General's convenience in having all the cases consolidated in Washington did not make the venue choices any less valid.

Cases relating to the Internet arguably provide the best illustrations of the principle that the Attorney General's residence does not trump other proper venues under Section 1391.  After

all, the Internet does not exist in any particular place, and laws impacting Internet usage could be

said to have equal impact everywhere.  Yet challenges to the Patriot Act's Internet provisions, 18

U.S.C. § 2709, were brought against Defendant in Connecticut and New York, <u>Doe I v.</u>

<u>Gonzales</u>, 449 F.3d 415 (2nd Cir. 2006); a successful challenge to the Communications Decency

Act of 1996, 47 U.S.C. § 223, was brought against Attorney General Reno in Pennsylvania, <u>Reno</u>

<u>v. ACLU</u>, 521 U.S. 844 (1997); and a successful challenge to the Child Pornography Prevention

Act of 1996, 18 U.S.C. § 2251, was brought against Attorney General Ashcroft in California,

<u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234 (2002).

Pre-enforcement challenges to federal laws are not unknown within the Northern District

of Texas.  <u>Hersh v. United States</u>, 347 B.R. 19 (N.D. Tex. 2006).  In <u>Hersh</u>, a Dallas attorney

successfully challenged the constitutionality of 11 U.S.C. § 526(a)(4), forbidding attorneys from

offering bankruptcy clients certain advice.  The Attorney General, a defendant in <u>Hersh</u>, did not

apparently argue that the case belonged in Washington, D.C., as the Bankruptcy Code was

enacted in Washington, did not impact this District more than it did any other, and plaintiff had,

in any event, only asserted a desire to provide forbidden advice in Dallas at some future point.

If the law operates as described in Defendant's motion, venue in *all* of these significant

cases would have been improper on the Attorney General's convenience demand.  And

Defendant could be expected to point to even a *single case* where a pre-enforcement challenge to

a criminal law, nominally brought against the Attorney General in his official capacity, was

transferred to the District of Columbia on grounds of improper venue as per 28 U.S.C. § 1391(e).

But no such precedent is cited by the Attorney General's motion, as there is no such

precedent.  Instead, Defendant cites a handful of inapposite cases, not one of which involved a

pre-enforcement challenge to a criminal statute where it could be said that a plaintiff had been coerced into compliance with the challenged law.  As Defendant concedes, R.H. Donnelley Corp. v. F.T.C., 580 F.2d 264 (7th Cir. 1978), was a *post*-enforcement challenge to an administrative complaint that had already issued.  Def. Moion, at 8.  The FTC sought to enjoin publication of the *Official Airline Guide*, and the Guide's publisher subsequently sought to enjoin the FTC's Washington, D.C. proceeding with an action filed in Chicago.  The publisher advanced two theories for Chicago venue under Section 1391(e)(2): that the guide was published in Chicago, and that any orders issued by the FTC would impact the publisher in Chicago.

Neither of the publisher's theories have any relevance to the instant action, and both were rightly rejected.  With respect to the claim that the Guide was published in Chicago, the Seventh Circuit explained, the publisher "confuses its cause of action against the Commission with the Commission's cause of action against Donnelley.  The subject matter of Donnelley's action arose when the Commission filed a complaint against Donnelley."  Donnelley, 580 F.2d at 268.  The FTC's complaint, the subject of Donnelley's claim, was filed and maintained in Washington, D.C.  Id.  However, in the instant case, there is no claim pending against Plaintiffs in Washington, D.C., nor would there ever be such action filed against Plaintiffs in Washington, D.C.  If Mr. Hodgkins would violate the law, he would be prosecuted in Dallas.  See U.S. Const., amend. VI ("In all criminal prosecutions, the accused shall [be tried in] the State and district wherein the crime shall have been committed . . .").

The second of the publisher's venue theories, that an adverse FTC decision "might" have an impact in Chicago, was also rejected as too speculative.  Donnelley, 580 F.2d at 286.  After all, no such impact had "occurred" as required by Section 1391.  But the impact in this, a pre-

enforcement action against criminal statutes, has already occurred.  <u>See</u> <u>Medimmune</u>, 166 L.Ed.2d at 616.

