**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**MAXWELL HODGKINS, et al.**    )
                               )
                 Plaintiffs,   )
                               )
v.                             )          Civil Action No.  09-00587 (JR)
                               )
**ERIC HOLDER,**                )
     Attorney General of the   )
     United States             )
                               )
                 Defendant.    )
_____)

## DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs' Opposition to Defendant's Motion to Dismiss fails to distinguish the binding precedent of this judicial circuit that requires dismissal of plaintiffs' lawsuit for lack of jurisdiction.  Plaintiffs do not have standing to bring this pre-enforcement challenge to § 922(a)(9) & (b)(3) under Article III or the Declaratory Judgment Act because none of the plaintiffs has demonstrated that the threat of his prosecution (or in the case of the organizational plaintiff, the threat of it or its members' prosecution) is sufficiently credible and immediate to create the "case" or "controversy" necessary to invoke this Court's jurisdiction.

Plaintiff Hodgkins has not alleged an intention to engage in prohibited conduct, and therefore cannot demonstrate a credible and immediate threat of prosecution.  Without such a threat, he does not have standing to seek a declaratory judgment notwithstanding his alleged past unsuccessful attempt to purchase a firearm.  Plaintiff Second Amendment Foundation (SAF) has not alleged that it or any of its members have suffered a cognizable injury and, therefore, it lacks standing to bring this suit on its own behalf or in a representative capacity.  Finally, although plaintiff Dearth has alleged an intention to purchase firearms at some indeterminate time in the

future to use for purposes not permitted by the challenged provisions, he has not alleged that he has been singled-out for prosecution by the federal government, or that his prosecution is a special priority for the federal government.  Nor has he alleged when in the future he might seek to purchase a firearm for purposes prohibited by the challenged provisions.  Without such allegations Dearth is unable to demonstrate his standing under the binding precedent of the District of Columbia Circuit.

Plaintiffs' attempt to distinguish the binding precedent of this circuit is unavailing. Plaintiffs seek to equate plaintiff Dearth with Anthony Heller, the lone plaintiff found to have standing in *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007).  Specifically, plaintiffs argue that private individuals' refusals, in January 2006 and June 2007, to violate the prohibition of 18 U.S.C. 922(b)(3) (or 18 U.S.C. § 922(a)(5)) and sell Dearth a firearm is somehow equivalent to the District of Columbia's denial of Heller's application for a license to a carry a handgun in *Parker*.  This argument is unavailing for three reasons.  First, plaintiffs incorrectly label the prospective sellers' refusal to violate federal criminal law an "administrative denial," but—unlike the refusal of the District of Columbia to issue Anthony Heller a registration certificate to own a handgun—the private individuals' refusal to violate § 922(b)(3) (or § 922(a)(5)) is not an action of defendant and is not an "administrative denial."  Second, as defendant pointed out in his opening brief, plaintiffs have brought suit under the Declaratory Judgment Act, which does not provide a remedy for past injuries.  Unlike Heller, plaintiffs have not brought suit under 42 U.S.C. § 1983 (nor could they), nor have they brought suit under any other statute that provides a cause of action to remedy past grievances.  Finally, unlike Heller, Dearth is not presently suffering from an inability to purchase a firearm for self-defense in his

home.  His attempts to purchase a firearm will likely be frustrated by the challenged provisions only upon his next attempt to purchase a firearm while visiting the United States, and he has alleged no actual or concrete plans to make such an attempt, as is necessary to invoke the jurisdiction of a federal court.  For any and all of these reasons, plaintiffs cannot evade this circuit's stringent standing requirements for pre-enforcement challenges to criminal statutes pursuant to the Declaratory Judgment Act.

As a result, plaintiffs must establish that they have been personally threatened with prosecution or that their prosecution is a special priority for the government.  Plaintiffs do not seriously contend that they can satisfy this standard, but argue that the Court should simply ignore the D.C. Circuit's binding precedent because, according to plaintiffs, this precedent is wrong.  Such an argument may be appropriate before an *en banc* panel of the United States Court of Appeals for the District of Columbia Circuit or the Supreme Court, but it is wholly inappropriate here.  The Court must faithfully apply this precedent.  Accordingly, because none of the plaintiffs have alleged that they have been singled-out for prosecution under the challenged provisions, their pre-enforcement challenge must be dismissed for lack of standing.

Plaintiffs' remaining argument is similarly meritless.  Plaintiffs contend, in effect, that because defendant did not challenge plaintiffs' standing in prior litigation, but successfully moved to dismiss for improper venue, the patent deficiencies in plaintiffs' standing should be ignored.  Not surprisingly, plaintiffs provide no support for this novel argument, and, indeed, this proposition is contrary to the constitutional requirement that a federal court cannot proceed to decide the merits of a dispute before establishing its jurisdiction.  In sum, plaintiffs do not have standing to bring this lawsuit, and this lawsuit should be dismissed for lack of jurisdiction.

