# EXHIBIT C

Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss or, in the Alternative, Transfer, in *Hodgkins v. Gonzales*, Case No. 3:06-cv-2114-B (N.D. Tex.)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAXWELL HODGKINS, et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION No. 3:06-CV-2114-B |
| ALBERTO GONZALES,<br>    Attorney General for the United<br>    States, | § § § § § | |
| Defendant. | § § | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER**

# INTRODUCTION

In their Opposition to Defendant's Motion to Dismiss or, in the Alternative, Transfer Plaintiffs appear to be arguing that the Declaratory Judgment Act permits plaintiffs to bring pre-enforcement declaratory judgment actions *in any judicial district* in which they may, at some indeterminate point in the future, wish to act in a manner prohibited by an allegedly unconstitutional statute, notwithstanding the fact that nothing else related to the lawsuit has ever occurred in the district, and the fact that neither plaintiffs nor defendants reside in the district. Plaintiffs' position is contradicted by the relevant precedent, the intent of the venue provision, and common sense. Accordingly, because venue is improper in this district, this case should be dismissed or transferred to the United States District Court for the District of Columbia.

Likewise, Plaintiffs' opposition to the permissive transfer of this case fails to adequately address the reasons for such a transfer: litigation of this case in the United States District Court for the District of Columbia is *more* convenient than litigation in this district not only because the District of Columbia is the site of the relevant events, parties and counsel, and the only proper venue, but also because transfer of this case to the District of Columbia will allow it to be consolidated with the nearly identical case filed by Plaintiff SAF in the Southern District of Ohio, in which Defendant has recently moved to transfer for many of the same reasons cited herein. Such transfer would thus promote judicial economy as well.

# ARGUMENT

## I. VENUE IS IMPROPER

As the Supreme Court has declared, "the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of

trial." Leroy v. Great Western United Corp., 443 U.S. 173, 183-86 (1979). To accomplish this purpose the venue provision that applies to suits against federal officers, such as Defendant Gonzales, allows a plaintiff to bring suit—

> in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).[1] Plaintiffs have conceded that none of the parties reside in the Northern District of Texas and therefore Plaintiffs have the burden of demonstrating that a "substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C. § 1391(e)(2). Plaintiffs have failed to carry this burden.

**A.     Plaintiff Hodgkins' Alleged "Injury" Is Not an "Event" Giving Rise to this Lawsuit**

Defendant's opening brief argued, on the basis of several opinions, "that mere allegations of a future impact of federal law in a judicial district are insufficient to support venue." Defendant's Mem. at 7. Plaintiffs' brief in opposition concedes that the future contingent event alleged in the complaint—Plaintiff Hodgkins' prosecution for violating the challenged provisions—is not a sufficient basis for venue, but argues nonetheless that the threat of this future contingent event, which is allegedly chilling Plaintiff Hodgkins' behavior, is both "injury" sufficient to satisfy Article III's standing requirements,[2] and an "event" giving rise to Plaintiffs'

---

[1]This provision is far more generous to prospective plaintiffs than the general venue provisions because, unlike those provisions, it allows suit to be brought in the district in which a plaintiff resides. See 28 U.S.C. § 1391(a), (b), (e). Plaintiffs have still failed to demonstrate proper venue.

[2]Defendant denies that Plaintiffs have standing to bring this lawsuit under any circuit's governing precedent, see infra Part II, but believes this issue ought to be reached only if the Court determines this district is a proper venue. See Reuben H. Donnelly v. F.T.C., 580 F.2d 264, 266

claims for purposes of § 1391(e)(2). Plaintiffs' Opp. at 6. This argument has been considered and rejected by other courts and should be rejected here as well.

A similar attempt to conflate Article III's standing inquiry with the venue inquiry under § 1391(e)(2), was specifically rejected in Seariver Mar. Fin. Holdings, Inc. v. Pena, 952 F.Supp. 455 (S.D.Tex. 1996). In Seariver, Plaintiffs, the owners of the vessel formerly known as the Exxon Valdez, brought suit in the Southern District of Texas seeking a declaratory judgment that a provision of the Oil Pollution Act that prohibited the vessel from operating on Prince William Sound, Alaska violated the constitution. Id. at 456. In response to Defendant's motion to dismiss for improper venue or to transfer the case to Alaska, Plaintiffs argued "that the effects of [the challenged provision] . . . are felt in Houston, and that these local effects give rise to venue." Id. at 459. The district court rejected this argument: "The 'effects' to which Plaintiffs refer are the injury resulting from [the challenged provision], rather than an 'event giving rise to a claim' that could properly lay venue." Id.

