# EXHIBIT D

Complaint, in *Bach v. Pataki*, Case No. 02-cv-1500 (N.D.N.Y.)



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK
# ALBANY DIVISION

David D. BACH,

    Plaintiff,

v.

George E. PATAKI, in his official
capacity as Governor of New York;
Eliot SPITZER, in his official capacity
as Attorney General of New York; James
W. MCMAHON, in his official capacity as
Superintendent, New York State Police;
J. Richard BOCKELMANN, in his official
capacity as Ulster County Sheriff,

    Defendants.

Civil Action No. 

**02-CV-1500**



**FEDERAL CONSTITUTIONAL
ISSUES OF FIRST IMPRESSION
IN THE SECOND CIRCUIT**

## Plaintiff's Application for Preliminary and Permanent Injunction, and Declaratory Relief

Plaintiff, David D. Bach, *pro se*, states as follows:

### Introduction

1. This Application seeks declaratory and injunctive relief to protect the substantive constitutional rights of ordinary, law–abiding, nonresident citizens of sister States to keep and bear otherwise lawful firearms while temporarily residing, visiting and traveling within the State of New York; and to protect these citizens from unlawful discrimination and criminal prosecution under State law. Bach seeks a declaratory judgment that New York's licensing provisions (as codified in NY Penal Law §§ 265.00 and 400.00, *et seq.*), facially, and as applied,

violate the fundamental personal rights, privileges and immunities of ordinary, law–abiding, nonresident citizens to keep and bear arms, and travel interstate under the Second and Fourteenth Amendments, and Article IV of the United States Constitution. In addition, Bach requests the Court to grant a preliminary injunctive order pending a determination of the merits to prevent any further irreparable harm to Bach and other ordinary nonresident citizens whose constitutional rights continue to be infringed under New York law.

## Jurisdiction and Venue

2. This action arises under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331, and 1343(a)(3) and (4), which grant federal courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, and any civil action authorized by law to be commenced by any person. Discretionary jurisdiction is also conferred and authorized by 28 U.S.C. §§ 2201 and 2202. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) in that the defendants reside in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## Parties

3. Plaintiff David D. BACH, is a citizen of the United States, and the State of Virginia where he also maintains his domicile.

4. Defendant George E. PATAKI, is Governor and Chief Executive of the State of New York. He is sued in his official capacity.

5. Defendant Eliot SPITZER, is Attorney General and Chief Legal Officer of the State of New York. He is sued in his official capacity.

6. Defendant James W. MCMAHON, is Superintendent of the New York State Police. Defendant McMahon is responsible for administering New York State's firearms licensing system through the New York State Police, Pistol Permit Bureau. He is sued in his official capacity.

7. Defendant J. Richard BOCKELMANN, is Sheriff of Ulster County, New York. Sheriff Bockelmann is responsible for processing firearms license applications through the Pistol Permit Unit for residents of Ulster County. He is sued in his official capacity.

## Factual Background

8. Bach is a citizen of the United States and the State of Virginia. He possesses a permit to carry a concealed handgun in accordance with Virginia law and owns a 9mm pistol substantially similar to the type used by the United States Armed Forces, National Guard, and law enforcement.[1]

9. Bach is a Commissioned Officer in the United States Naval Reserve with over twenty-five years of service. He is experienced in handling and providing instruction in many types of small arms due to his service as a Navy SEAL. He holds a Department of Defense Top Secret Security Clearance and has never been convicted of a felony, firearms related crime, or any other serious offense.[2]

10. Bach is a graduate from an accredited law school and has been a licensed attorney in good standing from the State of Pennsylvania since 1985. During the past seventeen years, he has been employed by the Office of the General Counsel, Department of the Navy as a civilian attorney, except for a period of approximately four–and–a–half years when he volunteered to return to active duty as a Navy SEAL both during and after Operation DESERT STORM.[3]

11. Bach is married and has three young children. Although born in New Jersey, he grew up in the Town of Saugerties, County of Ulster, New York where his parents continue to reside.[4]

---

[1] Attachment 1 to Bach affidavit (copy of valid Permit to Carry Concealed Handgun issued by the Commonwealth of Virginia).
[2] *See* Bach affidavit.
[3] *Id.*
[4] *Id.*

3

12. Bach and his family periodically visit his parents on their farm for several days at a time. During the ten-hour drive between Virginia and Upstate New York, and while visiting, Bach wishes to possess and carry his personal firearm at various times in accordance with New York law to protect his family from violent criminal acts.[5]

13. Law enforcement personnel are relatively few and far between and have no legal duty to respond to an emergency 911 call, or protect or defend a citizen or family from violent criminal acts. Despite the exceptional efforts of New York's law enforcement personnel, they cannot prevent the vast majority of violent criminal attacks that occur daily as evidenced by the tens of thousands of ordinary, law-abiding American citizens who have been, and continue to be brutally attacked, terrorized and murdered by sadistic criminals each year in New York State.

