**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
MAXWELL HODGKINS, et al.,       :
                                :
         Plaintiffs,            :
                                :
    v.                          :  Civil Action No. 09-0587 (JR)
                                :
ERIC HOLDER, Attorney General of :
the United States,              :
                                :
         Defendant.             :
```

**MEMORANDUM**

Plaintiffs Maxwell Hodgkins, Stephen Dearth, and the Second Amendment Foundation, Inc. ("SAF"), present constitutional challenges to certain federal gun control restrictions.  The government moves to dismiss, arguing, correctly, that the plaintiffs lack standing.

**Background**

With exceptions not relevant here, federal law does not allow any person "who does not reside in any State to receive any firearms unless such receipt is for lawful sporting purposes." 18 U.S.C. § 922(a)(9).  A complementary provision prohibits the transfer of firearms to any person "who the transferor knows or has reasonable cause to believe does not reside in . . . the State in which the transferor resides." Id. § 922(a)(5).  To facilitate enforcement of these provisions, a prospective firearm purchaser must complete and give to the seller ATF Form 4473, which asks the purchaser to list his or her state of residence, if any.  See 27 C.F.R. § 478.124(c)(1).

Plaintiff SAF is a non-profit organization of gunmen. See Compl. ¶ 3.  Plaintiffs Maxwell Hodgkins and Stephen Dearth are United States citizens residing abroad with no domestic residence.  See id. at ¶¶ 1-2.  Both occasionally visit friends and family in the United States and intend to continue visiting this country.  See id. at ¶¶ 7, 10.  Both hold valid state permits to carry handguns.  See id. at ¶¶ 9, 12.  Hodgkins attempted to purchase a firearm within the United States in October 2008, but he was refused when he told the seller that he resided abroad.  See id. at ¶ 24.  Similarly, Dearth attempted to purchase firearms in the United States twice, but each time the sale was refused when he admitted to residing abroad.  See id. at ¶¶ 22-23.  Dearth alleges that he intends to return to the United States to buy firearms, which he would store at the home of relatives in Ohio.  See id. at ¶ 11.

## Analysis

To have standing pursuant to Article III of the Constitution, plaintiffs must demonstrate, inter alia, "an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).  Plaintiffs seek relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  To establish a right to proceed

- 2 -

under the Declaratory Judgment Act, plaintiffs must demonstrate "a case of actual controversy." Id.

### A.   Standing of Hodgkins and Dearth

#### 1.   Based solely upon refusal to sell

Plaintiffs Hodgkins and Dearth contend that their failed attempts to purchase firearms confer standing. However, unlike many causes of action, the Declaratory Judgment Act does not authorize remedies for past injuries alone. Under the Declaratory Judgment Act, a constitutional question "must be presented in the context of a specific live grievance." Golden v. Zwickler, 394 U.S. 103, 110 (1969); see also Steffel v. Thompson, 415 U.S. 452, 459 (1974) (requiring "the *continuing* existence of a live and acute controversy") (emphasis in original). Thus, a plaintiff's prior arrest could not support a declaratory judgment action where the plaintiff could not show that the arrestable offense was likely to reoccur. See Golden, 394 U.S. at 108-10 (plaintiff's concern lacked the "immediacy and reality" necessary to support a Declaratory Judgment Act action).

Past events can be relevant to a determination of whether a plaintiff's fear of future prosecution is "imaginary or speculative" or whether it is "immedia[te] and real[]," Steffel, 415 U.S. at 459-60, but past refusals of merchants to sell firearms to Hodgkins and Dearth are not enough, without more, to

provide the basis for an action pursuant to the Declaratory

Judgment Act.[1]

## 2.   Preenforcement standing

If Hodgkins and Dearth have standing, then, it must be

based on the threat of future enforcement.  See Seegars v.

Ashcroft, 396 F.3d 1248, 1251 (D.C. Cir. 2005) ("No plaintiff in

this case has been arrested and prosecuted for violating the

disputed provisions of the Code, so plaintiffs' case constitutes

a 'preenforcement' challenge.").  Hodgkins has not alleged any

intention to acquire firearms in the United States in the future,

so he cannot establish an imminent future injury.  Dearth does

allege that he intends to return to the United States to purchase

firearms, but, as will be explained, that allegation is not

enough to overcome the preenforcement standing requirements

established by the D.C. Circuit in the Navegar line of cases.

Navegar, Inc. v. United States, 103 F.3d 994 (D.C. Cir.

1997), held that gun manufacturers had standing to seek a

declaratory judgment against enforcement of the Violent Crime

Control & Law Enforcement Act of 1994 where the law, by naming

---

[1] Some courts have characterized the Declaratory Judgment
Act's "actual controversy" requirement as being identical with
Article III standing.  See, e.g., Cutaiar v. Marshall, 590 F.2d
523, 527 (3d Cir. 1979); see also Aetna Life Ins. Co. v. Haworth,
300 U.S. 227, 240 (1937) ("The word 'actual' [in the Declaratory
Judgment Act] is one of emphasis rather than of definition.").
However, this is not strictly correct; while Article III supports
actions based solely on actual past injuries, Steffel and Golden
show that the Declaratory Judgment Act does not.

specific brands and models of firearms, "in effect single[d] out the [plaintiffs] as its intended targets." See id. at 999-1001. The manufacturers did not have standing to challenge certain other provisions of the Act, however, because of the absence of "any special priority placed upon preventing these parties from engaging in specified conduct." Id. at 1001-02.

