# EXHIBIT 1

Page 1

--- F.3d ----, 2012 WL 1959072 (C.A.2 (N.Y.))
**(Cite as: 2012 WL 1959072 (C.A.2 (N.Y.)))**

Only the Westlaw citation is currently available.

United States Court of Appeals,
Second Circuit.
UNITED STATES of America, Appellee,
v.
Angel DECASTRO, Defendant–Appellant.

Docket No. 10–3773.
Argued: Nov. 30, 2011.
Decided: June 1, 2012.

**Background:** Defendant was convicted in the United States District Court for the Southern District of New York, Patterson, J., 2010 WL 1783550, of transporting into his state of residence a firearm acquired in another state, and he appealed.

**Holding:** The Court of Appeals, Dennis Jacobs, Chief Judge, held that federal statute prohibiting the transportation into one's state of residence of firearms acquired outside the state did not substantially burden defendant's Second Amendment right to own a firearm in defense of his home.

Affirmed.

Hall, Circuit Judge, filed concurring opinion.

West Headnotes

**[1] Constitutional Law 92 ⇌0**

92 Constitutional Law
    A person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court.

**[2] Constitutional Law 92 ⇌0**

92 Constitutional Law
    A defendant who fails to demonstrate that a challenged law is unconstitutional as applied to him has necessarily failed to state a facial challenge, which requires him to establish that no set of circumstances exists under which the statute would be valid.

**[3] Weapons 406 ⇌0**

406 Weapons

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Because defendant failed to apply for a gun license in New York, he lacked standing to challenge the constitutionality of licensing laws of the state where he failed to make the substantial showing of futility necessary to excuse his failure to apply for a handgun license in New York. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[4] Weapons 406 0**

406 Weapons

Heightened scrutiny is appropriate only as to those firearms regulations that substantially burden the Second Amendment; heightened scrutiny is triggered only by those restrictions that operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense or for other lawful purposes. U.S.C.A. Const.Amend. 2.

**[5] Weapons 406 0**

406 Weapons

Law that regulates the availability of firearms is not a substantial burden on the Second Amendment right to keep and bear arms if adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense. U.S.C.A. Const.Amend. 2.

**[6] Weapons 406 0**

406 Weapons

In light of the ample alternative means of acquiring firearms for self-defense purposes, federal statute prohibiting the transportation into one's state of residence of firearms acquired outside the state did not substantially burden defendant's Second Amendment right to own a firearm in defense of his home; furthermore, because statute did not substantially burden the fundamental right to obtain a firearm sufficient for self-defense, and attempted only to assist states in the enforcement of their own gun laws, it did not infringe the Second Amendment right to keep and bear arms, and its sweep was therefore plainly legitimate. U.S.C.A. Const.Amend. 2; 18 U.S.C.A. § 922(a)(3).

**[7] Constitutional Law 92 0**

92 Constitutional Law

If the requisite interstate nexus exists, Congress may enact laws designed to prevent the circumvention of state law, and in so doing may indulge the presumption that the underlying state laws are not unconstitutional.

**[8] Weapons 406 0**

406 Weapons

If an injury is suffered as a result of the unconstitutional application of a state law regulating the possession of firearms, the proper challenge is one addressed to the state law. U.S.C.A. Const.Amend. 2.

Defendant was convicted of transporting into his state of residence a firearm acquired in an-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

other state in violation of 18 U.S .C. § 922(a)(3). He appeals on the ground that § 922(a)(3) violates his Second Amendment right to keep and bear arms. He argues: [1] that § 922(a)(3) is unconstitutional on its face; and [2] that, in combination with New York's licensing scheme, the prohibition on the transportation into New York of a firearm purchased in another state made it virtually impossible for him to obtain a handgun for self-defense. For the following reasons, the judgment of the district court is affirmed. Judge Hall concurs by separate opinion.

Colleen P. Cassidy, Federal Defenders of New York, Inc., New York, NY, for Appellant.

Brian A. Jacobs (Brent S. Wible, on the brief), Assistant United States Attorney, for Preet Bharara, United States Attorney, Southern District of New York, New York, NY, for Appellee.

Before JACOBS, Chief Judge, HALL and LYNCH, Circuit Judges.

