IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEPHEN DEARTH, et al., | ) | Case No. 09-CV-0587-RLW |
| | ) | |
| Plaintiffs, | ) | RESPONSE TO NOTICE OF |
| | ) | SUPPLEMENTAL AUTHORITY |
| v. | ) | |
| | ) | |
| ERIC HOLDER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant's reliance upon *United States* v. *Decastro*, No. 10-3771, 2012 U.S. App. LEXIS 11213 (2d Cir. June 1, 2012), is misplaced. *Decastro* acknowledges the viability of Plaintiffs' claim and strongly suggests that Plaintiffs should prevail.

In *Decastro,* the criminal defendant opted to ignore his home state's gun licensing laws because he believed they were too cumbersome, and claimed that he had been told by an unknown police officer that he would not qualify for a firearm license. Decastro was prosecuted and convicted of violating 18 U.S.C. § 922(a)(3), which forbids the importation of firearms purchased elsewhere into one's home state.

Plaintiffs here do not challenge Section 922(a)(3). That provision has no application to expatriated Americans, such as Dearth, who have no state of residence. As Plaintiffs explained, no federal law prohibits the importation of firearms into a state where an individual does *not* reside. To the contrary, federal law protects the transportation of firearms throughout the United States by law-abiding, responsible citizens. 18 U.S.C. § 926A; *see* Pl. Opp. & Reply, Dkt. 28, at 20.

Indeed, total residency-based prohibitions on the possession of all firearms are exceedingly rare. Plaintiffs are hard pressed to identify any such places within the United States apart from New York City, Chicago, and Washington, D.C. And if Dearth could be barred from buying guns anywhere because he might transport them to one of these three cities, that same logic could be applied to bar the purchase of guns by anyone anywhere in the United States.

Examining the purposes behind Section 922(a)(3), the Second Circuit concluded that "[t]he evident purpose of the statute is to stop circumvention of state laws regulating gun possession." *Decastro*, at *21. But New York, the state at issue in *Decastro*, appears to be the only state that absolutely forbids handgun possession on account of residence, and its non-resident possession prohibition does not extend to long arms.[1]

What state laws governing gun possession would Dearth circumvent? In addition to the protection afforded by Section 926A, and subject only to rare registration requirements,[2] Dearth can possess firearms in every state. Indeed, Dearth's Utah license to carry a concealed handgun is recognized in 35 states. http://publicsafety.utah.gov/bci/FAQother.html (last visited July 8, 2012).

---

[1] New York's definition of a "firearm" that must be registered excludes most rifles and shotguns, but includes all handguns. N.Y. Penal Law § 265.00(3). Interestingly, New York officials appear to have recently acknowledged the constitutional defect in that state's residency restriction. On April 18, 2012, the Defendants-Appellees in *Osterweil* v. *Bartlett*, 2d Cir. No. 11-2420, a challenge to the residency requirement, moved the Second Circuit to certify a question to the New York Court of Appeals, asking whether the law should be reinterpreted to require mere residency rather than domicile, in light of *Heller* and *McDonald*. Defendant's reliance on the District Court's plainly erroneous decision in *Osterweil* might be misplaced as well.

[2] *See, e.g.* Haw. Rev. Stat. § 134-3(a) (persons bringing firearms to state must register within three days of arrival at place of business, residence or sojourn).

Additionally, Section 922(a)(3) contains a significant exception—for firearms purchased in accordance with Section 922(b)(3), which regulates and allows some interstate firearm sales. And Plaintiffs do not challenge any aspect of 922(b)(3) in this case, only its application to bar expatriated Americans who lack a state of residence from purchasing firearms.

In any event, the Second Circuit made quick work of Decastro's attempt to challenge New York's gun licensing laws, holding that he lacked standing to do so because he failed to either (1) apply for a permit or (2) demonstrate futility. *Decastro*, at *9-*10. It was readily obvious to the Court that many New Yorkers are, in fact, able to successfully obtain licenses to possess firearms. In contrast, the issue of Plaintiffs' standing here was settled positively by the D.C. Circuit.

With respect to Decastro's challenge to Section 922(a)(3), the Second Circuit offered that "In deciding whether a law substantially burdens Second Amendment rights, it is . . . appropriate to consult principles from other areas of constitutional law, including the First Amendment (to which *Heller* adverted repeatedly)." *Decastro*, 2012 U.S. App. LEXIS 11213, at *19 (citations omitted). As Plaintiffs have noted, that has long been the law of this circuit, Pl. Br., Dkt. 23-1, at 14, and counsels the application of *strict scrutiny* on the present facts. *Id.* at 13-16.

The government makes much of the fact that in *Decastro*, the application of Section 922(a)(3) was not thought to substantially burden the defendant's Second Amendment rights. But this seriously overstates *Decastro*'s holding.