Virtually identical to <u>Donnelley</u>, and thus equally irrelevant to the instant case, is <u>Honeywell, Inc. v. Consumer Product Safety Com.</u>, 566 F. Supp. 500 (D. Minn. 1983).  In <u>Honeywell</u>, the plaintiff filed an action to enjoin a pending agency proceeding against it.  Not surprisingly, the court found that "the cause of action here arose with the commencement of an administrative proceeding in the District of Columbia against Honeywell by the CPSC," <u>Honeywell</u>, 566 F. Supp. at 502.

Defendant also relies on the unpublished case of <u>Experian Financial Solutions, Inc. v. F.T.C.</u>, No. 3:00-CV-1631-H (N.D. Tex. March 8, 2001), where venue in this District was held improper to challenge an F.T.C. rule.  While arguably in the nature of a pre-enforcement challenge, <u>Experian</u> is ultimately unavailing.  The only claimed basis for venue within this District was plaintiff's claim that the F.T.C. was violating this Court's consent order in a previous case.  The Court held that the F.T.C. was not violating the consent order, and as there were no other allegations tying the controversy to this judicial district, venue here was improper.

Defendant's reliance upon <u>Rogers v. Civil Air Patrol</u>, 129 F. Supp. 2d 1334 (M.D. Ala. 2001) is likewise misplaced.  In <u>Rogers</u>, as aptly noted by Defendant, nothing had "occurred" in the Middle District of Alabama prior to the filing of the complaint.  Def. Motion, at 9.  Unlike the case at bar, <u>Rogers</u> was not a pre-enforcement challenge where the plaintiff had been or was being coerced into abandoning some desired behavior.  <u>Rogers</u> was merely a theoretical exercise challenging, under the Appointments Clause and Separation of Powers Doctrine, a provision of the 2001 defense budget determining the composition of a governmental board.

Plaintiffs in this action are not trying to enjoin the government's conduct of a proceeding already underway somewhere else, as was the case in <u>Donnelley</u> and <u>Honeywell</u>. Plaintiffs are not basing venue on previous litigation within this District, as was the case in <u>Experian</u>, nor are Plaintiffs contesting the formation of a government body that might someday have some impact within this District, as was the case in <u>Rogers</u>. Rather, like the plaintiffs in the vast majority of pre-enforcement challenges brought against the federal government *throughout the United States* since enactment of Section 1391(e) in 1962 – Plaintiffs are bringing a pre-enforcement challenge to a federal criminal enactment.

Like all such plaintiffs, Plaintiffs in this case assert that the challenged laws are coercing them to forego what they believe is constitutionally protected conduct. Mr. Hodgkins "enjoys visiting" Dallas, and "intends to continue" doing so "on a regular basis." Complaint, ¶ 6. Mr. Hodgkins "would like to access [his] firearms, as well as acquire new ones," for various reasons forbidden by the challenged laws, "in Texas." Complaint, ¶ 7. Plaintiffs "reasonably fear" – present tense – that they would be prosecuted for receiving firearms for non-sporting purposes, under the challenged criminal prohibitions on such receipt. Complaint, ¶¶ 12, 15.[4]

The provisions barring sales of firearms to non-resident citizens, which Plaintiffs are contesting, have already been tested. They are being enforced. Complaint, ¶ 19. Any attempt by Plaintiffs to purchase a gun legally would be a futile gesture. These provisions are therefore

---

[4]Defendant provides a lengthy discourse attacking Plaintiffs' vagueness challenge to 18 U.S.C. § 922(a)(9), claiming that Plaintiffs have nothing to fear should they access guns possessed prior to loss of domestic residence. Def. Motion at 11-13. While this position is in some ways reassuring, it does not address the problem of acquiring new firearms, and raises substantial equal protection, right to arms, and right to travel questions. Why allow previously possessed arms without restriction, but bar ownership of new arms, and restrict temporary possession of other arms to certain uses?

"presently causing . . . injury in that they prevent presently-intended firearms purchases."

Complaint, ¶ 20.[5]

Defendant is being sued for "presently enforcing," Complaint, ¶ 3, and "maintaining and

enforcing these laws." Complaint, ¶¶ 22, 24, 26, 28, 30, 33, 35. Defendant (rightly) expects

Plaintiffs and other members of the public to comply with all federal criminal laws on pain of

arrest, prosecution, fine, and imprisonment. That is precisely what has occurred, and is

occurring. And like all Americans, Plaintiffs are entitled to access the local court in the judicial

district where they are being compelled to obey the law, the same local court in which they would

be prosecuted should they break the law, and seek a determination of the laws' constitutionality

pursuant to the Declaratory Judgment Act.