**ARGUMENT**

**I.    No Plaintiff Has Standing to Bring this Pre-Enforcement Challenge Under the Declaratory Judgment Act**

To establish standing to bring a lawsuit under the Declaratory Judgment Act in federal court, plaintiffs must establish the "*continuing* existence of a live and acute controversy." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (emphasis added).  To satisfy this requirement in the context of pre-enforcement challenge to a federal criminal statute, such as plaintiffs' challenge to 18 U.S.C. § 922(a)(9) & (b)(3), plaintiffs must allege (and ultimately prove) that they have been "personally threatened with prosecution or that [their] prosecution has . . . 'special priority' for the government."  *Seegars v. Gonzalez*, 396 F.3d 1248, 1255 (D.C. Cir. 2005) (quoting *Navegar, Inc. v. United States*, 103 F.3d 994, 1001 (D.C. Cir. 1997)); *see also Parker v. District of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007) ("Applying *Navegar–Seegars* to the standing question in this case, we are obliged to look for an allegation that appellants here have been singled out or uniquely targeted by the D.C. government for prosecution.").  None of the plaintiffs are able to satisfy this standard and, therefore, this lawsuit must be dismissed for lack of jurisdiction.

**A.    Plaintiff Hodgkins Has Not Alleged An Intention to Violate the Challenged Provisions And, Therefore, Cannot Demonstrate a Live Controversy**

In his opening brief, defendant argued that plaintiff Maxwell Hodgkins did not have standing to challenge § 922's prohibition on his receipt of firearms for purposes other than sporting purposes, because—among other reasons—Hodgkins had not alleged an intention to purchase or otherwise "receive" firearms while visiting the United States in the future.  Instead, Hodgkins alleges that he seeks to access firearms he already owns that are securely stored in the

United States, Compl. ¶ 8, activity that plaintiffs concede is not prohibited by the challenged provisions.  Compl. ¶ 30 ("Section 922(a)(9) and 27 C.F.R. § 478.29a allow non-resident Americans to use pre-possessed firearms for all reasons.").  But, without allegations of an intention to engage in prohibited conduct, Hodgkins cannot demonstrate "the *continuing* existence of a live and acute controversy" that is required to invoke this Court's jurisdiction. *Steffel*, 415 U.S. at 459 (emphasis added).

Hodgkins' alleged past attempt to purchase a firearm from some unidentified seller "[o]n or about October 1, 2008," Compl. ¶ 24, is irrelevant to whether there presently exists a "live controversy" for purposes of the Declaratory Judgment Act.  In *Steffel*, the fact that the plaintiff (1) had engaged in prohibited conduct—distributing handbills in a shopping center—in the past, (2) had twice been warned to stop, (3) had been "told by the police that if he again handbills at the shopping center and disobeys a warning to stop he will likely be prosecuted", and (4) had witnessed the prosecution of his companion for similar conduct, did not establish plaintiff's standing to seek a declaratory judgment that the Georgia statute at issue violated his First and Fourteenth Amendment rights.  *Steffel*, 415 U.S. at 459.  Instead, the Supreme Court remanded the case to the district court to determine whether the plaintiff still intended to engage in prohibited handbilling, because without such an intention the case would no longer "present[] 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* at 459-60 (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Likewise, in *Golden v. Zwickler*, 394 U.S. 103 (1969), the Supreme Court affirmed the dismissal of a declaratory judgment action challenging the constitutionality of a statute making

"it a crime to distribute anonymous literature in connection with an election campaign,"
notwithstanding plaintiff's prior *conviction* under the statute and his alleged intention to continue
distributing anonymous literature in subsequent campaigns. *Id.* at 104-06.  The Supreme Court
found that plaintiff's allegation of an intention to engage in prohibited conduct was not
sufficiently credible or immediate to warrant the issuance of a declaratory judgment because the
Congressman who had been the subject of the anonymous literature was no longer running for
elective office. *Id.* at 109-10.  Of course, Hodgkins does not allege an intention to engage in
prohibited conduct, nor does he allege (nor could he given his law-abiding intentions) that he has
been singled-out for prosecution by the federal government.  *Parker*, 478 F.3d at 375.
Therefore, Hodgkins' alleged past attempt to purchase a firearm does not establish his standing
to seek a declaratory judgment.

> **B.      Plaintiff Second Amendment Foundation Does Not Have Organizational
>          Standing or Representational Standing**

Plaintiff SAF does not have standing to bring this declaratory judgment action, and
plaintiffs' cursory arguments to the contrary are without merit.

> 1.      *SAF Has Not Alleged that it Suffered A Cognizable Injury on Account of
>         the Challenged Provisions and, Therefore, Cannot Sue on Its Own Behalf*

Plaintiffs' argument that SAF has standing in its own right is baseless.  SAF has not
alleged that it has been "singled out or uniquely targeted by the [federal] government for
prosecution" under the challenged provisions, and therefore it does not have standing to
challenge these provisions under the Declaratory Judgment Act on its own behalf.  *Parker*, 478
F.3d at 375.  Furthermore, SAF's allegation that its purposes "include education, research,

publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control" does not establish its standing.  Compl. ¶ 3.