Plaintiffs' present argument is uncannily similar to the Seariver plaintiffs' unsuccessful argument rejected by the district court in Seariver. That argument proceeded, in part, as follows:

> [S]tanding principles, therefore, must guide the determination of venue. If the right to bring a constitutional declaratory judgment action depends on whether there is a "danger" of suffering "direct injury" as a result of a statute's "operation," then venue is logically found where that injury has already occurred and is occurring.

Id. (quoting Plaintiffs' Response at 9). After acknowledging that "a realistic danger of direct injury can confer standing on a party," the district court nevertheless held that "Plaintiffs'

---

(7th Cir. 1978) (addressing the "threshold question" of venue before considering whether plaintiffs had exhausted their administrative remedies, a question of subject matter jurisdiction).

-3-

arguments as to standing are not probative on the venue issue." Id. at 459-60. The requirement of standing is separate and in addition to the requirement of proper venue, and therefore even "[i]f Plaintiffs' claims raise a genuine issue of standing, the question must be addressed by a court with proper venue." Id. Thus, notwithstanding the alleged "injury" felt by the Seariver plaintiffs —tangible economic injury that, unlike the alleged injury suffered by Plaintiff Hodgkins over in London, was occurring and had occurred in Texas—the district court held that "a 'substantial part of the events or omissions giving rise to the claim' did not occur in this judicial district, and that Section 1391(e)(2) does not provide a basis for venue here." Id. at 461. Accordingly, the district court dismissed the action for improper venue.[3]

Other opinions cited in Defendant's initial brief likewise reject attempts to base venue on the threat of federal law enforcement in a judicial district. For example, in Reuben H. Donnelly Corp. v. F.T.C., 580 F.2d 264 (7th Cir. 1978), plaintiff Donnelly brought suit in the Northern District of Illinois seeking a declaratory judgment that the Federal Trade Commission lacked jurisdiction over its publication of the *Official Airline Guide*. Id. at 266. Donnelly defended its chosen venue as proper under § 1391(e)(2), on the ground that "the impact of any Commission action, for example, a cease and desist order, will be felt by Donnelly in Illinois." Id. at 268. This argument, rightly rejected by the Seventh Circuit, is indistinguishable from the argument Plaintiffs make here, which is that Congress exceeded its authority in passing the challenged provisions, and that the impact of this allegedly unconstitutional action may be felt in the

---

[3] To avoid Alaska jurisdiction, the Seariver plaintiffs re-filed their action in the United States District Court for the District of Columbia. The D.C. district court subsequently granted the government's motion, under 28 U.S.C. § 1404(a), to transfer the case to Alaska. See Seariver Mar. Fin. Holdings, Inc. v. Pena, Case No. 96-02142 (D.D.C. Jan. 29, 1997) (attached as Exhibit A).

Northern District of Texas.

The district court decisions in Honeywell, Inc. v. Consumer Prod. Safety Comm'n, 566 F.Supp. 500 (D.Minn. 1983), and Experian Fin. Solutions, Inc. v. F.T.C., Case No. 3:00cv1631-H, 2001 WL 257834 (N.D.Tex. March 8, 2001), similarly reject attempts by declaratory judgment plaintiffs to base venue on the impact of some future, contingent enforcement of federal law in the chosen venue. See Honeywell, 566 F.Supp. at 501-02; Experian, 2001 WL 257834 at 3. Plaintiffs fail to adequately distinguish these cases. If the future impact of possible enforcement of federal law in the chosen venue is an insufficient basis for venue, the "threat" of this possible federal law enforcement must also be insufficient.