14. According to the FBI's Uniform Crime Statistics, over 100,000 violent crimes are committed in New York State each year. This figure represents nearly eight percent of all violent crimes committed in the U.S. per annum.

15. As a parent, Bach bears ultimate responsibility for the safety, welfare, protection and defense of his family. The State of New York however, has no legal duty whatsoever to protect or defend Bach or his family from violent criminal acts.

16. NY Penal Law §§ 265.00 and 400.00, *et seq.*, when read together, prohibit Bach and other *ordinary*,[6] law-abiding nonresident citizens from possessing, carrying or transporting a firearm within New York State borders.

17. NY Penal Law §§ 265.00(3) defines "firearm" as "(a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length...."

---

[5] *Id.*
[6] For purposes of this suit, an "ordinary" nonresident citizen is someone who meets none of the narrowly prescribed exemptions under NY Penal Law § 265.20.

18. Under NY Penal Law § 265.01, a person is guilty of criminal possession of a weapon in the fourth degree when he possesses any firearm. Criminal possession of a weapon in the fourth degree is a class A misdemeanor.

19. Under NY Penal Law § 265.02, a person is guilty of criminal possession of a weapon in the third degree when he possesses any loaded firearm. Criminal possession of a weapon in the third degree is a class D felony.

20. NY Penal Law § 265.20 enumerates various exemptions for citizens to possess or carry a firearm in or through New York State. For example, section 265.20(3) exempts persons who have been issued a valid firearm license under NY Penal Law § 400.00.

21. None of the exemptions prescribed in section 265.20 apply to Bach or other ordinary nonresident citizens of other States.

22. Among other requirements, NY Penal Law § 400.00(3)(a) requires an applicant for a firearms license to be domiciled in New York State:

> 3. Applications. (a) Applications shall be made and renewed, in the case of a license to carry or possess a pistol or revolver, to the licensing officer in the city or county, as the case may be, where the applicant resides, is principally employed or has his principal place of business as merchant or storekeeper....

23. NY Penal Law § 400.00(3)(a) prohibits Bach and other ordinary nonresidents from obtaining the required license to possess and carry a firearm within the State solely because they live out of State and without regard to age, mental competency or legal status to keep and bear such arms.

24. Bach and other ordinary nonresidents thus are deprived of a rational and effective means to protect and defend themselves, their families, and their private property from acts of criminal violence while temporarily residing, visiting or traveling within the State of New York.

25. Although the State of New York deprives Bach and other ordinary nonresident citizens of a rational and effective means to protect and defend themselves and their families, the State

5

enjoys absolute immunity from legal liability for harmful or deadly acts committed by violent criminals.

26. Bach and other nonresident citizens thus continue to suffer irreparable harm because NY Penal Law §§ 265.00 and 400.00 *et seq.*:

(a) Deprive nonresidents of their fundamental rights, privileges and immunities to keep and bear arms, and travel interstate. The alleged deprivation of these substantive constitutional rights constitutes *per se* irreparable harm.

(b) Impose a prior restraint on constitutionally protected activity by establishing an impossible standard that completely bars ordinary nonresidents from obtaining the required license to possess or carry an otherwise lawful firearm in or through the State.

(c) Continue to have a chilling effect on constitutionally protected activity by requiring nonresident citizens to choose between being subjected to felony prosecution and loss of personal property for exercising their substantive constitutional rights, or remaining defenseless victims of actual and imminent violent criminal acts.

(d) Deprive nonresidents of a rational and effective means to protect and defend themselves, their families and private property from violent criminal acts while traveling within the State of New York. Because the State cannot reasonably assure the safety and welfare of nonresidents within its borders from violent attacks, nonresidents continue to suffer serious bodily harm, loss of life and property.