The Court of Appeals has since explained Navegar's "special priority" language, holding that preenforcement standing will exist only when a plaintiff has been "personally threatened with prosecution or . . . his prosecution has [a] special priority for the government." Seegars, 396 F.3d at 1251. Seegars questions whether Navegar's stringency was consistent with Supreme Court precedent and precedent from other circuits, see id. at 1253-54, but nonetheless "faithfully appl[ied]" its holding to bar preenforcement challenges to several District of Columbia gun control laws. Id. at 1254-56. In Parker v. District of Columbia, 478 F.3d 370 (D.C. Cir. 2007), the court again questioned whether its standing precedent was consistent with earlier Supreme Court decisions, but reiterated that it "must be faithful to Seegars [and] Navegar." Id. at 375. The court then held that all plaintiffs whose challenges presented

only preenforcement issues lacked standing because they had not
been singled out for prosecution.[2]   See id.

Like the D.C. Circuit itself, plaintiffs have
criticized the Navegar line of cases as improperly stringent in
comparison with other authority.   See Pl. Resp. at 14-22.   That
criticism is especially apt in this case.   Domestic firearm
merchants are legally obligated to refuse sale to citizens who
reside abroad.   Because sales will be refused, would-be
purchasers will never draw government attention.   Because they
will draw no attention, they will never be in a position to be
threatened with prosecution.   If Navegar retains its vitality,
the only way the state residence law can be challenged in this
Circuit is to engage in a forbidden transaction, exposing oneself
to prosecution.   Nevertheless, I must "faithfully apply" the
principle enunciated in the Navegar line of cases, which are
squarely on point.[3]

---

[2] In Ord v. District of Columbia, No. 08-7094 (D.C. Cir.
Dec. 4, 2009), a panel of the D.C. Circuit upheld the standing of
a police officer challenging firearm laws where a warrant had
been issued for his arrest and others had been arrested for
similar conduct.   See Slip. Op. at 9-10.   While Judge Brown
criticized the Navegar standard in dissent, see id. at 19, the
majority applied the existing standard without comment.

[3] Plaintiffs suggest that Fraternal Order of Police v.
United States, 152 F.3d 998 (D.C. Cir. 1998), on reh'g, 173 F.3d
898 (D.C. Cir. 1999), is inconsistent with the Navegar line of
cases.   As the court explained, however, the plaintiff police
officers in that case complained of an ongoing constitutional
injury due to the conflict between local law enforcement duties
and the federal law at issue.   See Fraternal Order, 152 F.3d at

### 3.   Venue-based argument

Before they filed here, Dearth and Hodgkins brought separate suits, in Ohio and Texas.  See Pl. Resp. at 5.  Venue was held improper in both locations.[4]  See id. at 5-6. Plaintiffs suggest that defendant sought transfer in those cases to obtain the benefit of the D.C. Circuit's exacting standing requirements, and that this district was not an appropriate recipient venue because their lack of standing here means it is not a district "in which [the case] might have been brought," according to the requirements of the transfer statute.  28 U.S.C. § 1404(a); see also 28 U.S.C. § 1406(a).  Plaintiffs suggest that this court should "sensibly confirm[] that inherent in any discretionary transfer here is the idea that jurisdiction cannot be destroyed."  Pl. Resp. 25.

The argument is artful but unpersuasive.  "There is no valid reason for reading the words 'where it might have been brought' to narrow the range of permissible federal forums beyond those permitted by federal venue statutes."  Van Dusen v.

_____

1001.  Navegar and its progeny, as well as the present case, deal with the potential of prosecutions that could cause injury only in the future, if at all.

[4] Plaintiffs in each case asked for and were granted dismissal without prejudice rather than transfer so that they could appeal immediately.  They did appeal, but neither appeal was successful.  See Dearth v. Mukasey, 516 F.3d 413 (6th Cir. 2008) (holding appeal improper since the dismissal was voluntary); Hodgkins v. Mukasey, 271 F. App'x 412 (5th Cir. 2008) (same).

Barrack, 376 U.S. 612, 623 (1964); see also Carbonara v. Olmos,
1994 WL 61797, at *1 (N.D. Ill. Feb. 24, 1994) (holding that
transfer to a district in which circuit law likely precluded
standing was proper because the language of § 1404(a) "refers
only to whether venue is proper and not a plaintiff's capacity to
sue").

    **B.   Standing of SAF**

        SAF asserts both organizational and representational
standing.  Organizations can have standing on their own behalf
when they have suffered injuries.  See Warth v. Seldin, 422 U.S.
490, 511 (1975).  However, SAF has not alleged any sufficient
injury.  It contends that the work it must do fielding questions
from constituents about the laws at issue justifies standing, its
voluntary act of teaching cannot plausibly be the basis for a
claim of constitutional injury.

        An association may sue on behalf of its members if
(1) its members would otherwise have standing to sue in their own
right, (2) the interests at stake are germane to the
organization's purpose, and (3) neither the claim asserted nor
the relief requested requires the participation of individual
members in the suit.  Friends of the Earth, Inc. v. Laidlaw
Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000).  SAF cannot
meet the first requirement, because it has failed to allege that
it has any members who are U.S. citizens residing abroad who

intend to purchase firearms domestically in violation of the laws at issue.

## **Conclusion**

For the reasons set forth above, no plaintiff has standing to challenge the provisions at issue.  Accordingly, defendant's motion to dismiss will be granted.  An appropriate order accompanies this memorandum.


                              JAMES ROBERTSON
                         United States District Judge