DENNIS JACOBS, Chief Judge:

*1 Following a bench trial on stipulated facts in the United States District Court for the Southern District of New York (Patterson, J.), Angel Decastro was convicted of transporting into his state of residence a firearm acquired in another state in violation of 18 U.S .C. § 922(a)(3). Decastro appeals on the ground that § 922(a)(3) violates his Second Amendment right to keep and bear arms. He argues: [1] that § 922(a)(3) is unconstitutional on its face; and [2] that, in combination with New York's licensing scheme, the prohibition on the transportation into New York of a firearm purchased in another state made it virtually impossible for him to obtain a handgun for self-defense. For the following reasons, the judgment of the district court is affirmed.

## BACKGROUND

In 2002, Angel Decastro moved from Florida to New York to help run his step-father's dry cleaning business. In July 2004, an encounter between Decastro and a customer escalated into a gang confrontation. Police arrested Decastro and the customer, but all charges were dropped. Decastro feared retaliation, and on the recommendation of a New York police detective, requested a handgun license application from the New York Police Department ("NYPD"). He did not submit an application because (he maintains) he was told by an NYPD desk officer that there was "no way" his application would be approved.

Decastro, who was licensed to own a handgun in Florida, purchased firearms from a gun dealer on a visit there in February 2005: a Taurus model PT92 pistol ("the Taurus Pistol") and a Glock nine-millimeter handgun. In connection with the purchase, Decastro was required to sign Form 4473 of the Bureau of Alcohol, Tobacco, Firearms and Explosives. On it he falsely gave Florida rather than New York as his state of residence. Decastro left the Glock handgun in Florida but transported the Taurus Pistol home to New York, where he kept it at the dry-cleaning business for protection.

The Decastro family sold the dry-cleaning business in May 2005; in February 2006, Decastro moved to Florida. Before leaving New York, Decastro gave the Taurus Pistol to a relative in the Bronx. Decastro planned to transport it back to Florida in a few months' time.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

In July 2006, a Bronx woman reported to the NYPD that she had found the Taurus Pistol in her closet along with other items that belonged to her common-law husband (who was a relative of Decastro). A police search of the closet yielded the Taurus Pistol as well as two other guns, handcuffs, masks, and fake police shields.

Decastro was subsequently indicted for violating U.S.C. § 922(a)(3). That statute (subject to certain exceptions not applicable here [FN1]) prohibits anyone other than a licensed importer, manufacturer, dealer or collector from transporting into his state of residence a firearm purchased or obtained outside that state. Decastro moved to dismiss the indictment on the ground that it violated his Second Amendment right to possess a gun for self-defense. He argued that § 922(a)(3) was facially unconstitutional under *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and that New York City's restrictive licensing requirements were tantamount to a ban. In support, Decastro submitted a chart showing that few applications for pistol licenses were received and issued by New York City in the period 2004–2006. For residential-premises handgun licenses, an average of 858 new applications were submitted annually and an average of 620 licenses were issued; for business-premises licenses, an average of 59 new applications were submitted annually and an average of 50 licenses were issued.[FN2]

**\*2** The district court declined to dismiss the indictment. Inferring from the NYPD statistics that there is a high grant rate for handgun licenses in New York City, the court rejected Decastro's argument that he was effectively forced to violate § 922(a)(3) by traveling outside the state in order to secure a handgun for self-defense. The court did not address Decastro's argument that § 922(a)(3) is unconstitutional on its face.

At the bench trial, the parties stipulated to the following facts:

[1] Decastro had never been a licensed importer, manufacturer, dealer or collector of firearms;

[2] From at least 2002 through February 2006, Decastro resided in New York, not Florida;

[3] In April 2005, Decastro purchased the Taurus Pistol from a firearms dealer in Florida;

[4] After purchasing it in April 2005 but prior to February 2006—while he resided in New York—Decastro knowingly and willfully transported the Taurus Pistol from Florida to New York, and gave it to a resident of the Bronx;

[5] Decastro never applied for and was not issued a license to possess a firearm in New York, and when he transported the pistol from Florida to New York he knew that his conduct was unlawful.

The district court found Decastro guilty on the sole count of the indictment and sentenced him to two years of probation (and imposed a mandatory $100 special assessment). This appeal followed.