"Decastro has not advanced any argument that § 922(a)(3) makes it more costly to acquire a firearm (as by insulating local gun dealers from interstate competition, or because of increased transportation costs)." *Decastro*, at *22 n.6. While such problems would not render

3

Section 922(a)(3) unconstitutional "within limits," *id.*, the Court acknowledged the "possibility that, on a different set of facts, a defendant might be able to establish that the application of Section 922(a)(3) to him would burden his right to keep and bear arms so substantially as to render the statute unconstitutional as applied." *Decastro*, at *23 n.7.

Presumably, had Mr. Decastro shown that the law operated to totally prohibit his purchase of all firearms throughout the entire United States, that might have presented "a different set of facts" sustaining an as-applied challenge. Such an extraordinarily broad prohibition surely "operate[s] as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful purposes)." *Decastro*, at *15 (citations omitted).

Nonetheless, the government reiterates the proposition that Dearth is not burdened by a complete and total prohibition on his ability to purchase firearms anywhere in the United States because he (1) might possess firearms in Canada, (2) import or borrow guns for *non-self defense* purposes into the United States, or (3) move back to this country.

These arguments are frivolous. If the government banned an American citizen from purchasing books or religious articles, would his First Amendment rights not be "substantially burdened" because he might buy some of these in another country, borrow them from friends and relatives, or establish a new residence? It is frankly unimaginable that the Supreme Court, or the D.C. Circuit, would hold that a complete prohibition on obtaining firearms for self-defense does not substantially burden Second Amendment rights because some guns are available for sale *in Canada*. Certainly *Decastro* does not suggest as much, leaving the door open as it does to

"substantial burden" challenges to Section 922(a)(3). As far as Section 922(b)(3) is concerned, Plaintiffs' challenge is only as-applied.

And to the extent that Plaintiffs' challenge to Section 922(a)(9) is facial, *Decastro* confirmed that Second Amendment facial challenges are available under the established doctrines for such cases—including the more-relaxed "plainly legitimate sweep" test. *Decastro*, at *23 (quoting *Wash. State Grange* v. *Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).[3] It remains difficult to see how Section 922(a)(9) has any legitimate application at all, let alone a "plainly legitimate sweep."

The government had responded on this point by claiming that barring the receipt of firearms by non-residents is designed to avoid straw purchases, which are already illegal, and prevent smuggling, which is also already illegal. But whatever the constitutional status of "sporting purposes," self-defense is at the core of the Second Amendment right—and that right is enjoyed, like others in the Bill of Rights, by all law-abiding visitors to the United States, aliens or citizens.

Barring the entire central purpose of a fundamental constitutional right to all non-residents—a breathtaking proposition—because *some* non-residents *might* be smugglers, is hardly a "reasonable fit." Not that it should matter, but the government has failed to submit any evidence showing that there is any relationship between residence and smuggling. It is not obvious why a non-resident might have an easier time smuggling something out of the United

---

[3]Indeed, were this not the case, *District of Columbia* v. *Heller*, 554 U.S. 570 (2008) and *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010) could not have been decided as they were. There plainly exist individuals in Washington, D.C. and Chicago who may properly be disarmed— but that does not mean those cities' former gun prohibitions were immune from facial invalidity.

States than a resident. Nor has the government established a relationship between the receipt of firearms for self-defense, and illegal smuggling. Plaintiffs are comfortable in declaring that the overwhelming majority of firearms purchased for non-sporting, e.g., self-defense purposes, are not intended for illegal smuggling. A closer fit probably exists between smuggling and the purchase of luggage. Nor does it make any sense to suppose that people interested in hunting or target practice are law-abiding, but people interested in self-defense are incipient smugglers. On all these counts, *Decastro*'s endorsement of the *Grange* test for facial invalidity does not advance the government's case.[4]

*Decastro* is indeed instructive. It indicates that Plaintiffs should prevail.

Dated: July 9, 2012            Respectfully submitted,

\

Alan Gura (D.C. Bar No. 453449)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

By:  /s/Alan Gura
     Alan Gura

     Attorney for Plaintiffs

---

[4] Lastly on this point, the government's new evidence on reply, in the form of Mr. Pelletierre's declaration, raises more questions than it answers. Pelletierre sought to identify trafficking cases by examining *Section 922(g)(5)* prosecutions, not Section 922(a)(9) prosecutions. He does not even declare to have searched for Section 922(a)(9) prosecutions. Does the government enforce Section 922(a)(9)? How many trafficking cases involve Section 922(a)(9)? Why is the provision necessary, for anti-smuggling purposes, if the government can point to a large number of smuggling prosecutions, and does so only by examining Section 922(g)(5)? Of course, mere prosecution data is irrelevant, absent a causal relationship between crime and law-abiding non-residents' acquisition of guns for self-defense.