Federal courts routinely hear cases against government officials in districts where the

claims occurred, per Section 1391(e)(2), but in which neither party resides, and no property is

involved. For example, an inmate transferred to a different prison could still sue the Director of

the Bureau of Prisons in the district where inmate was allegedly injured. Patmore v. Carlson, 392

F. Supp. 737, 738-39 (E.D. Ill. 1975). An ROTC recruit challenged the Air Force's alleged

breach of contract in the district where he had attended school and the contract was allegedly

breached. Mansfield v. Orr, 545 F. Supp. 118, 120 (D. Md. 1982). And more recently, based on

Section 1391(e)(2) (and the identical provisions of Section 1391(b)(2)), cases against the ATF

arising from the Branch Davidian incident were transferred to the Western District of Texas

---

[5]The denial or unavailability of a firearms permit, like the denial of any other permit, is an alternative source of standing, as such denial or unavailability is an independent injury-in-fact. See, e.g. Bach v. Pataki, 408 F.3d 75, 82-83 (2nd Cir. 2005). However, even if Plaintiffs were not barred from purchasing a firearm by operation of 18 U.S.C. § 922(b)(3), such acquisition would trigger a criminal prosecution pursuant to 18 U.S.C. § 922(a)(9).

because the incident occurred in Waco, notwithstanding the fact that the ATF made its contested

decisions in Houston.  <u>Andrade v. Chojnacki</u>, 934 F. Supp. 817, 826 (S.D. Tex. 1996).  <u>See also</u>

<u>Xcaliber Int'l Ltd., LLC v. Ieyoub</u>, 377 F. Supp. 2d 567, 571 (E.D. La. 2005), <u>rev'd</u> <u>on</u> <u>other</u>

<u>grounds</u>, 442 F.3d 233 (5th Cir. 2006).

     3.    <u>Section 1391's Legislative History Does Not Contravene Its Plain Meaning</u>.

"We have stated time and again that courts must presume that a legislature says in a

statute what it means and means in a statute what it says there.  When the words of a statute are

unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"  <u>Connecticut</u>

<u>Nat'l Bank v. Germain</u>, 503 U.S. 249, 253-54 (1992) (citations omitted); <u>see</u> <u>also</u> <u>United States</u>

<u>v. Jackson</u>, 891 F.2d 1151, 1152 (5th Cir. 1989).

Nonetheless, Defendant makes the extraordinary argument, based on the legislative

history of Section 1391, that "Congress' primary aim" in allowing all district courts to hear

claims against the government was to allow local determination of cases involving "water rights,

grazing land permits, and mineral rights."  Def. Motion, at 10 (citation omitted).  Suffice it to say

that Defendant's theory is a novel one, and does not appear in any precedent.

Defendant's theory flatly contradicts the words of the statute, which provides venue is

appropriate wherever "(2) a substantial part of the events or omissions giving rise to the claim

occurred, <i>or</i> a substantial part of property that is the subject of the action is situated."  28 U.S.C.

§ 1391(e)(2) (emphasis added).  "Water rights, grazing land permits, and mineral rights" reflect

Congressional concern that disputes relating to property be heard locally.  <u>See</u>, <u>e.g.</u> <u>Shell Oil Co.</u>

<u>v. Babbitt</u>, 920 F. Supp. 559 (D. Del. 1996).  But the first clause of subsection (e)(2) clearly has

no relation whatsoever to "water rights, grazing land permits, and mineral rights," yet is an

independent source of venue.

Defendant's legislative intent theory is based on a letter from the future Justice Byron White to the Chairman of the Senate Judiciary Committee, explaining that "[t]he principal demand" for expanding venue comes from individuals wishing to raise such claims. Id., at 10 n.5 (citation omitted). This is hardly a sufficient basis upon which to conclude that Congress's "primary aim," Def. Motion, at 10, was to mollify these interests, and no others. And it is an additional logical leap to conclude that such "primary aim," even if true, can override the plain language of the statute Congress actually enacted, which contains no such limit.