Plaintiff relies upon *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), but the organizational plaintiff in *Havens* was found to have standing to seek monetary damages (but not injunctive relief) because the discriminatory practices of the defendant had allegedly frustrated "its efforts to assist equal access to housing through counseling and other referral services," and caused it "to devote significant resources to identify and counteract the defendant's racially discriminatory steering practices." *Id.* at 379.  The Supreme Court found that "[s]uch concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests."  *Id.*  Unlike the organizational plaintiff in *Havens*, however, SAF is not suing for damages to remedy the expenditure of resources caused by the enforcement of the allegedly unconstitutional provisions against expatriate citizens.  Compl. ¶¶ 3, 25-37.  Indeed, SAF has not alleged that the enforcement of the challenged provisions against expatriate citizens has impacted it in any manner.  Compl. ¶ 3.  As a result, *Havens Realty* and its progeny do not support SAF's standing.  *See also Fair Employment Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1984) (rejecting an organization's argument that "the time and money that plaintiffs spend in bringing suit against a defendant would itself constitute a sufficient 'injury in fact,' [as] a circular position that would effectively abolish the [standing] requirement altogether."); *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 799 & n.2 (D.C. Cir. 1987) (same).

Although not alleged in the Complaint, plaintiffs argue in opposition to defendant's motion to dismiss that "[t]he government's enforcement of the challenged provisions . . . directly

impacts the organization." Pl. Opp. at 26.[1] But, mere "conflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996). "Frustration of an organization's objectives 'is the type of abstract concern that does not impart standing.'" *Id.* (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995)). Furthermore, as the Court of Appeals has recognized, to permit SAF to avoid the otherwise applicable jurisdictional requirements for bringing a declaratory judgment through the simple expedient of alleging that its organizational purpose is "impacted" by the mere existence of the challenged provisions would effectively eviscerate Article III's standing requirements: "Individual persons cannot obtain judicial review of otherwise non-justiciable claims simply by incorporating, drafting a mission statement, and then suing on behalf of the newly formed and extremely interested organization." *Id.* Thus, SAF has not suffered any cognizable injury and does not have standing to challenge § 922 on its own behalf.

> 2.      *SAF Has Not Alleged That Its Members Have Suffered a Cognizable Injury and, Therefore, Cannot Sue on Behalf of Its Members*

Plaintiffs' argument that SAF has organizational standing on behalf of its members is similarly flawed. As plaintiffs recognize, an organization may bring a lawsuit on behalf of its members only if, among other things, "its members would otherwise have standing to sue in their own right." Pl. Opp. at 26 (quoting *United Food & Commercial Workers Union Local 751 v.*

---

[1] Even if allegations presented in plaintiffs' opposition brief were otherwise sufficient to confer standing (they are not), they could not be considered in resolving defendant's motion to dismiss. *See Smith v. United States*, 475 F. Supp. 2d 1, 8 (D.D.C. 2006) ("Factual allegations in briefs or memoranda of law may not be considered when deciding a Rule 12(b)(6) motion . . . .") (citing *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994)).

*Brown Group, Inc.*, 517 U.S. 544, 553 (1996) (citation omitted)).  SAF has not alleged that *any*

of its members have suffered *any* injury on account of the challenged provisions, Compl. ¶ 3, let

alone an injury "of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment."  *Golden*, 394 U.S. at 108 (quoting *Maryland Cas.*, 312 U.S. at 273).  As a result, it

does not have organizational standing.

Plaintiffs' reliance on *Fraternal Order of Police v. United States*, 152 F.3d 998 (D.C. Cir.

1998), is misplaced for the obvious reason that in that case—unlike here—individual members

of the Fraternal Order of Police, the Chief Law Enforcement Officers, were injured because the

amendments to the Gun Control Act criminalized their provision of firearms to officers under

their command who had committed a misdemeanor crime of domestic violence, which presented

a "conflict[] with their obligations under state law."  *Id.* at 1001.  SAF alleges no similar injury

to any of its members.  Compl. ¶ 3.  Accordingly, it lacks organizational standing.

**C.      Plaintiff Dearth Has Not Alleged A Threat of Prosecution of Sufficient
          Immediacy and Reality to Invoke the Jurisdiction of this Court**

Plaintiff Dearth has not alleged that he has been "personally threatened with prosecution"

nor has he alleged that his "prosecution has . . . 'special priority' for the government."  *Seegars*,

396 F.3d at 1255 (quoting *Navegar*, 103 F.3d at 1001).  Accordingly, Dearth cannot satisfy the

jurisdictional requirements for bringing a pre-enforcement challenge in this Court for this reason

alone.  But Dearth's allegations are insufficient to establish pre-enforcement standing for other

reasons as well.  As defendant pointed out in his opening brief, Dearth resides in Canada and is

therefore not presently subject to the challenged provisions.  His allegation of a vague desire to

"purchase firearms within the United States" at some indeterminate time in the future, Compl. ¶

11, does not satisfy his burden of alleging a "live and acute controversy" of "sufficient

*immediacy* and reality to warrant the issuance of a declaratory judgment." *Steffel*, 415 U.S. at 459-60 (emphasis added); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 & n. 2 (1992) ("'some day' intentions—without any description of concrete plans, or indeed any specification of *when* the someday will be—do not support a finding of the 'actual or imminent' injury that our cases require."). Thus, Dearth is clearly unable to satisfy the standing requirements for bringing a pre-enforcement challenge to § 922 under the Declaratory Judgment Act.