Thus, as stated by the district court in Rogers v. Civil Air Patrol, 129 F.Supp.2d 1334 (M.D.Ala. 2001), mere "[a]llegations that the [challenged provision] will require performance at a later date in this judicial district cannot support venue under section § 1391(e)(2)." Like Rogers, this case is "a challenge to federal legislation drafted by Congress and signed by the President in the District of Columbia." Id. at 1339. And, as in Rogers, Plaintiffs have not alleged "any significant activity that took place within this judicial district, prior to the filing of Plaintiff's Complaint, which gave rise to Plaintiff's cause of action." Id. Accordingly, because "virtually all of the activity giving rise to Plaintiff[s'] claims took place in or around the District of Columbia, it is not plausible to argue that Plaintiff[s'] claims arose in [the Northern District of Texas.]" Id.[4]

---

[4]Likewise, in Experian, the district court noted that "the issue before the Court involves a pure question of law: Did the FTC exceed its statutory authority in making the rule?" The district court suggested that the District of Columbia would be a proper venue. Experian, 2001 WL 257834 at 3-4. Likewise, the issue here is a pure question of law: did Congress exceed its constitutional authority when it enacted the challenged provisions. This issue should also be

Unable to distinguish this precedent, Plaintiffs cite a number of inapposite declaratory judgment cases that stand for the proposition that the government doesn't challenge venue when it is proper. Some of these cases were brought by plaintiffs who resided in the chosen forum, thereby satisfying venue pursuant to § 1391(e)(3).[5] Presumably for this reason, the government did not challenge venue in any of these cases, and no court addressed whether the "injury" suffered by pre-enforcement declaratory judgment plaintiffs could satisfy § 1391(e)(2). Likewise, the declaratory judgment cases cited by plaintiffs that based venue on § 1391(e)(2) all involved the occurrence of actual "events" in the chosen forum.[6] By contrast, Plaintiffs are not residents of the district in which they seek to bring this declaratory judgment, nor can they point to any actual events that have occurred in this district. Thus, Plaintiffs' citation to cases in which venue is proper merely highlights the impropriety of Plaintiffs' chosen forum.

Finally, common sense supports the refusal to allow declaratory judgment plaintiffs seeking to challenge a federal criminal law to sue wherever they allege they may in the future

---

resolved in the District of Columbia.

[5] See e.g., Carhart v. Gonzales, 331 F.Supp.2d 805, 814 (D.Neb. 2004) ("Plaintiff LeRoy Carhart, M.D., practices medicine and surgery and performs abortions in Nebraska."), affirmed 413 F.3d 791 (8th Cir. 2005) cert. granted 126 S.Ct. 1314 (2006); Planned Parenthood Fed'n of Am. v. Gonzales, 320 F.Supp.2d 957 (N.D.Cal. 2004) (Plaintiff Planned Parenthood Golden Gate resides in district) affirmed 435 F.3d 1163 (9th Cir.) cert. granted 126 S.Ct. 2901 (2006); Nat'l Abortion Fed'n v. Gonzales, 330 F.Supp.2d 436, 459 (S.D.N.Y. 2004) (plaintiff Westhoff resides in district) affirmed 437 F.3d 278 (2nd Cir. 2006); Ashcroft v. Free Speech Coalition, 535 U.S. 234, 243 (2002) (plaintiffs reside in California); Hersh v. United States, 347 B.R. 19 (N.D.Tex. 2006) (plaintiff was a "Dallas Attorney").

[6] See Xcaliber Int'l Ltd., LLC v. Ieyoub, 377 F.Supp.2d 567, 571 (E.D.La. 2005) (sales of tobacco in district), rev'd on other grounds, 442 F.3d 233 (5th Cir. 2006); Andraje v. Chojnacki, 934 F.Supp. 817, 826 (S.D.Tex. 1996) (fifty-one day siege and physical attacks in district); Mansfield v. Orr, 544 F.Supp. 118, 120 (D.Md. 1982) (breach of contract in district); Patmore v. Carlson, 392 F.Supp. 737, 738-39 (E.D.Ill. 1975) (assault with club in district).

desire to engage in the prohibited activity. Plaintiffs' argument, if accepted, "raises the real possibility of test cases being brought, far from the site of the actual controversy, in districts whose judges have acquired a reputation for sympathy for the particular cause being urged in the complaint." Kings County Econ. Cmty. Dev. Ass'n v. Hardin, 333 F.Supp. 1302, 1304 (N.D.Cal. 1971). In addition, Plaintiffs' interpretation renders superfluous the other provisions of § 1391(e), a result certainly not intended by Congress. Cf. Kings County, 333 F.Supp. at 1304.[7]