(e) Unduly burden and indiscriminately penalize nonresidents who are deprived of substantial rights and benefits presently accorded to residents. New York residents may obtain a firearms license for self-protection and defense of their families and private property while traveling throughout New York State provided they meet certain criteria that do not apply to ordinary nonresident citizens.

6

(f) Unreasonably burden and restrict the interstate movement of nonresidents by requiring them to surrender their constitutionally protected rights, privileges and immunities to keep and bear arms while traveling interstate in order to gain entry or pass through the State of New York.

27. The irreparable harm and its chilling effect on constitutionally protected activity is neither remote nor speculative, but actual and imminent as evidenced by the State's continued discrimination against nonresidents and the tens of thousands of disarmed citizens who are brutalized and murdered each year throughout New York State.

28. The irreparable harm to ordinary, nonresident citizens caused by defendants' firearm restrictions outweighs any remote harm the State may suffer if a preliminary injunction issues. Nonresident citizens merely will be eligible to obtain a New York State firearms license provided they meet whatever reasonable, constitutionally valid criteria the State may require. Nonresidents will have the right to choose whether to use a rational and effective means to protect and defend themselves and their families from violent criminal acts, and to participate in lawful firearms training without fear of criminal prosecution and loss of personal property. These substantial rights and benefits are presently accorded to New York residents based on the unfettered discretion of local authorities, but are denied entirely to nonresidents.

29. There is neither a constitutionally valid reason to justify New York's pernicious firearms restrictions against nonresidents nor empirical evidence to demonstrate that nonresidents are:

(a) less capable than residents of safely and responsibly handling firearms;

(b) more prone to committing violent criminal acts;

(c) pose a danger to the community; or,

(d) otherwise constitute the peculiar source of the evil at which the restrictions are aimed.

30. Whatever the State's interests are in banning ordinary nonresidents from possessing firearms, these interests cannot trump the fundamental rights, privileges and immunities of

7

national and state citizenship without an unusually strong justification that is narrowly tailored to achieve those interests.

31. The public has a substantial interest in protecting the health, safety and welfare of all citizens, including nonresidents, and in vindicating their constitutionally protected rights.

32. Because neither the State nor its law enforcement officials owe a legal duty to respond to an emergency 911 call, or protect or defend an individual citizen or family from violent criminal acts, citizens must rely on self-protection to significantly reduce the risk of deadly harm.

33. Even assuming a duty existed, New York law enforcement officials lack the resources and capability to prevent violent criminal attacks from occurring.

34. Armed, law-abiding United States citizens prevent approximately 2.5 million criminal attacks on their person and property annually.

35. Armed, law-abiding United States citizens serve as an effective deterrent to violent crime.

36. Perversely, by ensuring that nonresidents who abide by New York law will not carry a personal firearm within the State, the law effectively aids and abets criminals by guaranteeing that they will find easy prey who are often identifiable by their out-of-state license plates and unfamiliar with their surroundings.

37. Because attempting to use a cumbersome long-gun as a personal defense weapon is an ineffective alternative to a handgun, particularly in an automobile, citizens are deprived of the only rational and effective means they have to repel attacks from violent criminal predators.

38. Law enforcement chooses handguns as its primary weapon of protection. When used properly, a handgun offers an extremely effective means of personal protection in close combat situations, such as stopping violent criminals.

39. A citizen bearing a cell phone programmed with a speed button to 911 is an ineffective alternative to a loaded handgun in stopping an ongoing violent attack by a knife or club wielding sociopath, drug addict, gang member or street punk intent on committing murder, rape, robbery, aggravated assault or some other heinous crime.

40. Without an effective weapon, whether a person lives, or is maimed or is otherwise seriously injured by a violent criminal often depends on the mercy of her or his assailant.

41. Nonresident citizens will continue to suffer irreparable harm as long as New York law continues to prohibit them from possessing and carrying firearms, and thus deprive them of the only rational and effective means they have to protect and defend themselves, and their family members from violent predators while temporarily residing, visiting, or traveling in or through the State of New York.