## DISCUSSION

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

On appeal, Decastro challenges the constitutionality of 18 U.S.C. § 922(a)(3) on two grounds: [1] it is facially unconstitutional because it impermissibly burdens the right to keep and bear arms guaranteed by the Second Amendment; and [2] when combined with New York's licensing scheme, the prohibition on the transportation into New York of a firearm purchased in another state made it practically impossible for him to secure a handgun for self-defense. The district court confined its analysis to the second argument; on appeal Decastro focuses principally on the first.

As to each argument, our review is *de novo. See United States v. Pettus,* 303 F.3d 480, 483 (2d Cir.2002).

**I**

[1][2] When "a defendant has already been convicted for specific conduct under the challenged law," a court considering a facial challenge to a criminal statute must " 'examine the complainant's conduct before analyzing other hypothetical applications.' " *United States v. Farhane,* 634 F.3d 127, 139 (2d Cir.2011) (quoting *Vill. of Hoffman Estates v. Flipside Hoffman Estates, Inc. .,* 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). We are guided by " 'the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.' " *Parker v. Levy,* 417 U.S. 733, 759, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). It follows that a defendant who fails to demonstrate that a challenged law is unconstitutional as applied to him has "necessarily fail[ed] to state a facial challenge, which requires [him] to establish that no set of circumstances exists under which the statute would be valid." *Diaz v. Paterson,* 547 F.3d 88, 101 (2d Cir.2008) (internal quotation marks and brackets omitted). Since Decastro has already been convicted under § 922(a)(3), the first step in our consideration of his facial challenge is to assess the burden, if any, that the statute has imposed on Decastro himself.

**II**
**A.**

**\*3** Decastro's first argument with respect to the unconstitutionality of § 922(a)(3) as applied to him focuses on the interplay between New York state licensing laws and federal firearms law. Decastro argues that because the restrictive licensing scheme in his home state effectively compelled him to go elsewhere to get a handgun, § 922(a)(3) prevented him from exercising his Second Amendment right to possess a handgun for self-defense.

[3] The premise of Decastro's argument is that New York's licensing scheme is itself constitutionally defective; his argument is therefore tantamount to a challenge to that scheme. However, because Decastro failed to apply for a gun license in New York, he lacks standing to challenge the licensing laws of the state. "As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy." *Jackson–Bey v. Hanslmaier,* 115 F.3d 1091, 1096 (2d Cir.1997); *see also Allen v. Wright,* 468 U.S. 737, 746, 755, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (holding that parents lacked standing to challenge the tax-exempt status of allegedly racially discriminatory private schools to which their children had not applied); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166–68,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (holding that an African American lacked standing to challenge the discriminatory membership policy of a club to which he never applied). Failure to apply for a license would not preclude Decastro's challenge if he made a "substantial showing" that submitting an application "would have been futile." *Jackson–Bey,* 115 F.3d at 1096; *cf. Bach v. Pataki,* 408 F.3d 75, 82–83 (2d cir.2005) (holding that plaintiff's challenge to New York's gun licensing laws applicable to non-residents was justiciable despite his failure to apply for a license because he was statutorily ineligible for a license and therefore submitting an application would have been a "futile gesture" (internal quotation marks omitted)). But the only evidence Decastro offers to show futility is the hearsay statement of an unidentified police desk officer who had no apparent connection to the licensing process, and whose view is incompatible with the NYPD report that Decastro submitted to the district court showing that roughly 2/3 to 3/4 of handgun license applications during the period in question were granted. Although the absolute number of handgun licenses granted has historically been small, so has the number of applications received. Decastro has adduced no evidence that the low volume of license applications is itself a product of the futility of the application process. He has therefore not made the substantial showing of futility necessary to excuse his failure to apply for a handgun license in New York.

**B.**

Having concluded that Decastro is in no position to challenge the constitutionality of § 922(a)(3) based on the asserted effects of New York's licensing scheme, we now consider Decastro's argument that § 922(a)(3) is, by its own terms, unconstitutional because it infringes the core Second Amendment right of law-abiding citizens to possess firearms for self-defense. Decastro maintains that the statute should be subject to strict scrutiny or (at minimum) intermediate scrutiny, and that it cannot withstand review under either standard.