Perhaps owing to his involvement in the enactment of Section 1391, Justice White abstained from participation in the Supreme Court's leading case reviewing Section 1391(e)'s legislative purpose, a case not cited by Defendant -- Stafford v. Briggs, 444 U.S. 527 (1980).

Section 1391(e) "is designed to permit an action which is essentially against the United States to be brought locally rather than requiring that it be brought in the District of Columbia simply because Washington is the official residence of the officer or agency sued." Stafford, 444 U.S. at 540 (quoting H. R. Rep. No. 1936, 86th Cong., 2d Sess., 2 (1960)).

As the Supreme Court concluded:

What emerges is that the bill's author, the Committees, and the Congress intended nothing more than to provide nationwide venue for the convenience of individual plaintiffs in actions which are nominally against an individual officer but are in reality against the Government.

Stafford, 444 U.S. at 542.

Nonetheless, Defendant conflates concerns regarding inconvenient forums, with the governmental venue provisions of Section 1391(e). The Supreme Court, and Congress, do not

agree that the two issues are one and the same:

> The Government official is defended by the Department of Justice whether the action is brought in the District of Columbia or in any other district.  U.S. attorneys are present in every judicial district.  Requiring the Government to defend Government officials and agencies in places other than Washington would not appear to be a burdensome imposition.

Stafford, 444 U.S. at 542 (quoting  S. Rep. No. 1992, 87th Cong., 2d Sess., 3 (1962)).

Thus, Defendant's notion that venue outside of Washington, D.C. is improper, because it is inconvenient for the government, is precisely the notion Congress quashed when it amended Section 1391 to allow for national venue in governmental challenges.

Indeed, one of the cases relied upon but incompletely quoted by Defendant, makes this same point.  On page 10 of its motion, Defendant accurately quotes Leroy v. Great Western United Corp., 443 U.S. 173, 183-84 (1979) to the effect that "the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial."  (emphasis original) (footnote omitted).  But the very next sentence – omitted by Defendant – reads: "For that reason, Congress has generally not made the residence of the plaintiff a basis for venue in nondiversity cases.  *But cf. 28 U. S. C. § 1391(e)*."  Leroy, 443 U.S. at 184 (emphasis added).  Leroy was discussing the venue provisions of Section 1391(b), governing venue in diversity cases,  – and distinguishing them from the venue provisions of Section 1391(e), governing claims against the government.  This is not a diversity case.

**B.      Defendant Cannot Satisfy the Burden Required to Transfer the Case Per 28 U.S.C. § 1404(a).**

1.      Plaintiffs' Choice of Forum Is Entitled To Substantial Deference.

Title 28, U.S.C. § 1404(a) permits a court to transfer venue "[f]or the convenience of

parties and witnesses, [and] in the interest of justice." As Defendant concedes, he has the burden of showing why the case should be transferred. "[T]he plaintiff is generally entitled to choose the forum." Peteet v. Dow Chemical Co., 868 F.2d 1428, 1436 (5th Cir. 1989) (citation omitted).

"A plaintiff's choice of forum is entitled to great deference and generally should not be disturbed unless the balance of factors strongly favors the moving party." Int'l Truck & Engine Corp. v. Quintana, 259 F. Supp. 2d 553, 558 (N.D. Tex. 2003) (citation omitted). "[T]here is a 'strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum.'" Robertson v. Kiamichi R.R. Co., 42 F. Supp. 2d 651, 655 (E.D. Tex. 1999) (quoting Schexnider v. McDermott Intern., Inc., 817 F.2d 1159, 1163 (5th Cir. 1987)). In evaluating motions under this section, "the plaintiffs' choice of forum is given substantial deference," although "it is not conclusive or determinative." Grencorp Fin. Ltd. P'ship v. GMAC Commer. Mortg. Corp., 2005 U.S. Dist. LEXIS 5640 at *6 (N.D. Tex. April 1, 2005).

> The Court is also to consider various private and public interests in making its decision [including, private concerns:] (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law.

Id., at *6-7 (citation omitted). In considering these factors, Defendant fails to carry its burden that either the convenience of parties and witnesses, or the interests of justice, compels a transfer.