Plaintiffs seek to evade these requirements by labeling the past refusal of private individuals to sell Dearth firearms—for fear of prosecution under 18 U.S.C. § 922(b)(3) or § 922(a)(5)—"administrative denials." Pl. Opp. at 8. In doing so, plaintiffs seek to equate Dearth's failed attempts to purchase firearms with the District of Columbia's denial of plaintiff Anthony Heller's application for a registration certificate to own a handgun in *Parker*, which the Court of Appeals found gave Heller standing to bring a claim against the District of Columbia pursuant to 42 U.S.C. § 1983 (but not 22 U.S.C. § 2201). Pl. Opp. at 10; *see also Parker*, 478 F.3d at 376-78. Plaintiffs' analogy fails for at least three reasons.

     1.    *Dearth's Past Unsuccessful Attempts to Purchase Firearms Do Not Constitute "Administrative Denials"*

First, Dearth's past unsuccessful attempts to purchase firearms from private individuals, the most recent of which occurred over two years ago, are not "license or permit denial[s]." *Parker*, 478 F.3d at 376. Dearth's attempts to purchase firearms were unsuccessful due to firearms dealers' refusal to violate the prohibition contained in § 922(b)(3) (as implemented by 27 C.F.R. §§ 478.96, 478.99), or unlicensed individuals' refusal to sell firearms on account of

those individuals' fear of prosecution under § 922(a)(5).[2]  The refusal of these private individuals

to violate the law and risk prosecution does not constitute an "administrative denial," just as a

pharmacist's refusal to sell prescription drugs to an individual without a prescription, *see* 21

U.S.C. § 829, or a local liquor store's refusal to sell alcohol to an individual under the age of

twenty-one, *see* D.C. Code § 25-781, would not constitute an "administrative denial."  Dearth's

unsuccessful attempts to purchase a firearm are categorically different than the District of

Columbia's denial of Anthony Heller's application for a license to carry a firearm in his home at

issue in *Parker*, 478 F.3d at 376, New York's presumed denial of David Bach's application for a

license to carry a concealed weapon at issue in *Bach v. Pataki*, 408 F.3d 75, 82-83 (2d Cir.

2005), and the Federal Communication Commission's "order directing [Jerry Szoka] to cease

broadcasting" at issue in *Grid Radio v. Fed. Commc'n Comm'n*, 278 F.3d 1314, 1316 (D.C. Cir.

2002).  Likewise, the prospective sellers' refusals to violate the law in January 2006 and June

2007 are categorically different from the government action at issue in the cases cited by the

majority in *Parker* in support of the proposition that the District of Columbia's denial of Heller's

application gave him standing under 42 U.S.C. § 1983.  *See Parker*, 478 F.3d at 376 (citing

*Cassell v. Fed. Commc'n Comm'n*, 154 F.3d 478, 480 (D.C. Cir. 1998) (reviewing the Federal

Communication Commission's denial of a license application to operate a private land mobile

radio service); *Wilkett v. I.C.C.*, 710 F.2d 861, 863 (D.C. Cir. 1983) (reviewing the Interstate

Commerce Commission's denial of an application for an expanded trucking license); *City of*

---

[2]  Although the Complaint makes clear that plaintiff Dearth's first attempt to purchase a firearm in January 2006 was through a licensed firearms dealer, Compl. ¶ 22, the Complaint does not indicate whether Dearth's subsequent attempt to purchase a firearm in June 2007was through a licensed dealer or an unlicensed individual.  Compl. ¶ 23.

*Bedford v. F.E.R.C.*, 718 F.2d 1164, 1168 (reviewing Federal Energy Regulatory Commission's denial of a preliminary hydroelectric permit)). Thus, unlike Heller, the government never said "no" to Dearth. The refusal of private individuals to risk prosecution by violating federal criminal law is not an "administrative denial."[3]

The characterization of plaintiffs' claims and the challenged actions of the defendant should not be controversial. Defendant is not being sued for denying applications of the individual plaintiffs, because plaintiffs never submitted an application for the government to deny. *See* Compl. ¶¶ 22-24. And, of course, defendant is not being sued for prosecuting either of the plaintiffs under the allegedly unconstitutional provisions. Rather, defendant is being sued, pursuant to the Declaratory Judgment Act, 22 U.S.C. § 2201, for his *prospective* enforcement of the challenged provisions, which Dearth alleges will effectively prevent him from receiving firearms in this country for purposes other than sporting purposes if he someday returns to the United States and seeks to purchase a firearm. *See* Compl. ¶¶ 11, 21, 25-37. This is the typical method of challenging the constitutionality of a criminal statute without subjecting oneself to prosecution. *See Steffel*, 415 U.S. at 459-60 (1974); *Seegars*, 396 F.3d at 1251 ("No plaintiff in this case has been arrested and prosecuted for violating the disputed provisions of the Code, so