**B.  Plaintiff Hodgkins Has Not Alleged "Injury" in the Northern District of Texas**

Even if the Court disagrees with the foregoing and concludes that the "restraint occasioned by the challenged law" can be considered a "substantial part of the events giving rise" to this declaratory judgment action, Plaintiffs have still failed to tie this "event" to this judicial district. Plaintiff Hodgkins does not reside in this district, and he has not alleged that he has been inhibited from receiving firearms in Texas in the past, only that "he would like to acquire new [firearms] . . . while visiting his friends and family in Texas" at some indeterminate point in the future. Complaint ¶ 5. Therefore, to the extent Plaintiff Hodgkins' alleged "injury" is an "event" giving rise to this claim, it is an event that has occurred and is occurring outside the Northern District of Texas. Accordingly, for either of two independent reasons, Plaintiffs have failed to

---

[7]Contrary to Plaintiffs' assertion, the statement that § 1391(e) was largely intended to broaden the venue provision so that proceedings involving "water rights, grazing land permits, and mineral rights" could be brought locally is from the body of the Senate Report. S. Rep. No. 87-1992 (1962), reprinted in 1962 U.S.C.C.A.N. 2784, 2786. This evidence of legislative intent is also reflected in Byron White's letter to the Chairman of the Judiciary Committee. Id. at 2789. This legislative history is cited merely to demonstrate that while Congress wanted to broaden the venue provisions for suits against federal officers, they did not intend to provide universal venue for declaratory judgment plaintiffs challenging federal statutes.

satisfy their burden of demonstrating proper venue, and this case must be dismissed or transferred to an appropriate venue. 28 U.S.C. § 1406(a).

## II. LITIGATION OF THIS CASE IN THE DISTRICT OF COLUMBIA CONSERVES THE PUBLIC'S MONEY AND JUDICIAL RESOURCES

Even if venue were proper in this district, transfer of this case to the District of Columbia would be appropriate "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). To begin with, Plaintiffs' choice of forum is entitled to little respect because "the plaintiff[s] are nonresident[s] of the forum," and because "the cause of action did not conclusively arise in the selected forum." Salinas v. O'Reilly Auto., Inc., 358 F.Supp.2d 569, 571 (N.D.Tex. 2005) (quoting Eugene v. McDonald's Corp., Case No. 96 C 1469, 1996 WL 411444, at *2 (N.D.Ill. July 18, 1996)). Furthermore, Plaintiffs do not address the primary reason this case should be transferred: transfer would allow this case to be consolidated with the nearly identical case brought by Plaintiff SAF currently pending in the Southern District of Ohio, Dearth v. Gonzales, Case No. 06-CV-1012 (S.D.Ohio), in which Defendant recently filed a similar motion to dismiss or, in the alternative, transfer. Instead of litigating two cases far from the site of the relevant events and the relevant parties, Defendant's motions seek to litigate a consolidated case in the District of Columbia. Not only does this avoid the unnecessary expenditure of the public's money, it conserves judicial resources by avoiding unnecessary parallel litigation. As the Supreme Court has observed, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Ferens v. John Deere Co., 494 U.S. 516, 531 (1990) (quoting Continental Grain Co.

v. The FBL-585, 364 U.S. 19, 26 (1960)).

In addition, Plaintiffs' argument with respect to its so-called "public concerns" is based on an incorrect description of the governing law and an incorrect presumption regarding Defendant's motives for seeking transfer. First, as demonstrated by the many declaratory judgment cases from the around the country cited by Plaintiffs, the Department of Justice does not challenge venue in all declaratory judgment actions, only those, as here, in which venue is patently improper or plaintiffs are engaging in blatant forum-shopping. See e.g., Seariver Mar. Fin. Holdings, Inc. v. Pena, 952 F.Supp. 455 (S.D.Tex. 1996). Furthermore, Plaintiffs' plea that the Court not dismiss or transfer the case—because they want to take advantage of what they consider favorable Fifth Circuit precedent and avoid unfavorable District of Columbia Circuit precedent—turns venue law on its head and provides a classic example of forum-shopping. Their claim that the government's transfer motion constitutes forum-shopping and an attempt to deprive them of a chance to win their case, when Plaintiffs have blatantly ignored § 1391(e) and Plaintiff SAF has filed essentially the same case in two different district courts, looks a lot like chutzpah.