42. On November 14, 2001, Bach mailed written inquiries to Eliot Spitzer, New York State Attorney General; Sergeant James Sherman, New York State Police, Pistol Permit Bureau; and J. Richard Bockelmann, Ulster County Sheriff.[7] In his inquiries, Bach sought to confirm his understanding of New York law whereby an ordinary citizen of another State is ineligible to obtain a New York firearms license, and thus submission of a firearms license application and nonrefundable fee by such a citizen would be a futile act.[8]

43. By letter of November 27, 2001, Peter A. Drago, Director of Public Information and Correspondence, State of New York, Office of the Attorney General referred Bach to the New York State Police in Albany as the "appropriate authority to contact with [his] request."[9]

---

[7] *See* Attachment 2 to Bach affidavit (letters from D. Bach to Eliot Spitzer, New York State Attorney General, Sergeant James Sherman, New York State Police, Pistol Permit Bureau, and J. Richard Bockelmann, Ulster County Sheriff of November 14, 2001).
[8] *Id.*
[9] *See* Attachment 3 to Bach affidavit (letter from Peter A. Drago, Director of Public Information and Correspondence, State of New York, Office of the Attorney General to D. Bach of November 27, 2001).

44. By letter of December 5, 2001, Sergeant James Sherman of the New York State Police, Pistol Permit Bureau, confirmed that "no exemption exists which would enable you to possess a handgun in New York State."[10] Further, "[t]here are no provisions for the issuance of a carry permit, temporary or otherwise, to anyone not a *permanent* resident of New York State nor does New York State recognize pistol permits issued by other states."[11] Finally, Sergeant Sherman warned that anyone "found to be in possession of a pistol or revolver that is not registered on a New York State Pistol Permit, exempt personnel excluded, would be subject to automatic forfeiture of the firearm in question and criminal prosecution."[12]

45. By letter of December 18, 2001, Ulster County Undersheriff, George A. Wood confirmed that "[t]here are two ways in New York State to lawfully possess a pistol/revolver. First is to be licensed, as outlined in §400.00, and the second is to meet one of the 'exceptions' outlined in §265.20 of the NYS Penal Law."[13] Further, he informed Bach that he clearly would not meet the exemption for military personnel under NY Penal Law § 265.20(1)(d) while temporarily visiting in the State despite Bach's current military status as a Selected Naval Reservist.[14]

46. Based on the foregoing responses regarding the State's application of New York law, neither Bach nor other ordinary nonresidents, i.e., those not meeting any exemption under NY Penal Law § 265.20, are eligible to obtain a valid New York State firearms license.

47. New York is currently the only State in the Union that prohibits ordinary, law–abiding citizens of sister States from possessing, carrying or transporting a handgun in or through the State.

---

[10] *See* Attachment 4 to Bach affidavit (letter from Sergeant James Sherman, New York State Police, Pistol Permit Bureau to D. Bach of December 5, 2001).
[11] *See Id.* (emphasis in the original).
[12] *Id.*
[13] *See* Attachment 5 (letter from George A. Wood, Ulster County Undersheriff to D. Bach of December 18, 2001).
[14] *Id.*

48. The acts complained of herein were taken under color of State law.

49. The acts complained of herein represent the official policy, custom, usage and practice under the laws of the State of New York.

## First Cause of Action

Second and Fourteenth Amendments of the United States Constitution

42 U.S.C. § 1983

(Violation of Rights to Keep and to Bear Arms)

50. Plaintiff alleges and incorporates by reference each allegation contained in paragraphs 1 through 49.

51. The Second Amendment protects individual Americans in their rights to keep and to bear arms regardless of whether they are a member of a select militia or performing active military service or training.

52. Defendants acting in accordance with, and under color of State law, institute, authorize, tolerate, ratify, permit and acquiesce in policies, practices, usage and customs of denying required firearm licenses to otherwise competent nonresidents solely because they live out of State.

53. Defendants acting in accordance with, and under color of State law, as prescribed by NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, continue to prohibit ordinary, law–abiding nonresidents from possessing, carrying or otherwise transporting a personal firearm while temporarily residing, visiting, or traveling within the State of New York in violation of the Second and Fourteenth Amendments to the United States Constitution.

54. By prohibiting nonresidents from keeping and bearing a personal firearm while temporarily residing, visiting, or traveling within the State, defendants acting under color of State law as prescribed by NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, continue to unlawfully deprive Bach and other ordinary, law–abiding, nonresident citizens of their basic rights,

privileges and immunities to keep and bear an otherwise lawful firearm in violation of the Second and Fourteenth Amendments to the United States Constitution.