**\*4** [4] We hold that heightened scrutiny is appropriate only as to those regulations that substantially burden the Second Amendment. Because § 922(a)(3) only minimally affects the ability to acquire a firearm, it is not subject to any form of heightened scrutiny. (We therefore need not decide the level of scrutiny applicable to laws that do impose such a burden.) FN3

**1.**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller,* the Supreme Court held that the Second Amendment codified a pre-existing "individual right to possess and carry weapons in case of confrontation." 554 U.S. at 592. In emphasizing the need for self-defense, the Court relied on the historical record and the meaning of the text of the Second Amendment at the time of ratification. The Court declined to announce the precise standard of review applicable to laws that infringe the Second Amendment right because the laws at issue (by which the District of Columbia categorically banned handguns, and required that all other firearms be kept inoperable) would be unconstitutional "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights." *Id.* at 628–29. At the same time, *Heller* disclaims any reading that calls into question (among other things) "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27; *see also McDonald v. City of*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Chicago,* ––– U.S. ––––, ––––, 130 S.Ct. 3020, 3047, 177 L.Ed.2d 894 (2010) (reiterating *Heller's* assurances that the decision "did not cast doubt on such longstanding regulatory measures").[FN4] Although the Court did not expand on why these two classes of restrictions would be permissible, the natural explanation is that time, place and manner restrictions may not significantly impair the right to possess a firearm for self-defense, and may impose no appreciable burden on Second Amendment rights.

Throughout, *Heller* identifies the constitutional infirmity in the District of Columbia laws in terms of the burden on the ability of D.C. residents to possess firearms for self-defense. The Court emphasized that the handgun ban prohibited the "most popular weapon chosen by Americans for self-defense in the home," *id.* at 629, that the mandate to disable all firearms "makes it *impossible* for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional," *id.* at 630 (emphasis added), and that "[f]ew laws in the history of our Nation have come close to the severe restriction of the District's handgun ban," *id.* at 629.

The Court emphasized the practical impact of a challenged regulation on the ability of citizens to possess and use guns for the core lawful purpose of self-defense. That emphasis is implicitly justified (in the opinion) by the history of the Amendment as a response to measures taken by English kings, including George III, to disarm the citizenry, *see id.* at 592–95, and is reinforced by the grounds used by the majority to distinguish the founding-era laws cited by the dissent. Thus the majority distinguished 18th-century laws regulating the storage of excess gunpowder, *id.* at 632, and the laws of colonial cities regulating time, place and manner for the discharge of firearms (as on public streets and taverns or on New Year's Eve), *id.* at 632–33. Such colonial laws did not much burden self-defense and had a minimal deterrent effect on the exercise of Second Amendment rights.

**\*5** Given *Heller's* emphasis on the weight of the burden imposed by the D.C. gun laws, we do not read the case to mandate that any marginal, incremental or even appreciable restraint on the right to keep and bear arms be subject to heightened scrutiny. Rather, heightened scrutiny is triggered only by those restrictions that (like the complete prohibition on handguns struck down in *Heller* ) operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful purposes). This approach finds support, to varying degrees, in other Circuits. See *Nordyke v. King,* 644 F.3d 776, 786 (9th Cir.)* ("[O]nly regulations which substantially burden the right to keep and to bear arms trigger heightened scrutiny under the Second Amendment."), *reh'g in banc granted,* 664 F.3d 774 (9th Cir.2011); *see also Heller v. District of Columbia,* 670 F.3d 1244, 1253, 1260 (D.C.Cir.2011) (laws that have only a "de minimis" effect on the right to bear arms or that do not "meaningfully affect individual self-defense" do not impinge on the Second Amendment right and therefore do not warrant heightened scrutiny (internal quotation marks omitted)); *cf. Ezell v. City of Chicago,* 651 F.3d 684, 708 (7th Cir.2011) (holding that "a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end" but that "laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified"); *United States v. Masciandaro,* 638 F.3d 458, 470 (4th Cir.) (endorsing a sliding scale approach to determining the level of scrutiny applicable to laws that burden Second

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Amendment rights depending in part on "the extent to which [Second Amendment] interests are burdened by government regulation"), *cert. denied,* ––– U.S. ––––, 132 S.Ct. 756, 181 L.Ed.2d 482 (2011); *United States v. Marzzarella,* 614 F.3d 85, 94–95 (3d Cir.2010) (suggesting that a "*de minimis* " burden on the right to keep arms for self-defense might not warrant heightened scrutiny), *cert. denied,* ––– U.S. ––––, 131 S.Ct. 958, 178 L.Ed.2d 790 (2011).