2.    This Forum Is Not Inconvenient For Defendant.

The analysis must start with the legislative presumption that no part of the United States

is too inconvenient for the Attorney General in which to litigate.  It bears repeating: "[r]equiring the Government to defend Government officials and agencies in places other than Washington would not appear to be a burdensome imposition."  Stafford, 444 U.S. at 542 (quoting  S. Rep. No. 1992, 87th Cong., 2d Sess., 3 (1962)).

It is specious to argue that litigating this case in the District of Columbia would be more convenient because "Defendant Gonzales resides in the District of Columbia."  Def. Motion, at 16.  "Defendant Gonzales" is sued only as the titular figurehead of the Department of Justice.  Although he is entitled to argue the case *in pro se*, it is unlikely that Mr. Gonzales would ever participate in this case.[6]

Nor will "officials and employees of the ATF," Def. Motion at 16, be inconvenienced by litigating this matter in Texas.  Opposing counsel has volunteered a consent motion to dispense with Rule 26 disclosures, Exh. A, because "discovery is not appropriate," Exh. B, ¶ 6, and the case will not be tried, as it would be resolved at the Rule 12 or 56 stage, Exh. B, ¶¶ 8, 9, 11.  Plaintiffs agree.  The case presents, as opposing counsel suggests, "a purely legal issue."  Exh. B, ¶ 10.  No one from the ATF's Washington, D.C. office will ever be called to this District.

Attorneys of the Federal Programs Branch, the Justice Department section charged with defending against this lawsuit, have previously defended lawsuits against the government in this state and District without apparently seeking transfer to Washington, D.C.  See Sims v. Bush, 2005 U.S. Dist. LEXIS 32347 (W.D. Tex. 2005); Zuspann v. Brown, 864 F. Supp. 17 (W.D. Tex.

---

[6]Plaintiffs are constrained to note that Mr. Gonzales is a leading citizen of Texas.  If the President is any guide, Mr. Gonzales might even claim Texas domiciliary for income tax purposes.  Virginia, where Mr. Gonzales resides, has an income tax; Texas does not.  (The District of Columbia cannot levy its income tax on non-residents who work in the city.)

1994); Dorchester Gas Producing Co. v. U.S. Dep't of Energy, 582 F. Supp. 927 (N.D. Tex. 1983); Electronic Data Systems Corp. Iran v. Social Sec. Organization of Iran, 508 F. Supp. 1350 (N.D. Tex. 1981).

Federal Programs Branch attorneys have also represented the government as plaintiffs in Texas. See The Scooter Store, Inc. v. Leavitt, 2005 U.S. Dist. LEXIS 32348 (W.D. Tex. 2005) (Federal Programs Branch attorneys plead counterclaims); Winters Ranch Partnership v. Viadero, 901 F. Supp. 237 (W.D. Tex. 1995) (same), rev'd, 123 F.3d 327 (5th Cir. 1997).

And Federal Programs Branch attorneys have even voluntarily intervened in Texas cases where they deemed it important to do so. See Flores v. City of Boerne, 877 F. Supp. 355 (W.D. Tex. 1995), rev'd, 73 F.3d 1352 (5th Cir. 1996), rev'd, 521 U.S. 507 (1997).

Indeed, at least one of the attorneys asserting inconvenience in Defendant's motion is well-known to this Court. Although Mr. Coleman appears to be a recent addition to the Attorney General's staff, his immediate supervisor, Sandra M. Schraibman, has participated in such cases as In Re: American Airlines, Inc. Privacy Litigation, 370 F. Supp. 2d 552 (N.D. Tex. 2005); Nat'l Propane Gas Ass'n v. U.S. Dep't of Transp., 43 F. Supp. 2d 665 (N.D. Tex. 1999); and Russell v. Nat'l Mediation Bd., 110 L.R.R.M. 2167 (N.D. Tex. 1983); see also Koog v. United States, 852 F. Supp. 1376 (W.D. Tex. 1994), rev'd, 79 F.3d 452 (5th Cir. 1996).

Many of these cases readily appear more complex than the one at bar. As noted *supra*, the parties agree this case will require no discovery or trial. Indeed, as the case should be decided on cross-dispositive motions, there is no guarantee that the Court would even hold a single hearing in Texas before resolving this case. Local Rule 7.1(g).