---

[3] Plaintiffs cannot seriously contend otherwise. If plaintiffs believed that these (as yet unidentified) individuals' refusal to sell firearms to them constituted "administrative denials," they presumably would have attempted to sue these individuals under the Administrative Procedures Act, which—unlike the Declaratory Judgment Act—expressly provides a cause of action for the remedy of final agency actions that are "contrary to constitutional right." 5 U.S.C. § 706. Of course, because the individuals who chose not to sell Dearth and Hodgkins firearms are private individuals, and not officers of a federal agency, such a lawsuit would not raise a cognizable claim. *See* 5 U.S.C. § 701(b)(1), 706(2).

plaintiffs' case constitutes a 'preenforcement' challenge."); *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 279-80 (6th Cir. 1997).

Indeed, in the prior litigation challenging these statutes plaintiffs emphasized that their virtually identical claims brought under the Declaratory Judgment Act were pre-enforcement challenges.[4]  Defendant never suggested otherwise, but argued only that plaintiffs' fear of prosecution in a judicial district was not an "event" that had "occurred" in that district for purposes of 28 U.S.C. § 1391(e)(2).[5]  Thus, Dearth's claims are unlike Anthony Heller's in *Parker*, where the Court of Appeals found that the District of Columbia's denial of Heller's gun license "constitute[d] an injury independent of the District's prospective enforcement of its gun laws, and an injury to which the stringent requirements for pre-enforcement standing under *Navegar* and *Seegars* would not apply."  *Parker*, 478 F.3d at 376.  Plaintiffs' attempt to evade the requirements for pre-enforcement standing should be denied for this reason alone.

---

[4]  *See Dearth v. Gonzales*, Case No. 2:06-cv-1012, 2007 WL 1100426, at *4 (S.D. Ohio 2007) ("Plaintiffs allege that venue is nonetheless proper under 28 U.S.C. § 1391(e)(2) because their cause of action is being brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, *as a pre-enforcement action.*") (emphasis added); *see also Hodgkins v. Gonzales*, Case No. 3:06-cv-2114-B, at 3 (N.D. Tex. Aug. 15, 2007) ("As grounds for venue, Plaintiffs argue that a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas because, in essence, Hodgkins 'would like to access [his] firearms, as well as acquire new ones' when he visits friends and family in Texas and if Hodgkins were to do so "he would be arrested and prosecuted in Dallas.' (Pl. Resp. at 2, 11; Compl. at ¶ 7, 12).  Hodgkins argues that such acts or omissions are sufficient in the context of a *preenforcement challenge under 28 U.S.C. § 2201*. (Pl. Resp. at 6-12).") (emphasis added) (attached as Exhibit A).

[5]  *See, e.g.,* Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss or, in the Alternative, Transfer, at 5-10, in *Dearth v. Gonzales*, Case No. 2:06-cv-1012 (S.D. Ohio) (attached as Exhibit B); Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss or, in the Alternative, Transfer, at 9-10, in *Hodgkins v. Gonzales*, Case No. 3:06-cv-2114-B (N.D. Tex.) (attached as Exhibit C).

2.      *Standing to Seek a Declaratory Judgment Pursuant to 28 U.S.C. § 2201 Cannot be Based on Past Events*

Plaintiffs' attempt to analogize the refusal of private individuals to sell firearms to Dearth with the District of Columbia's denial of Anthony Heller's application for a gun license in *Parker* fails for an additional reason: Unlike Heller, Dearth has not brought suit under 42 U.S.C. § 1983, and therefore cannot evade "the stringent requirements for pre-enforcement standing under *Navegar* and Seegars." *See Parker*, 478 F.3d at 376, 378 (finding past denial of application for gun license sufficient for standing under § 1983, but not 22 U.S.C. § 2201).[6] Thus, *Parker* does not disturb the Supreme Court's clear precedent that the Declaratory Judgment Act requires the "*continuing* existence of a live and acute controversy," and that standing to seek a declaratory judgment cannot be based on past events. *See Steffel*, 415 U.S. at 459-60 (past threats of prosecution under challenged statute are not sufficient to establish standing under Declaratory Judgment Act); *Golden*, 394 U.S. at 104-06, 109-10 (past prosecution under challenged statute is not sufficient to establish standing under Declaratory Judgment Act); *see also Navegar*, 103 F.3d at 1001 (past visits by ATF agents and past letters

---

[6] The Second Circuit's decision in *Bach v. Pataki*, 408 F.3d 75 (2d Cir. 2005), which—unlike *Navegar, Seegars,* and *Parker*—is not binding on this Court, is also distinguishable on the ground that Bach's claims were also brought under 42 U.S.C. § 1983. *See* Complaint at ¶¶ 50-55, in *Bach v. Pataki*, Case No. 02-cv-1500 (N.D.N.Y.) (attached as Exhibit D). Likewise, *Grid Radio v. FCC*, 278 F.3d 1314 (D.C. Cir. 2002) has no relevance here because Jerry Szoka's injury was never disputed. *Id.* at 1319. Indeed, the Court of Appeals was considering his appeal of a cease-and-desist order and his civil forfeiture of $11,000, which the Court of Appeals recognized was sufficient injury. *Id.* at 1317-19 ("[T]he cease-and-desist order and forfeiture are, as Szoka argues, present injuries, both of which are fairly, if circuitously, traceable to the Commission's microbroadcasting ban."). The FCC did not dispute Szoka's injury, but only whether such injury was caused by the microbroadcasting ban, as opposed to Szoka's operation without a license. *Id.* at 1319. Causation and standing are separate elements of Article III standing, and plaintiffs' reliance on *Grid Radio* is, therefore, misplaced.