Moreover, even were the Court sympathetic to their argument, Plaintiff's premise is incorrect. The Fifth Circuit's opinion in United States v. Emerson, 270 F.3d 203 (5th Cir. 2001), does not provide comfort for their claims or give them pre-enforcement standing. More to the point are the decisions finding against pre-enforcement standing in challenges to the Assault Weapons Ban found in the Crime Control and Law Enforcement Act of 1994,[8] as well as

---

[8] See Nat'l Rifle Ass'n v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997) ("courts have allowed pre-enforcement review of a statute with criminal penalties when there is a *great* and *immediate* danger of irreparable loss.") (emphasis added); Navegar v. United States, 103 F.3d

subsequent decisions describing the requisite injury for pre-enforcement challenges to state and local gun control laws.[9] Although the Fifth Circuit has not considered standing in relationship to a pre-enforcement challenge to gun control laws, its precedent likewise requires "a substantial controversy of sufficient immediacy and reality." Shields v. Norton, 289 F.3d 832, 837 (5th Cir. 2002) (plaintiff bringing a pre-enforcement challenge to Take Provision of the Endangered Species Act could "not establish a specific, concrete threat of immediate litigation sufficient to establish the controversy requisite to declaratory judgment.").[10]

Because the District of Columbia is a proper, convenient forum for the resolution of this case and the related case brought by Plaintiff SAF, transfer to that district meets both the convenience and interest of justice prongs of § 1404(a). By contrast, Plaintiffs, clearly sensitive to differences in circuit precedent, have filed two nearly identical suits, both in improper venues.

---

994, 1001 (D.C. Cir. 1997) (requiring "credible" and "imminent" threat of prosecution); San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996) ("To assert standing . . . plaintiffs must show a '*genuine* threat of *imminent* prosecution' under the Crime Control Act.").

[9] See e.g., Peoples Rights Org., Inc. v. City of Columbus, 152 F.3d 522 (6th Cir. 1998) ("actual present harm or a significant possibility of future harm [requried] to justify pre-enforcement relief."); Coalition of New Jersey Sportsmen, Inc. v. Whitman, 44 F.Supp.2d 666, 673 n.10 (D.N.J. 1999) (alleged future harm must be "real and substantial," and of "sufficient immediacy and reality.") aff'd 263 F.3d 157 (2001).

[10] The cases cited by Plaintiffs on the issue of standing are inapposite. Medimuune, Inc. v. Genetech, Inc., —U.S.— , 127 S.Ct. 764 (2007), resolved the question whether "a patent licensee [must] . . . terminate or be in breach of its license agreement before it can seek a declaratory judgment that the underlying patent is invalid, unenforceable, or not infringed," and discussed the standing requirements for pre-enforcement challenges to criminal laws only in dicta. 127 S.Ct. at 767. Likewise, the Fifth Circuit decisions cited by Plaintiffs involve "First Amendment[s] challenges [that present] unique standing issues because of the chilling effect, self-censorship, and in fact the very special nature of political speech itself." Ctr. for Individual Freedom v. Carmouche, 449 F.3d 655, 660 (5th Cir. 2006); Speaks v. Kruse, 445 F.3d 396, 399 (5th Cir. 2006) (First Amendment challenge).

-10-

This Court should grant Defendant's motion.

## CONCLUSION

For all of the foregoing reasons, Defendant Gonzales respectfully requests this Court to grant Defendant's motion to dismiss or, in the alternative, to transfer.

Dated: February 20, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

RICHARD B. ROPER
United States Attorney

STEVEN P. FAHEY
Assistant United States Attorney

SANDRA M. SCHRAIBMAN
Assistant Branch Director

    s/ John R. Coleman
JOHN R. COLEMAN, VSB #70908
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6118
Washington, D.C. 20530
Tel (202) 514-4505
Fax (202) 616-8187
john.coleman3@usdoj.gov

*Counsel for Defendant*