55. By completely barring ordinary, law–abiding, nonresident citizens of the most rational and effective means they have to protect and defend themselves, and their families from the real and substantial danger of violent criminal acts, defendants acting under color of State law as prescribed by NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, unlawfully deprive nonresidents of their basic rights to life, liberty and private property in violation of the Second and Fourteenth Amendments to the United States Constitution.

## Second Cause of Action

Fourteenth Amendment of the United States Constitution

42 U.S.C. § 1983

(Violation of Privileges or Immunities)

56. Plaintiff alleges and incorporates by reference each allegation contained in paragraphs 1 through 55.

57. The fundamental right to keep and bear an otherwise lawful, personal firearm while traveling interstate, is a privilege and immunity guaranteed to American citizens by virtue of their national citizenship, and may not be abridged by any State or local government.

58. By prohibiting nonresidents from possessing, carrying or transporting an otherwise lawful, personal firearm while traveling interstate, defendants acting under color of State law, as prescribed by NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, continue to force nonresident United States citizens by threat of criminal prosecution, to surrender their constitutionally protected rights, privileges and immunities to keep and bear arms guaranteed to them by virtue of their national citizenship in order to enter or to pass through the State in violation of Section 1 of the Fourteenth Amendment to the United States Constitution.

## Third Cause of Action

Fourteenth Amendment of the United States Constitution

42 U.S.C. § 1983

(Violation of Equal Protection)

59. Plaintiff alleges and incorporates by reference each allegation contained in paragraphs 1 through 58.

60. Any classification that abridges the privileges or immunities of national citizenship, or serves to penalize the exercise of a constitutional right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional under Section 1 of the Fourteenth Amendment to the United States Constitution.

61. Defendants acting under color of State law, as prescribed by NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, continue to chill the assertion of substantive constitutional rights by imposing a criminal penalty on ordinary, law–abiding, nonresident United States citizens who choose to exercise their rights, in violation of Section 1 of the Fourteenth Amendment to the United States Constitution.

62. Defendants acting under color of State law, as prescribed by NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, continue to penalize nonresident United States citizens for exercising their constitutionally protected rights to keep and bear arms, and travel interstate in violation of Section 1 of the Fourteenth Amendment to the United States Constitution.

63. New York State's discriminatory classification, which targets ordinary, law–abiding, nonresident citizens is neither narrowly tailored nor the least restrictive means to achieve the State's objective, in violation of Section 1 of the Fourteenth Amendment to the United States Constitution.

64. New York State's discriminatory classification, which targets ordinary, law–abiding, nonresident citizens lacks a rational basis and is not reasonable in light of its stated purpose of

reducing criminal violence, and protecting the health, safety and welfare of all classes of citizens within its borders in violation of Section 1 of the Fourteenth Amendment to the United States Constitution.

65. Defendants acting under color of State law, as prescribed by NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, continue to deprive nonresident United States citizens within the State's jurisdiction, equal protection of the laws in violation of Section 1 of the Fourteenth Amendment to the United States Constitution.

## Fourth Cause of Action

Fourteenth Amendment of the United States Constitution

42 U.S.C. § 1983

(Violation of Substantive Due process)

66. Plaintiff hereby alleges and incorporates by reference each allegation contained in paragraphs 1 through 65.

67. The rights of citizens to keep and bear arms are among the fundamental personal rights and liberties protected by the Due Process Clause of the Fourteenth Amendment from State and local infringement.

68. By infringing the fundamental, personal rights, privileges and immunities of nonresident United States citizens to keep and bear arms while traveling interstate in or through New York State, defendants acting under color of State law, as prescribed by NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, continue to violate the substantive due process rights of ordinary, law–abiding nonresidents under Section 1 of the Fourteenth Amendment to the United States Constitution.

## Fifth Cause of Action

Article IV of the United States Constitution

42 U.S.C. § 1983

(Violation of Privileges and Immunities)

69. Plaintiff alleges and incorporates by reference each allegation contained in paragraphs 1 through 68.

70. United States citizens possess a fundamental constitutional right to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement. Thus, a citizen of one State who travels in other States intending to return home at the end of his journey, is entitled to enjoy the privileges and immunities of citizens in the several States that he visits by virtue of his State citizenship.