Reserving heightened scrutiny for regulations that burden the Second Amendment right substantially is not inconsistent with the classification of that right as fundamental to our scheme of ordered liberty in *McDonald v. City of Chicago,* 130 S.Ct. at 3036.[FN5] A similar threshold showing is needed to trigger heightened scrutiny of laws alleged to infringe other fundamental constitutional rights. The right to marry is fundamental, but "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship" are not subject to the "rigorous scrutiny" that is applied to laws that "interfere directly and substantially with the right to marry." *Zablocki v. Redhail,* 434 U.S. 374, 386–87, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). The right to vote is fundamental, but "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992); *see also Rosario v. Rockefeller,* 410 U.S. 752, 757–60, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973) (upholding a law conditioning the right to vote in primaries, because the restriction imposed a time limitation that was not "so severe as itself to constitute an unconstitutionally onerous burden on the petitioners' exercise of the franchise").

**\*6** The weight of the burden matters in assessing the permissible bounds of regulation in other constitutional contexts as well, such as takings, abortion, and free speech. *See Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1014–16, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (only those regulations on property that go "too far" require the payment of just compensation under the Takings Clause (internal quotation marks omitted)); *Stenberg v. Carhart,* 530 U.S. 914, 921, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000) (prior to fetal viability, a state may not enact laws that impose an "undue burden" on a woman's decision to terminate her pregnancy, *i.e.,* regulations that have " 'the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion' " (quoting *Planned Parenthood of Se. Pa. v. Casey,* 505 U.S. 833, 877, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)); *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (reasonable time, place or manner restrictions are subject to lesser scrutiny as long as they are content-neutral and preserve "ample alternative channels for communication of the information" (internal quotation marks omitted)).

[5] In deciding whether a law substantially burdens Second Amendment rights, it is therefore appropriate to consult principles from other areas of constitutional law, including the First Amendment (to which *Heller* adverted repeatedly). *See Heller,* 554 U.S. at 582, 595, 635 (analogizing to First Amendment doctrine); *see also Ezell,* 651 F.3d at 702–04 (drawing parallels from the First Amendment context to analyze Second Amendment claims); *Marzzarella,* 614 F.3d at 89 & n. 4 (looking to the structure of the First Amendment for guidance in evaluating Second Amendment challenges). In evaluating the reasonableness of content-neutral time, place or manner regulations under the First Amendment, we ask whether the challenged

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

regulation "leave[s] open ample alternative channels for communication of the information." *Clark v. Cmty. for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Regulation may "reduce to some degree the potential audience for [one's] speech" so long as "the remaining avenues of communication are [ ]adequate." *Ward,* 491 U.S. at 802. By analogy, law that regulates the availability of firearms is not a substantial burden on the right to keep and bear arms if adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense. *See Nordyke,* 644 F.3d at 787–88; *see also Heller,* 554 U.S. at 626–27 (identifying as presumptively lawful "laws imposing conditions and qualifications on the commercial sale of arms").

### 2.

[6] Applying those principles to Decastro's challenge, we conclude that § 922(a)(3) does not substantially burden his right to keep and bear arms. Section 922(a)(3) prohibits the transportation into one's state of residence of firearms acquired outside the state; but it does nothing to keep someone from purchasing a firearm in her home state, which is presumptively the most convenient place to buy anything. The evident purpose of the statute is to stop circumvention of state laws regulating gun possession; it does so by requiring state residents to comply with conditions of sale and similar requirements in their home state. *See* S.Rep. No. 90–1097, at 50 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2166 (concluding that the traffic of guns through mail order common carriers and non-resident sources "is a means which affords circumvention and contravention of State and local laws governing the acquisition of [firearms]"). Moreover, as interpreted by the Bureau of Alcohol, Tobacco, Firearms and Explosives, § 922(a)(3) does not bar purchases from an out-of-state supplier if the gun is first transferred to a licensed gun dealer in the purchaser's home state. *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, Frequently Asked Questions, *available at* http://www.atf.gov/firearms/faq/unlicensed-persons. html# out-of-state-firearm.html (last visited on May 31, 2012).[FN6] In light of the ample alternative means of acquiring firearms for self-defense purposes, § 922(a)(3) does not impose a substantial burden on the exercise of Decastro's Second Amendment rights.