3.    The Public Concerns Strongly Counsel Against Transfer.

Court congestion in Washington, D.C. would quickly reach crisis proportions if every Declaratory Judgment Act case in the nation were transferred there at the Attorney General's Section 1404(a) request.  "Section 1391(e) was intended," in part, "to relieve the courts in the District of Columbia of some of their case load."  Pruess v. Udall, 359 F.2d 615, 618 (D.C. Cir. 1965).  The local interests in having this dispute resolved locally is also paramount when considering the nature of Defendant's forum shopping.  The purpose and function of the Declaratory Judgment Act – indeed, the purpose and function of the division of the United States Court of Appeals into geographical circuits – would be defeated if the government could divert pre-enforcement challenges to circuits where the law may favor the government's position.  As Mr. Hodgkins would be tried in Dallas, he is entitled to test the law under the constitutional standards operative in Dallas.  It would be grossly unjust for the challenged statutes to be evaluated in a court that does not recognize the same constitutional rights prevalent in the court where the prosecution would occur.

This is precisely what transfer would accomplish.  The Fifth Circuit holds that the Second Amendment secures individual rights.  United States v. Emerson, 270 F.3d 203 (5th Cir. 2001). As of this writing, the D.C. Circuit has not yet directly addressed the question, although the District Court for the District of Columbia has taken the opposite view.  Parker v. District of Columbia, 311 F. Supp. 2d 103 (D.D.C. 2004), on appeal, D.C. Cir. No. 04-7041.[7]

Yet this is not the most significant choice-of-law issue warranting denial of the instant

---

[7]Plaintiffs' Virginia counsel is counsel for plaintiffs in Parker.  The D.C. Circuit heard argument in Parker on December 7, 2006.

motion.  The Court may reasonably wonder why Defendant, in this of all pre-enforcement

declaratory judgment challenges, seeks a transfer to the District of Columbia.  The reason is

found on page 1, footnote 2 of Defendant's motion, in his citation to <u>Navegar, Inc. v. United

States</u>, 103 F.3d 994 (D.C. Cir. 1997) for the proposition that gun control challenges are subject

to heightened pleading standards, demonstrating "credible and immediate" threats of prosecution.

This requirement is, as acknowledged by the D.C. Circuit, unique to that circuit, contrary

to the law as interpreted elsewhere, and in tension with other D.C. Circuit precedent and in

conflict with Supreme Court precedent.  If Defendant had felt comfortable relying on <u>Navegar</u> in

this circuit, he should have filed a Rule 12(b)(1) motion asserting lack of standing.  As it were,

the desire to first wrest the litigation into the <u>Navegar</u> circuit is mere forum-shopping.  The Court

should understand the nature of the advantage being sought by Defendant.

"When contesting the constitutionality of a criminal statute, 'it is not necessary that [the

plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the]

statute that he claims deters the exercise of his constitutional rights.'"  <u>Babbitt v. United Farm

Workers Nat'l Union</u>, 442 U.S. 289, 298 (1979) (quoting <u>Steffel v. Thompson</u>, 415 U.S. 452, 459

(1974) (other citation omitted)).

"[W]hen the plaintiff has alleged an intention to engage in a course of conduct arguably

affected with a constitutional interest, but proscribed by a statute, and there exists a credible

threat of prosecution thereunder, he 'should not be required to await and undergo a criminal

prosecution as the sole means of seeking relief.'"  <u>Babbitt</u>, 442 U.S. at 298 (quoting <u>Doe v.

Bolton</u>, 410 U.S. 179, 188 (1973)).  Such a situation plainly satisfies the three elements of

standing: injury in fact, causation by the defendants, and redressability by the requested relief.

Planned Parenthood v. Farmer, 220 F.3d 127, 146 (3d Cir. 2000).

The requirement that a prosecutorial threat be "credible" is meant to eliminate those cases where plaintiffs are challenging a statutory relic which no prosecutor is likely to assert. For example, the Fourth Circuit rejected the credibility of the prosecutorial threat in declining to hear a challenge to Virginia's ancient bans on fornication and cohabitation, the last recorded convictions for which had occurred in 1849 and 1883, respectively. Doe v. Duling, 782 F.2d 1202 (4th Cir. 1986).