from ATF to plaintiffs warning them of challenged Act's prohibitions regarding manufacture and sale of firearms is not sufficient to establish standing under the Declaratory Judgment Act).[7] Accordingly, Anthony Heller's standing in *Parker* to bring a claim pursuant to 42 U.S.C. § 1983 based on the District of Columbia's past denial of his application for a gun license does not relieve Dearth from his burden of establishing, in this case brought pursuant to the Declaratory Judgment Act, 22 U.S.C. § 2201, "a threat of prosecution under the statute which is credible and immediate." *Navegar*, 103 F.3d at 998.

> 3.    *Unlike Heller and the Other Plaintiffs in the* Navegar-Seegars-Parker *Line of Cases, Dearth is Not Presently Impacted by the Challenged Provisions*

The final distinction between Dearth and Heller is that but for the District of Columbia's challenged provisions, Heller was—at all times during the litigation—prepared to purchase a handgun immediately for use for self-defense in his home. *Parker*, 478 F.3d at 373-74. By contrast, the challenged provisions' frustration of Dearth's alleged intention to purchase a firearm in this country for purposes other than sporting purposes will not arise until he actually visits the United States. Compl. ¶ 11. And, in this respect, he has alleged no concrete or immediate plans to do so, as is required by Article III of the Constitution. *See Lujan*, 504 U.S. at 564. Indeed, even those individual plaintiffs found not to have standing in *Seegars* and *Parker*

---

[7] Plaintiffs' continuing attempts to equate standing with venue should continue to be rejected. The differences between the two concepts are readily apparent. While a past attempt to purchase a firearm could plausibly be considered an "event" that has "occurred" for purposes of 28 U.S.C. § 1391(e)(2), it does not give rise to pre-enforcement standing unless accompanied by a "credible and immediate" threat of prosecution. *Navegar*, 103 F.3d at 998. Conversely, while a "credible and immediate" threat of prosecution could give rise to pre-enforcement standing, it would not, as a future, contingent event, be an "event" that had "occurred" for purposes of § 1391(e)(2). *See Dearth*, 2007 WL 1100426, at *4; *Hodgkins*, Case No. 3:06-cv-2114-B, at 3 (Ex. A)

could at least allege a present intention to engage in prohibited conduct. *Seegars*, 396 F.3d at 1251; *Parker*, 478 F.3d at 373-74. Dearth's inability to allege a similar present intention to engage in prohibited conduct, and his failure to allege any concrete plans to immediately engage in prohibited conduct, distinguishes his allegations of standing from those of Anthony Heller, as well as the other plaintiffs in *Seegars* and *Parker* who were not found to have standing. Dearth's allegations of injury are simply insufficient.

## II.      Plaintiffs' Disagreement With The Binding Precedent of the D.C. Circuit is Irrelevant

Unable to meet the requirements for pre-enforcement standing established by *Navegar* and its progeny, or to distinguish the holdings of these cases, plaintiffs instead argue that this binding precedent is wrong and should simply be ignored. Pl. Opp. at 14-22. This argument is wholly inappropriate in a district court, which must "faithfully apply the analysis articulated by *Navegar*" until it is overruled by the Supreme Court or an en banc panel of the Court of Appeals. *Seegars*, 396 F.3d at 1254; *see also In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (binding precedent for a district court within a circuit is set only by the Supreme Court and the court of appeals for that circuit).

In any event, plaintiffs' argument that they would have standing under any other circuit's precedent cannot withstand close scrutiny. The only plaintiff who even alleges an intention to engage in prohibited conduct that could give rise to a credible fear of prosecution, Dearth, does not allege when he might wish to do so. Instead, he vaguely alleges that he'd like to purchase firearms in the United States from some unidentified individual at some indeterminate point in the future. Such general allegations do not "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient *immediacy and reality* to warrant the issuance

of a declaratory judgment." *Golden*, 394 U.S. at 109-110 (emphasis added) (citation omitted);

*see also Lujan*, 504 U.S. at 564; *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (holding

that declaratory judgment plaintiffs lacked standing to challenge Secret Service's alleged policy

or practice of establishing protest zones at presidential appearances because plaintiffs only

alleged that they intended to protest again at some indefinite time and place in the future);

*Magaw*, 132 F.3d at 293 (plaintiffs lacked standing to challenge gun regulations based on

allegations that they "'wish' or 'intend' to engage in proscribed conduct"); *San Diego Gun*

*Rights Comm. v. Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996) (same).[8]  In sum, none of the

plaintiffs has standing to challenge the constitutionality of § 922 under the binding precedent of

this circuit, and plaintiffs' self-serving prediction of this precedent's demise is both baseless and

irrelevant.