71. A State may be permitted to discriminate against nonresidents only where the presence or activity of nonresidents is the peculiar source of the evil or cause of the problem that the State seeks to remedy, and the discrimination bears a close relation to the achievement of substantial State objectives

72. Defendants acting under color of State law, as prescribed by NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, continue to unlawfully burden the rights of nonresident United States citizens to move freely and unencumbered in or through the State of New York in violation of Article IV, § 2, Cl. 1 of the United States Constitution.

73. New York's discrimination against nonresidents bears no reasonable relationship to the State's substantial interest in reducing violent crime and protecting the health, safety and welfare of all classes of citizens within its borders in violation of Article IV, § 2, Cl. 1 of the United States Constitution.

74. NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, when read together, are not narrowly tailored to achieve a substantial State interest in violation of Article IV, § 2, Cl. 1 of the United States Constitution.

75. Nonresidents as a class do not constitute the peculiar source of the evil or cause of the problem that the State seeks to remedy under NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*

## Sixth Cause of Action

(Injunctive Relief Against All Defendants)

76. Plaintiff alleges and incorporates by reference each allegation contained in paragraphs 1 through 75.

77. Plaintiff is entitled to provisional and permanent injunctive relief to prevent defendants or their agents from continuing to infringe the fundamental rights of individual citizens under the Second and Fourteenth Amendments, and Article IV of the United States Constitution.

## Seventh Cause of Action

(Declaratory Relief Against All Defendants)

78. Plaintiff alleges and incorporates by reference each allegation contained in paragraphs 1 through 76.

79. An actual controversy has arisen and now exists between the plaintiff and defendants concerning their rights under the United States Constitution. Plaintiff contends, and defendants dispute, that the contested provisions under NY Penal Law §§ 265.00 and 400.00, *et seq.*, are illegal and unenforceable under the United States Constitution.

80. Plaintiff desires a judicial determination of the parties' respective rights and duties with respect to the public's substantial interest in preserving the precious and primary rights of personal security, personal liberty and private property for all classes of citizens traveling in or through the State of New York without fear of government reprisal.

81. A judicial declaration is necessary and appropriate at this time, and under the circumstances in order that the plaintiff and defendants may ascertain their respective rights and duties under the Constitution of the United States.

Plaintiff therefore prays for judgment as follows:

1. For a preliminary and permanent injunction prohibiting all defendants, officers, agents, servants, employees, and attorneys, and persons in active concert or participation with them, from continuing to enforce NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, which when read together, bar ordinary, law–abiding, nonresident citizens of the United States from obtaining the required license to possess, carry or transport an otherwise lawful, personal firearm while temporarily, residing, visiting, or traveling in or through the State of New York solely because they live out of State.

2. For a declaration that the Second Amendment protects individual Americans in their rights to keep and to bear arms regardless of whether they are a member of a select militia or performing active military service or training.

3. For a declaration that NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, when read together, infringe the fundamental rights, privileges or immunities of nonresident United States citizens to keep and bear arms within New York State's jurisdiction, in violation of the Second and Fourteenth Amendments to the United States Constitution.

4. For a declaration that NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, when read together, abridge the privileges or immunities of nonresident United States citizens within New York State's jurisdiction, in violation of Section 1 of the Fourteenth Amendment to the United States Constitution.

5. For a declaration that NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, when read together, deprive nonresident United States citizens within New York State's jurisdiction, equal

protection of the laws in violation of Section 1 of the Fourteenth Amendment to the United States Constitution.

6. For a declaration that NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, when read together, deprive nonresident United States citizens within New York State's jurisdiction, of substantive due process in violation of Section 1 of the Fourteenth Amendment to the United States Constitution.

7. For a declaration that NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, when read together, violate the privileges and immunities of nonresident United States citizens within New York State's jurisdiction, under Article IV, § 2, Cl. 1 of the United States Constitution.

8. For a declaration that defendants' past and continuing conduct while acting under color of State law, as prescribed by NY Penal Law §§ 265.00 and 400.00(3)(a) *et seq.*, is repugnant to the United States Constitution under the Second and Fourteenth Amendments, and Article IV.

9. For costs of suit in accordance with 42 U.S.C. § 1988.

10. For any other relief this court deems just and proper.

Respectfully submitted,

Dated: November 29, 2002    By: _____
David D. Bach, Esq.
PA Bar # 44337
632 Secotan Road
Virginia Beach, VA 23451
(757) 396–7779 (W)
(757) 491–1457 (H)