### III

**\*7** Since § 922(a)(3) does not burden Decastro's Second Amendment rights in a way so substantial as to justify heightened scrutiny, his facial challenge to the statute must also fail. In order to succeed in his facial challenge to § 922(a)(3), Decastro would need to show that "no set of circumstances exists under which the [statute] would be valid, *i.e.,* that the law is unconstitutional in all of its applications," or at least that it lacks a "plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (internal quotation marks and citation omitted). Because § 922(a)(3) does not substantially burden the fundamental right to obtain a firearm sufficient for self-defense, and attempts only to assist states in the enforcement of their own gun laws, it does not infringe the Second Amendment right to keep and bear arms, and its sweep is therefore plainly legitimate.[FN7]

[7][8] The facial constitutionality of § 922(a)(3) is unimpaired by the risk that some state laws governing the sale of firearms may themselves be unconstitutional. Nothing on the face of § 922(a)(3) sanctions, compels, or encourages state regulations that offend the Second

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Amendment. If the requisite interstate nexus exists, Congress may enact laws (like § 922(a)(3)) designed to prevent the circumvention of state law, and in so doing may indulge the presumption that the underlying state laws are not unconstitutional. *See, e.g.,* 18 U.S.C. § 228(a)(1) (making it a federal offense to willfully fail to pay a support obligation with respect to a child living in another state). By the same token, courts have upheld federal laws that curtail the possession of firearms by certain persons based on state court adjudications. *See, e.g., United States v. Reese,* 627 F.3d 792, 802–04 (10th Cir.2010) (upholding against a Second Amendment challenge a federal statute prohibiting possession of firearms by anyone subject to certain restraining orders, and explaining that the defendant could not collaterally attack the underlying protective order in his federal prosecution), *cert. denied,* ––– U.S. ––––, 131 S.Ct. 2476, 179 L.Ed.2d 1214 (2011). It may be that a "statute tolerates different outcomes ... in different states, but this is true of all situations in which a firearms disability (or any other adverse consequence) depends on state law." *United States v. Skoien,* 614 F.3d 638, 645 (7th Cir.2010) (*in banc*), *cert. denied,* ––– U.S. ––––, 131 S.Ct. 1674, 179 L.Ed.2d 645 (2011). If an injury is suffered as a result of the unconstitutional application of a state law regulating the possession of firearms, the proper challenge is one addressed to the state law. *See McDonald,* 130 S.Ct. at 3026 (holding that the Second Amendment applies to the states).

As Decastro observes, § 922(a)(3) has no exception for the transportation of firearms purchased out-of-state by someone who is licensed to possess a gun at home; but Decastro is not in a position to raise such an overbreadth exception. Decastro did not have a license to own a firearm in New York, nor did he apply for one. Facial overbreadth challenges are disfavored and permitted "in relatively few settings, and, generally, on the strength of specific reasons weighty enough to overcome [courts'] well-founded reticence." *Sabri v. United States,* 541 U.S. 600, 609–10, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004). There is no overbreadth argument that Decastro can make in the Second Amendment context. *See Masciandaro,* 638 F.3d at 474 (rejecting defendant's facial overbreadth challenge because "a person ... to whom a statute was constitutionally applied, will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court" (internal quotation marks omitted)); *Skoien,* 614 F.3d at 645 ("A person to whom a statute properly applies can't obtain relief based on arguments that a differently situated person might present.").

**\*8** For the reasons stated, Decastro's facial challenge to 18 U.S.C. § 922(a)(3) fails.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

HALL, Circuit Judge, concurring:

I fully concur in the result reached in the opinion. I write separately, however, to enunciate how I reach the determination that § 922(a)(3) does not impose a substantial burden on the exercise of Decastro's Second Amendment right.