As a rule, however, pre-enforcement challenges are permitted where the statutes being challenged are "not moribund," Bolton, 422 U.S. at 188. As recently as 1968, the Supreme Court let a teacher challenge Arkansas' "monkey law," notwithstanding the possibility that "the statute is presently more of a curiosity than a vital fact of life." Epperson v. Arkansas, 393 U.S. 97, 102 (1968). If anything, "[t]here may be a trend in favor of . . . a practical approach" to standing, where "courts are content with any realistic inferences that show a likelihood of prosecution." New Hampshire Hemp Council, Inc. v. Marshall, 203 F.3d 1, 5 (1st Cir. 2000). Courts routinely allow challenges to statutes the moment such statutes go into effect, without waiting for historical evidence of prosecution. See, e.g. Hersh, 347 B.R. 19.

Against this background, in Navegar, the D.C. Circuit adopted a requirement that the prosecutorial threat not only be "credible," but imminently so. Navegar concerned a challenge by weapons manufacturers to the now-expired federal ban on "assault weapons," 18 U.S.C. § 922(v)(1). The law specifically banned certain firearms by name, and banned others by characteristics. The D.C. Circuit held that as to the former category of guns, the plaintiffs had standing. After all, federal agents had visited plaintiffs on the day the law went into effect, and

took inventories of previously manufactured, grandfathered weapons identified by name in the statute.  Subsequently, the government instructed plaintiffs not to violate the new law.  This much of <u>Navegar</u> is not controversial.

However, with respect to the second category of weapons, which arguably fell within the ambit of the ban, the D.C. Circuit held the plaintiffs were not suffering from a sufficiently imminent fear of prosecution so as to make their claims justiciable.  The new requirement, that plaintiffs challenging the constitutionality of criminal laws must first demonstrate a specific, impending prosecution, is consistent neither with the Supreme Court's instructions in cases such as <u>Babbitt</u>, <u>Steffel</u>, and <u>Bolton</u>, nor with the application of such precedent by other federal courts hearing pre-enforcement gun control challenges.  <u>See</u>, <u>i.e.</u> <u>Gillespie v. City of Indianapolis</u>, 185 F.3d 693, 710-11 (7th Cir. 1999); <u>People's Rights Organization v. City of Columbus</u> ("PRO"), 152 F.3d 522 (6th Cir. 1998); <u>Coalition of New Jersey Sportsmen v. Whitman</u>, 44 F. Supp. 2d 666, 673 n.10 (D.N.J. 1999), <u>aff'd</u>, 263 F.3d 157 (3d Cir. 2001).

The <u>Navegar</u> approach is also inconsistent with the Fifth Circuit's approach to standing. The Fifth Circuit does not require threats of prosecution to sustain pre-enforcement challenges to criminal statutes.  <u>Ctr. for Individual Freedom v. Carmouche</u>, 449 F.3d 655, 659-660 (5th Cir. 2006); <u>see</u> <u>also</u> <u>Speaks v. Kruse</u>, 445 F.3d 396, 399 (5th Cir. 2006).  And it is difficult to square <u>Navegar</u>'s requirement of an imminent prosecutorial threat with the Supreme Court's recent instruction in <u>Medimmune</u>, that in pre-enforcement challenges, plaintiffs have standing despite the fact that "[t]he plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." <u>Medimmune</u>, 166 L.Ed.2d at 616.

The problems that flow from such focus on the imminence of a threat in pre-enforcement declaratory actions are readily obvious.  So long as the government remains silent about its prosecutorial intentions, the citizen lacks standing to file the pre-enforcement challenge.  But once the government initiates a prosecution, courts must ordinarily abstain from entertaining a pre-enforcement challenge.  Younger v. Harris, 401 U.S. 37 (1971).[8]  Navegar thus renders the Declaratory Judgment Act a nullity.  Unless the government has personally threatened, yet refrained from arresting the plaintiff, the pre-enforcement challenge is either too early or too late.  The citizen is placed in precisely the predicament condemned by the Declaratory Judgment Act -- obey the possibly unconstitutional law, or risk prosecution.

The D.C. Circuit recently confronted Navegar's difficulties.  Seegars v. Ashcroft, 396 F.3d 1248 (D.C. Cir. 2005).  Seegars was the latter of two constitutional challenges to Washington, D.C.'s ban on the possession of handguns and all functional firearms.[9]  But applying Navegar, a reluctant 2-1 majority held none of the plaintiffs had standing to challenge the gun bans because none could demonstrate that they, specifically, would be targeted for prosecution, notwithstanding the well-known fact that virtually all violators are prosecuted.