III.    **Plaintiffs' Prior Decision to Bring Similar Lawsuits in Improper Venues Does Not Establish Their Standing In this Lawsuit**

        Essentially conceding that they lack standing under the binding precedent of this circuit,

plaintiffs argue that the fact that they previously brought similar lawsuits in improper

venues—where they contend they would have had standing—somehow relieves them of their

_____

        [8]  Plaintiffs do not argue that the Supreme Court's decision in *Medimmune, Inc. v. Genetech*, 549 U.S. 118 (2007), undermines the binding precedent of the D.C. Circuit, nor could they.  *Medimmune* concerned the operation of the Declaratory Judgment Act in the context of a patent dispute, not a pre-enforcement challenge to a criminal statute.  *Id.* at 120.  It was decided prior to the Court of Appeals' decision in *Parker*, and, as plaintiffs point out, the Court of Appeals was well aware of the Supreme Court's decision when it rendered its decision in *Parker*. *See* Pl. Opp. at 22 & n.13.  Furthermore, had the Supreme Court considered the *Parker* decision's allegiance to the *Navegar* theory "utterly inconsistent" with its decision in *Medimmune*, one would have expected it to grant the *Parker* plaintiffs' conditional cross-petition for certiorari on that issue.  It did not.  *See Parker v. District of Columbia*, 128 S.Ct. 2994 (June 27, 2008).

burden of establishing their standing in this Court.  Plaintiffs' novel theory is based on several

false premises, is unsupported by citation to any relevant authority, and, indeed, is contrary to

the fundamental requirements of Article III and the clear precedent of this circuit.  Thus, this

argument is riddled with numerous deficiencies and must be rejected.

Plaintiffs' argument derives from an initial legal proposition, unsuccessfully advanced

during the *Hodgkins* litigation, that a district court should not transfer a case pursuant to 28

U.S.C. § 1404(a) or § 1406(a) to a district in which plaintiffs would lack standing because it

would not be a "district or division where [the case] might have been brought."  28 U.S.C.

§ 1404(a).  This argument is not only irrelevant for purposes of resolving defendant's pending

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), it is wrong.  None of the cases plaintiffs

cites support their novel theory.[9]  In fact, plaintiffs' proposition is contrary to binding Supreme

Court precedent stating that "[t]here is no valid reason for reading the words 'where it might

have been brought' to narrow the range of permissible federal forums beyond those permitted by

federal venue statutes." *Van Dusen v. Barrack*, 376 U.S. 621, 623 (1964) (distinguishing

*Hoffman v. Blaski*, 363 U.S. 335 (1963), and holding that a plaintiff's inability to bring a suit in

the transferee forum because of state law limitations does not limit the transferor court's ability

to transfer under § 1404(a)'s limiting language).  Plaintiffs' argument has been rejected by a

district court in the Northern District of Illinois, which relied upon *Van Dusen* to hold that

---

[9]   *See Hoffman v. Blaski*, 363 U.S. 355 (1960) (28 U.S.C. § 1404(a) requires only that the transferee district court be a proper venue and be able to exercise personal jurisdiction over the defendants); *Piper Aircraft v. Reyno*, 454 U.S. 235 (1981) (dismissal for *forum non conveniens* is appropriate even where alternative forum's law is less favorable to plaintiff); *Scherer v. Purdue Pharma L.P.*, 317 F.Supp.2d 1253 (D. Kan. 2004) (transferring case without determining subject matter jurisdiction of transferee court).

differences in respective circuits' law of standing may be considered in the "interest of justice" analysis, but are not relevant to "the phrase 'where the action might have been brought[,' which] refers only to whether venue is proper and not a plaintiff's capacity to sue." *Carbonara v. Olmos*, Case No. 93-cv-2626, 1994 WL 61797, at *1 (N.D. Ill. Feb. 24, 1994) (citing *Van Dusen*, 376 U.S. at 616-24); *see also Ackert v. Bryan*, 299 F.2d 65, 70 (2d Cir. 1962) (upholding a § 1404(a) transfer despite the fact that transferee court would likely lack jurisdiction).  Thus, plaintiffs' initial legal premise is wrong.

Undeterred, plaintiffs leap from their flawed initial legal premise to the truly fantastic proposition that this Court should ignore the binding precedent of this circuit, under which plaintiffs effectively concede they lack jurisdiction, and deny defendant's motion to dismiss. Plaintiffs provide absolutely no support for this argument and, indeed, none exists.  Federal courts have an unwavering obligation to assure themselves that they have jurisdiction at all stages of litigation.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).  This is true even in cases of transfer.  *See Hoffman*, 363 U.S. at 340 n. 9 ("When, therefore, jurisdiction of the [transferee court] was assailed in the Seventh Circuit, by the petition for mandamus, that court surely had power to determine whether it would hold, on such an appeal, that the Illinois District Court did or did not have jurisdiction of the action and, if not, to say so and thus avoid the delays and expense of a futile trial."); *cf. Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801 (E.D. Va. 2007) (dismissing for lack of standing a transferred case notwithstanding transferor court's earlier, contrary holding).