Had Decastro opted to utilize the lawful means by which he could have acquired a handgun in New York and done so, § 922(a)(3) would have played no role in regulating that transaction. By the same token, § 922(a)(3) by its terms did not preclude Decastro from acquiring

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

the handgun in question from the Florida dealer because all that the federal statute effected were minor limitations on the channels through which that handgun was to be shipped from Florida to New York. Even though acquisition is indeed often necessary to effectuate the Second Amendment right to keep and bear arms, any limitations on Decastro's acquisition were those occasioned by his own refusal to comply with New York State's requirements for possessing a handgun, and the federal statute, therefore, played no demonstrable role in precluding Decastro from purchasing a firearm in either state so as to exercise his Second Amendment right. For these reasons, § 922(a)(3), as applied, does not substantially burden Decastro's Second Amendment right to own a firearm in defense of his home and hearth. *See District of Columbia v. Heller,* 554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

> FN1. The statute does not apply to: [1] firearms acquired by inheritance outside the owner's state of residence, provided that it is lawful for the owner to purchase or possess a firearm in her home state, 18 U.S.C. § 922(a)(3)(A), [2] rifles and shotguns acquired outside of the purchaser's state of residence, provided that the transaction is conducted in person and in compliance with the legal conditions of sale in both the purchaser's home state and the state in which the seller's place of business is located, *id.* § 922(a)(3)(B), (b)(3)(A), [3] firearms loaned or rented for temporary use for lawful sporting purposes, *id.* § 922(a)(3)(B), (b)(3)(B), or [4] the transportation of a firearm acquired in any state prior to the effective date of the statute, *id.* § 922(a)(3)(C).

> FN2. The number of licenses issued for business premises in 2006 exceeded the number of new applications received that year, which suggests that licenses were not necessarily issued in the year they were applied for, or that the number of licenses issued includes license renewals that are not considered "new applications," or both. In any event, this does not affect our analysis.

> FN3. We also need not decide whether certain firearm laws might regulate conduct that is entirely unprotected by the Second Amendment, whether because of the type of weapon involved, the status of the person claiming the right, or where the right is sought to be exercised. *See Ezell v. City of Chicago,* 651 F.3d 684, 701–03 (7th Cir.2011); *United States v. Reese,* 627 F.3d 792, 800–01 (10th Cir.2010), *cert. denied,* ––– U.S. ––––, 131 S.Ct. 2476, 179 L.Ed.2d 1214 (2011); *United States v. Chester,* 628 F.3d 673, 680 (4th Cir.2010); *United States v. Marzzarella,* 614 F.3d 85, 89–91 (3d Cir.2010), *cert. denied,* ––– U.S. ––––, 131 S.Ct. 958, 178 L.Ed.2d 790 (2011); *cf. Heller v. District of Columbia,* 670 F.3d 1244, 1253 (D.C.Cir.2011).

> FN4. In addition to these time, place and manner restrictions, the "presumptively lawful regulatory measures" cited by the Court included "longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Heller,* 554 U.S. at 626, 627 n. 26. The Court also noted that the Second Amendment right does not encompass all weapons, but only those "typically possessed by law-abiding citizens for lawful purposes" and thus does not include the right to possess "dangerous and unusual weapons." *Id.* at 625, 627 (internal quotation marks omitted).

> FN5. Nor is it inconsistent with language in *Heller* rejecting rational basis review for

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

laws that infringe Second Amendment rights. *See Heller,* 554 U.S. at 628 n. 27. In *Heller,* the Court was faced with restrictions that undoubtedly did impose a significant burden on core Second Amendment rights. It had no occasion to consider the appropriate standard of review for laws that only minimally impact such rights.

FN6. Decastro has not advanced any argument that § 922(a)(3) makes it more costly to acquire a firearm (as by insulating local gun dealers from interstate competition, or because of increased transportation costs). In any event, within limits, that would not be a constitutional defect. *See Casey,* 505 U.S. at 874 ("The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it."); *Kovacs v. Cooper,* 336 U.S. 77, 88–89, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (upholding a city ordinance prohibiting the use of sound trucks: "That more people may be more easily and cheaply reached by sound trucks, perhaps borrowed without cost from some zealous supporter, is not enough to call forth constitutional protection").

FN7. While we hold that Section 922(a)(3) is not unconstitutional on its face, we do not rule out the possibility that, on a different set of facts, a defendant might be able to establish that the application of Section 922(a)(3) to him would burden his right to keep and bear arms so substantially as to render the statute unconstitutional as applied.

C.A.2 (N.Y.),2012.
U.S. v. Decastro
--- F.3d ----, 2012 WL 1959072 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.