The Seegars majority observed, "[w]e cannot help noting that Navegar's analysis is in sharp tension with standard rules governing preenforcement challenges to agency regulations,"

---

[8]"The challenger may not sue before he is truly injured; yet he may not wait until he is charged with a crime. He may invoke federal jurisdiction only if he can move through the narrow door between prematurity and exclusive state jurisdiction."  Peyote Way Church of God, Inc.v. Smith, 742 F.2d 193, 199 (5th Cir. 1984).

[9]Parker was filed well-before Seegars, but decided later.  The District Court in Parker ordered briefing, and heard argument concerning the issue of standing, but apparently found plaintiffs had standing as it reached the merits of their claims.

Seegars, 396 F.3d at 1253, and that "[t]here is also tension between Navegar and our cases

upholding preenforcement review of First Amendment challenges to criminal statutes." Id., at

1254. The court also conceded that Navegar was inconsistent with the pre-enforcement standing

requirements of at least one circuit. Id., at 1255 (noting conflict with PRO, 152 F.3d 522). And

as explained on petition for rehearing *en banc*, "[a]s a panel we were constrained by [Navegar],

even though, as my opinion for the court made clear, it appeared to be in conflict with an earlier

Supreme Court decision, [Babbitt]." Seegars v. Gonzales, 413 F.3d 1, 2 (D.C. Cir. 2005)

(Williams, Senior Circuit Judge).

  "Despite these apparent tensions," Seegars applied Navegar to bar standing, "*not because*

it represents our 'law of firearms.' . . . [but] because it represents the only circuit case dealing

with a non-First Amendment preenforcement challenge to a criminal statute that has not reached

the court through agency proceedings." Seegars, 396 F.3d at 1254 (emphasis original) (citations

omitted). This was hardly a ringing endorsement of Navegar's rationale. Among the votes for *en*

*banc* review was that of the current Chief Justice of the United States.

  It is unclear whether Navegar's rationale survives Medimmune, or how much support the

rule would enjoy within the D.C. Circuit if and when it is reconsidered. What is clear is that this

Court is bound by Fifth Circuit and Supreme Court precedent, which has not adopted Navegar's

special standard for pre-enforcement review cases which neither arise under the First

Amendment nor challenge agency determinations. Certainly there is no obvious reason to adopt

such an unusual standard, which is incompatible with the normal operation of the Declaratory

Judgment Act. However, the District Court for the District of Columbia might be more easily

persuaded that it is bound by Navegar to immunize the challenged laws from judicial review.

## IV. CONCLUSION

The "events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(e)(2), in the Northern District of Texas. Mr. Hodgkins is being coerced by the challenged provisions within this judicial district, the only one in which he would engage in prohibited conduct. This case is structurally no different than any other pre-enforcement challenge brought under the Declaratory Judgment Act. Such cases are always heard in the venue where the plaintiff's compliant conduct is coerced.

Section 1391 was specifically amended in 1962 to allow plaintiffs challenging government conduct to bring their claims in a forum local to the dispute, even if they do not reside there, and regardless of whether the dispute relates to any real property. Congress has rejected the notion that it is too inconvenient for government attorneys to defend the government outside the District of Columbia. Defendant's only purpose in seeking to bring this of all cases to Washington, D.C., is to shop for a standing defense.

Defendant's motion should be denied.[10]

Dated: February 5, 2007                     Respectfully Submitted,

William B. Mateja, Esq. (Texas Bar No. 13185350)     Alan Gura, Esq.
Fish & Richardson, P.C.                              Gura & Possessky, PLLC
1717 Main Street, Suite 5000                         101 N. Columbus Street, Suite 405
Dallas, TX 75201                                     Alexandria, VA 22314
214.747.5070/Fax 214.747.2091                        703.835.9085/Fax 703.997.7665

By: _____/s/William B. Mateja_____     By: _____/s/ Alan Gura_____
    William B. Mateja, Esq.                         Alan Gura, Esq.

                                           Attorneys for Plaintiffs

---

[10]In the event the Court is inclined to grant Defendant's motion, Plaintiffs respectfully request a dismissal rather than transfer.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served upon all counsel of record, as identified below, on February 5, 2007:

John R. Coleman
United States Dept. of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 6118
Washington, D.C. 20530

                                    /s/Alan Gura