Furthermore, it is unclear—as a logical matter—how plaintiffs' novel proposition follows from plaintiffs' initial flawed premise that a court should not transfer a case to a forum in which

plaintiff would lack standing.  The two prior lawsuits were not transferred to this Court.  Rather, they were both dismissed for improper venue pursuant to 28 U.S.C. § 1406(a), at plaintiffs' contingent request.[10]  Nearly two years later, plaintiffs filed this lawsuit in this forum, notwithstanding the potential availability of alternative fora.[11]  Accordingly, plaintiffs were not, as they contend, "forced to litigate their case[] in [a] venue[] where they would lack standing." Pl. Opp. at 22.  They *chose* "to litigate their case[] in [a] venue[] where they would lack standing."  *Id.*  They can hardly complain about it now.[12]

Finally, though it is not necessary to reject plaintiffs' frivolous argument, defendant denies that plaintiffs had standing in either of the prior two lawsuits.  Although defendant decided not to challenge plaintiffs' standing during the prior litigation in his initial motions to

---

[10]  *See Hodgkins v. Gonzales*, Case No. 3:06-cv-2114-B, at 4 (N.D. Tex. Aug. 15, 2007) ("[T]he Court finds that the Northern District of Texas is an improper venue.") (Ex. A); *id.* at 5 n. 2 ("The Court notes that Plaintiffs request dismissal rather than transfer."); *Dearth v. Gonzales*, Case No. 2:06-cv-1012, 2007 WL 1100426, at *5 (S.D. Ohio April 10, 2007) ("Thus, in light of Plaintiffs' request for dismissal and the Court's conclusions that venue here is improper or, if proper and concurrent, inconvenient compared to alternative forums, the Court DISMISSES the case without prejudice.").  Plaintiffs appealed these decisions, and both appeals were dismissed for lack of appellate jurisdiction.  *See Dearth v. Mukasey*, 516 F.3d 413, 414 (6th Cir.2008) ("Because the plaintiffs requested the dismissal without prejudice as an alternative to transfer, however, the district court's order is an unappealable voluntary dismissal."); *Hodgkins v. Mukasey*, 271 Fed. Appx. 412 (5th Cir. 2008) (same).

[11]  For example, venue might have been proper under 28 U.S.C. § 1391(e)(3) in the Western District of Washington, the venue in which SAF is incorporated, Compl. ¶ 3, or possibly, as the district court in *Dearth* suggested, the District of Minnesota.  *Dearth*, 2007 WL 1100426, at *5.

[12]  Even if this case had been transferred here, this Court would be obligated to apply the binding precedent of this circuit and dismiss plaintiffs' claims for lack of jurisdiction.  *See Hartline v. Sheet Metal Workers' Nat. Pension Fund*, 286 F.3d 598, 599 (D.C. Cir. 2002) ("When a case that is governed by federal law is transferred from one federal court to another, the transferee court should decide the federal claim based on its own circuit's interpretation of the law.") (citing *Korean Air Lines Disaster*, 829 F.2d 1171 (D.C.Cir.1987)).

dismiss, defendant's decision did not operate as a waiver of his jurisdictional defense, and he would not have been precluded from moving to dismiss for lack of subject matter jurisdiction if his motions to dismiss or transfer had been denied.  *See* Fed. R. Civ. P. 12(h)(3).  Likewise, the district courts were entitled to dismiss plaintiffs' prior lawsuits for the non-merits reason of improper venue without first determining whether plaintiffs had standing.  *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'") (citations omitted).  Thus, defendant never conceded subject matter jurisdiction in the prior litigation, and no federal court determined whether plaintiffs' allegations were sufficient to establish their standing.  Accordingly, plaintiffs' assertion that they would have had standing in either of these jurisdictions, *see* Pl. Opp. at 22, is a baseless and self-serving assertion of absolutely no relevance to resolving the instant motion.

In summary, the Court should reject plaintiffs' untenable argument that their prior attempts to litigate their claims in improper venues (where they contend, without support, that they would have had standing) should somehow prevent dismissal of their lawsuit under the binding precedent of this circuit.  "The point has been cogently made that venue provisions are designed with geographical convenience in mind, and not to 'guarantee that the plaintiff will be able to select the law that will govern the case.'"  *In re Korean Air Lines Disaster*, 829 F.2d at 1175 (quoting *Piper Aircraft*, 454 U.S. at 257 n. 24).  The law that governs this case requires dismissal of plaintiffs' lawsuit for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that this Court grant

defendant's motion to dismiss.

Respectfully submitted,

TONY WEST
Assistant Attorney General

CHANNING D. PHILLIPS
Acting United States Attorney

SANDRA M. SCHRAIBMAN
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

  */s/ John R. Coleman*
JOHN R. COLEMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Room 6118
Washington, D.C. 20530
(202) 514-4505
john.coleman3@usdoj.gov

*Counsel for Defendant*

Date:   July 20, 2009